UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| YEMIN JI, Derivatively on behalf of KVH INDUSTRIES, INC., Plaintiff | C.A. No. 05-273/ML |
| v. | |
| MARTIN A. KITS VAN HEYNINGEN, PATRICK J. SPRATT, ROBERT W.B. KITS VAN HEYNINGEN, ARENT H. KITS VAN HEYNINGEN, MARK S. AIN, STANLEY K. HONEY, BRUCE J. RYAN, and CHARLES R. TRIMBLE, Defendants | |
| and | |
| KVH INDUSTRIES, INC., Nominal Defendant | |

**DEFENDANTS' MOTION FOR THIS COURT**
**TO ABSTAIN FROM EXERCISING JURISDICTION**

Defendants Martin A. Kits van Heyningen, et al. move for this Court to abstain from exercising jurisdiction over this matter and to dismiss for the reasons set forth in the accompanying memorandum of law.

Brooks R. Magratten, No. 3585
VETTER & WHITE
Attorneys for Defendants
20 Washington Place
Providence, Rhode Island 02903
(401) 421-3060
(401) 272-6803 FAX

Brandon F. White, Esq.
John H. Henn, Esq.
Matthew C. Baltay, Esq.
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, Massachusetts 02210-2600
(617) 832-1000
(617) 832-7000 FAX

Dated: August 23, 2005

CERTIFICATE OF SERVICE

To:

Peter N. Wasylyk, Esq.
Law Offices of Peter N. Wasylyk
1307 Chalkstone Avenue
Providence, RI 02908

I hereby certify that I served on the above-named counsel of record a copy of the within Defendants' Motion for This Court To Abstain from Exercising Jurisdiction by first class mail, postage prepaid, on the 23rd day of August, 2005.

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| YEMIN JI, Derivatively on Behalf of KVH INDUSTRIES, INC.,<br><br>Plaintiff,<br>v.<br><br>MARTIN A. KITS VAN HEYNINGEN, PATRICK J. SPRATT, ROBERT W.B. KITS VAN HEYNINGEN, ARENT H. KITS VAN HEYNINGEN, MARK S. AIN, STANLEY K. HONEY, BRUCE J. RYAN, and CHARLES R. TRIMBLE,<br><br>Defendants,<br>and<br><br>KVH INDUSTRIES, INC.<br><br>Nominal Defendant. | Civil Action No. 05-273-ML |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO ABSTAIN FROM EXERCISING JURISDICTION**

Attorneys for Defendants

Brooks R. Magratten (# 3585)
VETTER & WHITE
20 Washington Place
Providence, RI 02903
(401) 421-3060
(401) 272-6803 (FAX)

Brandon F. White
John H. Henn
Matthew C. Baltay
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210
(617) 832-1000
(617) 832-7000 (FAX)

August 23, 2005

# TABLE OF CONTENTS

Introduction ..... 1

Argument ..... 4

THIS COURT SHOULD DISMISS THIS CASE IN FAVOR OF THE PREEXISTING, IDENTICAL STATE-COURT DERIVATIVE ACTION ..... 4

I. The Colorado River Doctrine Allows Dismissal of Duplicative Federal Litigation. ..... 4

A. Supreme Court Precedent ..... 4

B. First Circuit Precedent ..... 6

C. Cases Applying Colorado River to Duplicative Derivative Actions ..... 9

II. Under Colorado River, This Duplicative Federal Action Should Be Dismissed. ..... 10

A. The Federal and State Actions Are Parallel. ..... 10

1. The Parties Are Identical. ..... 11

2. The Issues Are Identical. ..... 11

3. The Sarbanes-Oxley Claim Is Facially Invalid. ..... 12

a. There is no private right of action under Sec. 304 of the Sarbanes-Oxley Act. ..... 12

b. Sarbanes-Oxley Sec. 304 is inapplicable absent a restatement. ..... 17

B. The Colorado River Factors Favor Abstention. ..... 17

1. The First Two Factors, *Res* and Convenience, Are Neutral. ..... 17

2. The Third Factor, Avoidance of Piecemeal Litigation, Strongly Favors Dismissal. ..... 18

3. The Fourth Factor, the Order in Which the Forums Obtained Jurisdiction, Favors Abstention. ..... 19

4. The Fifth Factor, Whether State or Federal Law Controls, Favors Abstention. ..... 20

5. The Sixth Factor, the Adequacy of the State Forum to Protect the Parties' Rights, Favors Abstention........................................ 20

6. The Final Factor, Vexatiousness of This Duplicative Action, Favors Abstention. ............................................................. 20

Conclusion ........................................................................................................... 21

## TABLE OF AUTHORITIES

### FEDERAL CASES

Alexander v. Sandoval, 532 U.S. 275 (2001) ....................12

Ash v. Alexander, No. 99-3820, 2000 U.S. Dist. LEXIS 171 (S.D.N.Y. Jan. 12, 2000)....................9, 17, 18, 20, 21

Bonano v. East Caribbean Airline Corp., 365 F.3d 81 (1st Cir. 2004)....................15

Central Bank of Denver, N.A. v. Interstate Bank of Denver, N.A., 511 U.S. 164 (1994)....................13, 15

Clark v. Lacy, 376 F.2d 682 (7th Cir. 2004)....................9, 10, 11

Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976)......1, 4, 5

Cort v. Ash, 422 U.S. 66 (1975) ....................13

Currie v. Group Ins. Comm'n, 290 F.3d 1 (1st Cir. 2002) ....................10

DeVona v. City of Providence, 652 F. Supp. 683 (D.R.I. 1987).......7, 8, 12, 16, 18, 19, 21

Frazier v. Fairhaven Sch. Comm., 276 F.3d 52 (1st Cir. 2002)....................12, 13, 14

Fuller Co. v. Ramon I. Gil, Inc., 782 F.2d 306 (1st Cir. 1986)....................7, 21

Gideon Minerals U.S.A., Inc. v. JP Morgan Chase Bank, No. 02-10140, 2003 WL 21804850 (S.D.N.Y. Aug. 6, 2003)....................16

Imperial Cas. & Indem. Co. v. Bellini, 753 F. Supp. 58 (D.R.I. 1991)....................8, 20, 21

In re Kauffman Mut. Fund Actions, 479 F.2d 257 (1st Cir. 1973)....................12

Keene Co. v. United States, 508 U.S. 200 (1983) ....................15

Kent County Mem'l Hosp. v. Balasco, No. 89-075, 1990 WL 17157 (D.R.I. Feb. 13, 1990)....................9, 12

Maldonado v. Dominguez, 137 F.3d 1 (1st Cir. 1998)....................13, 15

Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1 (1983) ............5, 6, 16

Mottolese v. Kaufman, 176 F.2d 301 (2d Cir. 1949)....................11

Nat'l R.R. Passenger Corp. v. Providence & Worcester R.R. Co., 798 F.2d 8 (1st Cir. 1986) ........ 10, 19, 20

Olmsted v. Pruco Life Ins. Co. of N.J., 283 F.3d 429 (2d Cir. 2002) ........ 14

Scattered Corp. v. Chicago Stock Exch., Inc., 98 F.3d 1004 (7th Cir. 1996) ........ 13

Shallal v. Elson, No. 98-8739, 1999 U.S. Dist. LEXIS 23368 (S.D. Fla. April 12, 1999) ........ 9, 11, 18, 19, 21

Stowell v. Ives, 976 F.2d 65 (1st Cir. 1992) ........ 13

Touche Ross & Co. v. Redington, 442 U.S. 560 (1979) ........ 13, 14, 15

Villa Marina Yacht Sales, Inc. v. Hatteras Yachts, 947 F.2d 529 (1st Cir. 1991) ........ 6, 7, 10, 12, 17, 20, 21

## DOCKETED CASES

Mehlenbacher v. Jitaru, No. 04-1118, slip op. (M.D. Fla. June 6, 2005) ........ 16

Merhrvar v. Kits van Heyningen, et al., No. 04-375 (R.I. Super. Ct. amended complaint filed Feb. 10, 2005) ........ 2, 3

Sekuk Global Enters. v. KVH Indus., Inc., et al., No. 04-306ML (D.R.I. filed July 21, 2004) ........ 1

Sutterfield v. Micromuse, Inc., No. 04-893, slip op. (N.D. Cal. July 6, 2004) ........ 10

## FEDERAL STATUTES

H.R. Rep. No. 107-114, 107th Cong., 2d Sess., at 44 (Apr. 22, 2002) ........ 15

15 U.S.C. § 7243 (2005) ........ 4, 12, 14, 17

15 U.S.C. § 7244(a)(2) (2005) ........ 14

18 U.S.C. § 1514A (2005) ........ 14

## COURT RULE

Rhode Island R. Civ. P. 23.1 ........ 3

Defendants[1] submit this memorandum of law in support of their motion to abstain from exercising jurisdiction pursuant to Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976), because a similar or identical case is already pending in state court. The complaint in this case is essentially identical to, and in fact was largely copied verbatim from, a previously-filed state court derivative complaint. Because the state court action is already under way and will adjudicate to final resolution all the issues presented here, this Court should dismiss this case under Colorado River.[2]

## Introduction

***The Securities Case***

The genesis of the instant action, and the identical state court derivative action, is the consolidated federal securities law class action filed against KVH in this Court in July 2004. Sekuk Global Enters. v. KVH Indus., Inc., et al., C.A. No. 04-306-ML (D.R.I. filed July 21, 2004) ("Securities Complaint"). The Securities Complaint, as amended after consolidation, basically alleges that KVH's newest product, an automobile satellite television antenna known as the "TracVision A5," was not as successful as touted and was fraudulently used to inflate KVH's revenue and stock price throughout the class period and to prop up KVH's financial results as KVH carried out a secondary public stock offering. The Securities Complaint alleges that

[1] Defendants are Martin A. Kits van Heyningen, Patrick J. Spratt, Robert W.B. Kits van Heyningen, Arent H. Kits van Heyningen, Mark S. Ain, Stanley K. Honey, Bruce J. Ryan, and Charles R. Trimble, and nominal defendant KVH Industries, Inc ("KVH" or "Company").

[2] Defendants do not move to dismiss under Rules 23.1 or 12 as doing so at this juncture would not be consonant with the fundamental premise that this Court should decline to entertain this duplicative case from the outset. Defendants reserve their rights to move to dismiss the complaint on grounds other than under Colorado River, including Rules 23.1 and 12, should the Court exercise jurisdiction over this case.

KVH's CEO (Martin A. Kits van Heyningen) and its CFO (Patrick J. Spratt) perpetrated fraud on the stock market in their disclosures and omissions concerning the launch of the TracVision A5.[3]

On January 14, 2005, defendants moved to dismiss the Securities Complaint on the grounds that it fails to allege fraud with particularity, scienter and loss causation. This Court granted the motion in part and denied it in part by Memorandum and Order dated August 11, 2005.

***The State Derivative Action (Mehrvar)***

On August 16, 2004, a KVH shareholder filed a derivative action in Rhode Island state court based on the same general allegations that underlie the Securities Complaint, naming as defendants the two individual defendants in the securities action (the CEO and CFO), as well as the other six directors of KVH. Hamid Merhrvar, Derivatively on Behalf of KVH Industries, Inc. v. Martin Kits van Heyningen, et al., No. 04-375 (R.I. Super. Ct. Providence Bus. Session amended complaint filed Feb. 10, 2005) ("Merhvar"). The Merhvar amended complaint ("Mehrvar Complaint") is attached hereto at Exhibit A.

The Mehrvar Complaint copied the core allegations of wrongdoing from the Securities Complaint regarding the TracVision A5. See Merhvar Complaint ¶¶ 29-68. The substance of the Complaint is that the CEO and CFO misled the market concerning the launch of the TracVision A5 and that all of the other six directors, by virtue of their positions as directors alone, must have known of the fraud allegedly perpetrated by the CEO and CFO and in allowing the fraud and the federal securities suit to happen are each liable for breach of fiduciary duty. The Merhvar Complaint also alleges that because two of the directors sold stock while the

[3] While the Securities Complaint names KVH's CEO and CFO as defendants and chronicles alleged misrepresentations by them, it does not name as defendants any of the other six directors named in the instant derivative case nor does it contain any allegations of wrongdoing against them.

TracVision A5 was being launched, and because, as directors they must have known of the fraud, they must be liable for illegal insider trading. Id. ¶¶ 69-71. As damages, Mehrvar seeks recovery by the Company of costs that will or may be incurred in connection with the federal securities class action plus disgorgement of the profits from the alleged insider selling. Id. ¶¶ 21-22.

Mehrvar was specially assigned to the Providence County Business Session of the Rhode Island Superior Court. On November 5, 2004, defendants moved to dismiss Mehrvar under Rhode Island R. Civ. P. 23.1 on the grounds that the plaintiff failed to make the requisite pre-suit demand upon the company and his allegations of demand futility fall short of satisfying the stringent pleading requirements of Rule 23.1. Rather than oppose the motion to dismiss, Mehrvar amended his Complaint and defendants renewed their motion to dismiss under Rule 23.1. The motion to dismiss was then fully briefed and Judge Allen P. Rubine heard three hours of argument on the motion on May 26, 2005 and has the matter under advisement.

***The Instant Derivative Action (Ji)***

On June 20, 2005, ten months after the filing of Mehrvar, plaintiff Yemin Ji filed the instant action. While plaintiff uses slightly different language in the introductory paragraphs of his complaint ("Ji Complaint"), the two derivative complaints are in essence identical. The Ji Complaint brings suit against the same seven director defendants and the CFO that are named as defendants in Mehrvar. Plaintiff copies verbatim the allegations of wrongdoing from the Mehrvar Complaint. A comparison of paragraphs 23-71 of the two complaints reveals they are identical. Plaintiff then makes the same allegations regarding why demand would be futile, again, copied from the Mehrvar Complaint (see ¶¶ 83(a)-(n)). Plaintiff also brings the same counts that Mehrvar brought against the same defendants: breach of fiduciary duty; abuse of

control; gross mismanagement; corporate waste; unjust enrichment; and insider selling. Plaintiff's only effort to differentiate his Complaint from Mehrvar is the addition of a count for breach of Section 304 of the Sarbanes-Oxley Act (15 U.S.C. § 7243) (Ji Complaint ¶¶109-110) against the CEO and CFO for disgorgement of bonuses and incentive-based compensation. This single attempt at differentiation fails at the outset because there is no private right of action under the cited section and, in any event, the section applies only when a company has made a financial restatement, which did not happen in this case. Thus, ignoring the facially inapplicable Sarbanes-Oxley count, the instant derivative Complaint is identical to (and copied directly from) the pre-existing state derivative action. Under Colorado River doctrine, this Court should dismiss this Complaint and allow the first-filed case to run its course.

## Argument

## THIS COURT SHOULD DISMISS THIS CASE IN FAVOR OF THE PREEXISTING, IDENTICAL STATE-COURT DERIVATIVE ACTION

### I. The Colorado River Doctrine Allows Dismissal of Duplicative Federal Litigation.

#### A. Supreme Court Precedent

In the seminal case, Colorado River Water Conservation District v. United States, 424 U.S. 800, the United States Government brought suit in federal court against Colorado's water districts over water rights in the Colorado River. A comprehensive suit had already been filed in state court concerning the same water rights and the United States had been joined as a party to that action. The district court dismissed the second suit and the Supreme Court affirmed. Id. at 821.

The Supreme Court explained that while federal courts have a virtually unflagging obligation to exercise the jurisdiction given them, and must do so absent the clearest of justifications, they may nevertheless abstain and dismiss in favor of pre-existing state court

litigation where "'wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation'" so counsels. Id. at 817 (citations omitted).

The Court then explained that such abstention may be appropriate upon consideration of the following factors: whether the state court has assumed jurisdiction over a *res*; the inconvenience of the federal forum; the desirability of avoiding piecemeal litigation, and the order in which the forums obtained jurisdiction. Id. at 818. The Court further explained that no one factor is necessarily determinative; instead, the district court must undertake a carefully considered judgment, taking into account both the obligation to exercise jurisdiction and the factors counseling against that exercise. Id. at 818-19. The Court found that the necessity of avoiding piecemeal litigation inherent in water rights adjudication, the fact that the federal proceedings had not progressed beyond the filing of a complaint while the preexisting state court proceedings had, and the inconvenience of the federal forum given the 300 miles separating the federal and state courts, all counseled in favor of federal court abstention. Colorado River, 424 U.S. at 820. Accordingly, the Court affirmed the district court's dismissal. Id. at 821.

In Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1 (1983), the Supreme Court considered the Colorado River doctrine again, this time in the context of a federal court stay of litigation, as opposed to a dismissal. In Cone, the district court had stayed the federal litigation in favor of a parallel state case. The Supreme Court explained that a stay and a dismissal under Colorado River are functional equivalents as a stay order by design ensures the federal court will not address the case until the conclusion of the state court proceeding at which time the state court judgment becomes *res judicata* with respect to the federal case. Id. at 10; see also id. at 28 ("Thus, the decision to invoke Colorado River necessarily contemplates that the

federal court will have nothing further to do in resolving any substantive part of the case, whether it stays or dismisses.").

The Cone Court also reaffirmed the applicability of the Colorado River factors and added factors for the district court to consider including whether state or federal law controls; the adequacy of the state forum to protect the parties' rights and whether the federal lawsuit is vexatious or reactive in nature. Id. at 23. As the enunciated factors in Cone counseled against abstention, including a finding that the state court action was a contrived, defensive reaction to the other side's expected federal court claim, the Court ruled that the stay entered by the district court was improper. Id. at 17-18.

**B. First Circuit Precedent**

The First Circuit has applied Colorado River in several cases. For example, in Villa Marina Yacht Sales, Inc. v. Hatteras Yachts, 947 F.2d 529 (1st Cir. 1991), a yacht manufacturer and one of its distributors fell into disagreement over the distributor's sales practices. The manufacturer sought to terminate the distributor and found it necessary to file suit for declaratory judgment in Puerto Rico superior court. Id. at 531. The distributor then filed a parallel suit in federal court against the manufacturer. The manufacturer moved to dismiss the duplicative, federal action under Colorado River. Id. at 531-32. The district court granted dismissal and the First Circuit affirmed.

The First Circuit reiterated that the decision whether to surrender jurisdiction under Colorado River is left to the discretion of the district court and the district court's decision may be reversed only for an abuse of that discretion. Villa Marina, 947 F.2d at 532. The court then summarized the law:

> The Supreme Court in Colorado River established a narrow basis for the stay or dismissal of federal lawsuits in deference to parallel state proceedings. The Court held that, in certain "exceptional" circumstances, a federal court could decline

> jurisdiction based on "considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" . . . The Court in Colorado River set out four illustrative factors to be considered in determining whether "exceptional circumstances" exist: (1) whether either court has assumed jurisdiction over a *res*; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation, and (4) the order in which the forums obtained jurisdiction. In Moses H. Cone, the Court added two additional elements: (5) whether state or federal law controls, and (6) the adequacy of the state forum to protect the parties' rights. Another factor considered by some courts is the vexatious or reactive nature of the federal lawsuit.

Villa Marina, 947 F.2d at 532 (citations omitted).

Applying these factors, the First Circuit found the district court acted within its discretion in dismissing. The court explained that even though the federal action included some federal issues not raised in the Commonwealth action, perfect identity of issues is not required to trigger Colorado River. Id. at 533. Next, the court noted that the first two factors were neutral as there was no *res* at issue in the case and the proximity of the state and federal courts to one another led to no inconvenience in continuing the federal action. Turning to the other factors, the court found that the need to avoid duplicative, piecemeal litigation, the fact that the state court action had been filed first and had progressed further, the presence of novel state law questions and the questionable motivations of the party filing the duplicative, federal case all supported the district court's decision to dismiss. Id. at 532. The court also noted that it is "duplication and consequent waste of judicial resources that federal court abstention under the Colorado River doctrine is designed to prevent." Id. at 536; see also Fuller Co. v. Ramon I. Gil, Inc., 782 F.2d 306 (1st Cir. 1986) (affirming dismissal of duplicative federal action under Colorado River doctrine).

The United States District Court for the District of Rhode Island has also applied Colorado River to dismiss duplicative federal litigation in favor of a pre-existing parallel state court action. For example, in DeVona v. City of Providence, 652 F. Supp. 683 (D.R.I. 1987)

(Exhibit 2 to the Appendix of Selected Authorities filed herewith), The City of Providence was sued in both state and federal court. This Court dismissed the federal action under Colorado River and issued a forceful decision explaining that simultaneous prosecution of identical suits in state and federal courts, even if they contain some federal questions and even if the federal and state courthouses are only within a few hundred yards of one another, should not be tolerated. The Court observed that a plaintiff's act of filing identical suits in both forums suggested procedural maneuvering and abuse of process. Id. at 686. The Court noted that absent strong countervailing reasons, preventing such a vexatious, duplicative suit strongly favors federal dismissal. See id.

Judge Lagueux explained that dismissal was

> clearly necessary to discourage these simultaneous and repetitive filings, because they needlessly augment the number of proceedings entertained by the court. . . . The simultaneous filing of complaints also results in a tremendous waste of judicial resources. . . . This waste, however, is a by-product of a larger problem. Any rule which sanctions simultaneous or repetitive suits places the administration of this court's caseload at the mercy of the procedural posturing of plaintiffs' attorneys.

Id. at 688. The Court also addressed the issue of state-federal relations explaining

> simultaneous and repetitive suits intrude upon the delicate balance of federal and state court relations. Any plaintiff who can pursue his claims simultaneously in the state and federal forums necessarily creates competition between the forums to adjudicate his claim. This will occur as each forum attempts to adjudicate the claims as quickly as possible in order to prevent being bound by the outcome in the other forum under the doctrine of *res judicata*. As both state and federal forums race towards judgment, friction is created between them at three points. First, it is created by the "unseemly and destructive" nature of the race itself to see which forum resolves the same issues first. Secondly, friction is promoted by the ever-present risk that the federal and state forums will issue contradictory interlocutory orders. Thirdly, some tension may arise by the parties own attempts to accelerate or stall the proceedings in one forum in order to influence which court finishes first. Clearly a rule which promotes the existence of federal-state court conflict in these ways, is inimical to the promotion of orderly justice.

Id. at 689 (citations omitted); see also Imperial Casualty and Indemnity Co. v. Bellini, 753 F. Supp. 58, 61 (D.R.I. 1991) (dismissing parallel federal action under Colorado River); Kent

County Mem'l Hosp. v. Balasco, No. 89-075, 1990 WL 17157, at *5-6 (D.R.I. Feb. 13, 1990) (magistrate report recommending dismissal of parallel federal action under Colorado River).

### C. Cases Applying Colorado River to Duplicative Derivative Actions

While the courts within the First Circuit do not appear to have had the opportunity to apply the Colorado River doctrine to duplicative derivative litigation, several courts outside the First Circuit have done so. For example, in Clark v. Lacy, 376 F.2d 682 (7th Cir. 2004), a shareholder filed a derivative action in state court based on a federal securities class action only to be followed several weeks later by a duplicative derivative action filed by a different shareholder in federal court. Defendants moved under Colorado River for a permanent stay of the federal action, which the court granted. The Seventh Circuit affirmed, noting that while the two derivative actions were brought by different individual shareholders, and while the federal shareholder attempted to make his complaint appear different, in the end both cases raised the same breach of fiduciary duty, gross mismanagement and similar claims against the directors and, being derivative actions, both were brought on behalf of the same ultimate plaintiff, the company. The Seventh Circuit explained that if the federal court exercised jurisdiction, piecemeal and duplicative litigation would ensue as the actions would proceed simultaneously, wasting judicial resources and all the issues would be addressed twice, risking inconsistent results. Id. at 687.

Similarly, in Shallal v. Elson, No. 98-8739, 1999 U.S. Dist. LEXIS 23368 (S.D. Fla. Apr. 12, 1999) (App. at Ex. 4), the federal court dismissed a duplicative derivative action in favor of a previously-filed state court action. In dismissing, rather than staying, the federal court explained that because the corporation is the plaintiff in interest, any judgment in state court would have *res judicata* effect on the federal action and thus there was no reason to keep the federal case on the docket. Id. at *23. The federal court in Ash v. Alexander, No. 99-3820, 2000

U.S. Dist. LEXIS 171 (S.D.N.Y. Jan. 12, 2000) (App. at Ex. 1), reached the same result. Id. at *10-11.

Sutterfield v. Micromuse, Inc., No. 04-893 (N.D. Cal. July 6, 2004) (App. at Ex. 5), provides another apt example. In an apparent ongoing competition between two sets of plaintiffs' lawyers, the same attorney who brought the Mehrvar case brought a state court derivative action (also based on a federal securities class action). Shortly thereafter, the same attorney who filed the instant case filed a duplicative federal action, which was dismissed by the federal court under Colorado River.

## II. Under *Colorado River*, This Duplicative Federal Action Should Be Dismissed.

### A. The Federal and State Actions Are Parallel.

Under Colorado River, the district court must undertake a two-part analysis, first assessing whether the federal and state cases are parallel and second applying the factors set forth in Colorado River and its progeny to assess whether abstention is warranted. See, e.g., Villa Marina, 947 F.2d at 533.

Under the first step, the two actions need not be identical and the federal action may contain additional federal claims not raised in the state action so long as the two actions are "sufficiently parallel." See Villa Marina, 947 F.2d at 533 (noting that "not all of the federal issues are included within the Commonwealth action, but perfect identity of issues is not a prerequisite for dismissal" and affirming dismissal under Colorado River).[4] Rather, suits are deemed "parallel" if "'substantially the same parties are contemporaneously litigating substantially the same issues in another forum.'" Clark, 376 F.2d at 686 (citation omitted).

[4] While the First Circuit in Villa Marina affirmed dismissal even though there was a federal claim raised in the federal action that was not raised in the state case, the First Circuit has also ordered and affirmed stays where jurisdiction was retained to allow the federal court to address any remaining federal claim that would still exist following final disposition of the matter in state court. See Currie v. Group Ins. Comm'n, 290 F.3d 1, 13 (1st Cir. 2002); Nat'l R.R. Passenger Corp. v. Providence & Worcester R.R. Co., 798 F.2d 8, 12 (1st Cir. 1986).

1. **The Parties Are Identical.**

Here, even though two different purported shareholders, Hamid Mehrvar and Yemin Ji, have attempted to institute the state and federal actions on the Company's behalf, the actions are nevertheless derivative actions, which by definition are brought on behalf of and for the benefit of the corporation. For purposes of assessing parallelism under Colorado River (and other purposes as well), the corporation is deemed the plaintiff in interest. Clark, 376 F.2d at 686; see also Mottolese v. Kaufman, 176 F.2d 301, 302 (2d Cir. 1949) (L. Hand, J.) (affirming abstention from parallel derivative action in federal court brought by a different shareholder explaining "[t]he real plaintiff in interest there and here is not the shareholder, but, as in all shareholders' derivative suits, the San-Nap-Pak Company").

Next, both the state and federal derivative actions here name the same seven directors and the CFO as defendants. Thus, the parties in Mehrvar and Ji are identical.

2. **The Issues Are Identical.**

With one exception addressed below (the Sarbanes-Oxley claim), the substance of the claims and the counts raised in both Mehrvar and Ji are also identical. As noted above, the Ji Complaint copied the substantive allegations and the counts directly, and verbatim, from the Mehrvar Complaint. Resolution of the matter in state court will dispose of all the issues raised in the duplicative federal action and will provide *res judicata* effect, should the federal case still exist once the state court renders final judgment. See Shallal, 1999 U.S. Dist. LEXIS 23368, at *22-23 (final determination in state court derivative action has res judicata effect on parallel federal derivative action); In re Kauffman Mut. Fund Actions, 479 F.2d 257, 267 (1st Cir. 1973) (final determination on the issue of whether demand was futile is accorded *res judicata* effect).

### 3. The Sarbanes-Oxley Claim Is Facially Invalid.

The sole attempt that plaintiff makes to differentiate his Complaint from the Mehvar Complaint (that it otherwise copies) is set forth as the Sixth Cause of Action at paragraphs 109-110 of the Ji Complaint. Here, plaintiff purports to bring a count against the CEO and CFO under Section 304 of the Sarbanes-Oxley Act. However, that statutory provision is facially inapplicable both because there is no private right of action and because that section requires a financial restatement; an element missing here. 15 U.S.C. § 7243 (2005) (App. at Ex. 6).

The courts are clear that an attempt to plead an invalid federal claim to avoid Colorado River must fail. For example, in DeVona v. City of Providence, 652 F. Supp. 683, this Court quoted Supreme Court precedent upholding the applicability of Colorado River where a party raises "'a contrived federal claim.'" Id. at 687 (quoting Cone, 460 U.S. at 17-18 n.20).[5] See also Kent County Mem'l Hosp. v. Balasco, No. 89-075, 1990 WL 17157, at *4 (D.R.I. Feb. 13, 1990) (recommending dismissal under Colorado River where additional federal claim raised in federal court was one for which the cited federal statute created no private right of action). The Sarbanes-Oxley claim raised by plaintiff is exactly such a "contrived claim" that must be summarily disregarded.

#### a. There is no private right of action under Sec. 304 of the Sarbanes-Oxley Act.

Section 304 of the Sarbanes-Oxley Act does not create an express private right of action and absent an express grant of a private right of action, one can be implied only in the presence of clear Congressional intent. Alexander v. Sandoval, 532 U.S. 275, 286-87 (2001); Frazier v. Fairhaven Sch. Comm., 276 F.3d 52, 68 (1st Cir. 2002). Although early Supreme Court

[5] See also Villa Marina, 947 F.2d at 536 (rejecting assertion that the federal and state suits were not parallel where due to absence of one party where "Villa Marina arguably dismissed Pocklington from the Commonwealth lawsuit precisely to avoid unnecessary duplication.")

precedent demonstrated a greater willingness to find an implied right of action (see, e.g., Cort v. Ash, 422 U.S. 66 (1975) (applying four part test)), recent precedent makes clear that implied private rights of action are now strongly disfavored and will be found only in the narrowest of circumstances, where even though Congress did not expressly create one, it clearly intended to. See Fairhaven, 276 F.3d at 68; Stowell v. Ives, 976 F.2d 65, 70 n.5 (1st Cir. 1992) ("There is a presumption against implied rights of action--a presumption that will endure unless the plaintiff proffers adequate evidence of a contrary congressional intent."); Maldonado v. Dominguez, 137 F.3d 1, 7 (1st Cir. 1998) (refusing to find a private right of action under Section 17(a) of the 1933 Act and noting the "strong presumption" against implied private rights of action) (citing Touche Ross & Co. v. Redington, 442 U.S. 560, 574-76 (1979); Bessette v. Avco Fin. Servs., Inc., 240 B.R. 147, 154 (D.R.I. 1999) ("the First Circuit has stated that there is a strong presumption against implying a private right of action."), vacated on other grounds, 230 F.3d 439 (1st Cir. 2000).

This has been particularly true in the securities law context. Scattered Corp. v. Chicago Stock Exch., Inc., 98 F.3d 1004, 1005 (7th Cir. 1996) ("In securities cases from 1975 forward, the [Supreme] Court has rebuffed requests to imply rights of action . . . and it has begun to insist that the implied rights track the terms of the express statutory rights of action.") (citations omitted); Touche Ross & Co., 442 U.S. at 577 & n.19 ("we decline [to hold] that virtually every provision of the securities Acts gives rise to an implied private cause of action."); Central Bank of Denver, N.A. v. Interstate Bank of Denver, N.A., 511 U.S. 164, 185 (1994) (refusing to find an implied private right of action for aiding and abetting); see also Maldonado, 137 F.3d at 7 (refusing to find a private right of action under Section 17(a) of the 1933 Act).

Generally, where Congress remains silent on the creation of a private right of action, the "inquiry ends there." Touche Ross & Co., 442 U.S. at 576; Olmsted v. Pruco Life Ins. Co. of N.J., 283 F.3d 429, 432 (2d Cir. 2002) ("A court must 'begin [its] search for Congress's intent with the text and structure' of the statute . . . and cannot ordinarily conclude that Congress intended to create a right of action when none was explicitly provided.") (alteration in original) (quoting Sandoval, 532 U.S. at 288).

As the First Circuit recently explained, in looking for evidence of Congressional intent to create an implied private right of action, the conventional tools of statutory construction are used, but again bearing in mind that the starting point is a strong presumption against finding an implied right of action. Fairhaven, 276 F.3d at 68. Looking to the statutory provision at issue, 15 U.S.C. § 7243 nowhere creates a private right. While it mentions that disgorged profits shall be returned to the company, it does not allow the company to bring its own action and instead references the SEC's authority to exempt application of the act at its discretion, suggesting that the enforcement is left to the SEC alone.

Another recognized statutory construction tool is the maxim "*inclusio unius est exclusio alterius*." Fairhaven, 276 F.3d at 68. In the Sarbanes-Oxley Act, Congress expressly created a private right of action in two, and only two, instances: Section 306, 15 U.S.C. § 7244(a)(2)(B) (2005) (prohibiting insider trading during blackout period and empowering "the owner of any security of the issuer" to bring "[a]n action to recover profits in accordance with this subsection"), and Section 806, 18 U.S.C. § 1514A (2005) (expressly permitting whistle-blowing employees to bring private actions against corporation for retaliation). The fact that Congress expressly provides a private right of action in one part of a statute but not others, strongly counsels against implying a private right elsewhere. Olmsted, 283 F.3d at 433 ("Congress's

explicit provision of a private right of action to enforce one section of a statute suggests that omission of an explicit private right to enforce other sections was intentional. 'Obviously, when Congress wished to provide a private damage remedy, it knew how to do so and did so expressly.'") (quoting Touche Ross & Co., 442 U.S. at 572 n.3); Keene Co. v. United States, 508 U.S. 200, 208 (1983) ("Where Congress includes particular language in one section of a statute but omits it in another . . . , it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (citation omitted); Central Bank, 511 U.S. at 184 (refusing to find an implied right of action under the securities laws noting "[w]hen Congress wished to create [such] liability, it had little trouble doing so") (citation omitted).

Yet another available tool of statutory construction is legislative history. Maldonado, 137 F.2d at 7-8. While there is no relevant legislative history on the Senate Bill that ultimately was enacted, the House Report put forth by Representative Michael Oxley was clear that Congress intended the provision to be an SEC enforcement tool. See H.R. Rep. No. 107-114, 107th Cong., 2d Sess., at 44 (Apr. 22, 2002).

Further, private rights of action should rarely, if ever, be implied when the overall statutory enactment is regulatory in nature. Bonano v. East Caribbean Airline Corp., 365 F.3d 81, 85 (1st Cir. 2004) ("private rights of action should rarely be implied where a statute's core function is to furnish directives to a federal agency."). Sarbanes-Oxley was such a regulatory act, with its focus the creation of the Public Company Accounting Oversight Board and strengthening the tools available to the SEC to promote enforcement with clear directives to the SEC to adopt rules in dozens of areas.

Only two courts have come close to addressing whether Sarbanes-Oxley creates a private right of action. In the first, without discussing Section 304, the federal court concluded that

"Sarbanes-Oxley created only two private causes of action: one that involves recovery of profits from insider trading, 15 U.S.C. § 7244, and one that provides protection for whistle blowers, 18 U.S.C. § 1514A." Gideon Minerals U.S.A., Inc. v. JP Morgan Chase Bank, No. 02-10140, 2003 WL 21804850, at *1 n.2 (S.D.N.Y. Aug. 6, 2003).

The other court to address the question did so head on and held that Section 304 provides no private right of action. Mehlenbacher v. Jitaru, No. 04-1118, slip op. (M.D. Fla. June 6, 2005) (App. at Ex. 3). In that case, the same attorney who brought the instant action, William B. Federman, brought a derivative action and included the same Section 304 count. The court conducted an exhaustive analysis of whether there is an implied right of action under Section 304 and after reviewing the current state of the law on implied private rights of action and the history and text of Section 304, concluded flatly that there is "no 'clear evidence' that Congress intended to create a private cause of action via § 304" and, accordingly, the court held the plaintiff could not bring a private cause of action thereunder. See id. at *10-20.

Two weeks after the Mehlenbacher decision was issued, Attorney Federman filed the instant Complaint and again included the same Section 304 claim that had just been squarely rejected. This Court should also conclude that there is no private right of action under Section 304 and that plaintiff's inclusion of such a claim is nothing other than "'a contrived federal claim'" to be flatly rejected under Colorado River. DeVona, 652 F. Supp. at 687 (D.R.I. 1987) (quoting Cone, 460 U.S. at 17-18 n. 20).

b. Sarbanes-Oxley Sec. 304 is inapplicable absent a restatement.

Not only is there no private right of action under Sarbanes-Oxley, but the statute itself only applies where there is or will be a financial restatement. 15 U.S.C. § 7243.[6] The instant case involves no restatement. Plaintiff's Complaint does not even contain the term "restatement." Thus, even if there were a private right of action under Section 304, which there is not, the provision would still be inapplicable here.

Accordingly, plaintiff's Section 304 count must be summarily disregarded leaving his Complaint identical in all material respects to the pre-existing Mehrvar Complaint. We turn now to the Colorado River factors.

**B. The *Colorado River* Factors Favor Abstention.**

All of the Colorado River factors are either neutral or strongly favor abstention.

**1. The First Two Factors, *Res* and Convenience, Are Neutral.**

The first two Colorado River factors, whether either court has assumed jurisdiction over a *res* and the inconvenience of the federal forum, are inapplicable here because this case, like most considered under Colorado River, does not involve property and also because the Rhode Island state court is not far from the federal court. See Villa Marina, 947 F.2d at 533 (affirming dismissal under Colorado River noting "two listed by the Supreme Court in Colorado River--jurisdiction over a *res* and convenience--have no impact in this case."); Ash, 2000 U.S. Dist. LEXIS 171, at *8 (dismissing duplicative federal derivative action in favor of state court action under Colorado River noting "the first factor, i.e., assumption of jurisdiction over property by either court, is a complete irrelevancy, and the second factor, regarding relative inconvenience, is of little moment.").

[6] While there is sparse legislative history on Section 304, the one paragraph on the section in the 2002 Committee Reports on the bill as enacted makes clear that Section 304 applies "[i]n the case of accounting restatements."

**2. The Third Factor, Avoidance of Piecemeal Litigation, Strongly Favors Dismissal.**

The third Colorado River factor, the desirability of avoiding piecemeal litigation, strongly favors abstention here. The risk of piecemeal litigation is greatest where the issues in the two cases are identical, as they are here. Ash, 2000 U.S. Dist. LEXIS 171, at *10; see also Shallal, 1999 U.S. Dist. LEXIS 23368, at *14-15 ("Piecemeal litigation results when the federal and state courts are adjudicating the identical issue, thereby duplicating judicial effort and potentially rendering conflicting results.").

This Court, in dismissing a duplicative federal action under Colorado River, made a strong pronouncement against duplicative and piecemeal litigation:

> [Allowing the federal case to proceed] would result in a duplicative set of pleadings, discovery material, court filings, etc., and twice tax the time of most of the parties and witnesses involved in the case. The overall result would be to adjudicate the action piece-meal instead of within one comprehensive proceeding. Such piecemeal adjudication would result in a waste of legal resources and unnecessarily burden this court's administrative processes.

DeVona, 652 F. Supp. at 688. The DeVona Court also noted that allowing the federal action to proceed would also place undue strain on the delicate federal and state court relations. Id. at 689.

Numerous federal courts have dismissed duplicative derivative actions finding that the issues to be addressed are the same in both actions and that allowing the federal court to decide the same issues not only will result in piecemeal litigation and risk inconsistent rulings, but also will "undoubtedly breed additional litigation regarding claim and issue preclusion." Ash, 2000 U.S. Dist. LEXIS, at *10; Shallal, 1999 U.S. Dist. LEXIS 23368, at *14-15 (same).

The issues in Mehrvar and Ji are identical and nothing but waste of judicial resources and risk of piecemeal litigation would ensue if this court does not abstain. The two courts would entertain the same issues *seriatim*, beginning with the threshold question of whether Plaintiff can even bring this suit without having made a demand (which is already under advisement in

Mehrvar) and then, if necessary, moving to each of the state law questions of breach of fiduciary duty alleged identically in each case. Allowing the case to move forward in federal court would also place unnecessary strain on relations between the state and federal courts as the federal court would suddenly be deciding the same issues already under advisement in state court. See DeVona, 652 F. Supp. at 689. Accordingly, abstention is warranted here.

### 3. The Fourth Factor, the Order in Which the Forums Obtained Jurisdiction, Favors Abstention.

The fourth Colorado River factor looks at which case was filed first and whether one has progressed beyond that of the other. Here, the state court action was filed ten months before the instant action and the state court has clearly assumed jurisdiction. The critical issue of demand futility has been fully briefed and argued in state court before the instant case was even filed; a ruling on that determinative issue is pending. In comparison, the instant case has not progressed at all. Plaintiff's only action to date has been to serve the Complaint on counsel for defendants, which he did on August 12, 2005. This factor favors abstention. See Shallal, 1999 U.S. Dist. LEXIS 23368, at *12-13 (dismissing federal derivative action filed seven months after state court action ruling "the fact that the state court action was filed first and has progresses substantially weighs in favor of abstention."); Sutterfield, slip op. at *10 (same);[7] Nat'l R.R. Passenger Corp., 798 F.2d at 12 (affirming abstention stay under Colorado River noting "[t]he Rhode Island court first assumed (and retains) jurisdiction.").

---

[7] The Sutterfield court not only assessed which case had progressed further, but also noted that the state court would likely continue to outpace the federal court because the federal docket was full and the federal court hears both criminal and civil cases while the state court there hears only civil cases. Sutterfield, slip op. at *10. Here, the Mehrvar case is specially assigned to the Providence Business Session, which similarly limits itself to civil business cases.

### 4. The Fifth Factor, Whether State or Federal Law Controls, Favors Abstention.

The fifth factor assesses whether state or federal law controls. The existence of purely state law claims weighs in favor of abstention. See Imperial Cas. & Indem. Co. v. Bellini, 753 F. Supp. 58, 60 (D.R.I. 1991) (dismissing under Colorado River noting "[i]f state law is at issue, a state court may be the more appropriate forum, all other factors being equal. This action does not raise a federal question in any sense. State court is, therefore, the preferable forum."); Nat'l R.R. Passenger Corp., 798 F.2d at 12 (fifth factor favors abstention as "[f]ederal law does not supply the rule of decision."); Ash, 2000 U.S. Dist. LEXIS 171 at *9 (dismissing duplicative federal derivative action under Colorado River noting that the application of state law to the federal derivative action "weighs importantly in favor of dismissal.").

### 5. The Sixth Factor, the Adequacy of the State Forum to Protect the Parties' Rights, Favors Abstention.

Here, the Providence Business Session of the Rhode Island Superior Court, is particularly capable of handling this derivative action. Also, the rights of the Company and its shareholders, including Yemin Ji, will be adequately protected in the state case. The plaintiff in Mehrvar is represented by Jeffrey Fink, a self-proclaimed national expert on derivative actions who appears in courts throughout the country in derivative cases. This factors weighs in favor of abstention. See Sutterfield, slip op, at *11.

### 6. The Final Factor, Vexatiousness of This Duplicative Action, Favors Abstention.

Lastly, the courts consider the motivation of the party filing the duplicative action and whether it is vexatious. Villa Marina, 947 F.2d at 533. This Court explained that when identical suits are filed in both state and federal forums, "some abuse of process on the part of the plaintiff

is apparent" and this strongly favors dismissal under Colorado River. See DeVona, 652 F. Supp. at 686, 688.

Here, Plaintiff copied verbatim a state law complaint from a case well underway in state court and filed it in federal court. The shareholder and corporate rights are fully protected in state court. While one is left to wonder why Plaintiff's counsel did so, the federal suit is nothing but vexatious to both the courts and the litigants and should be dismissed.

## Conclusion

The federal suit is wholly duplicative of a pre-existing state court action. The Colorado River factors all strongly favor abstention. Because there is no federal interest at stake and no reason to retain jurisdiction, dismissal is warranted. See Villa Marina, 947 F.2d at 531 (affirming dismissal under Colorado River); Fuller, 782 F.2d at 311 (same); DeVona, 652 F. Supp. at 689 (dismissing under Colorado River); Imperial Cas., 753 F. Supp. at 61 (same); Shallal, 1999 U.S. Dist. LEXIS 23368, at *25 (dismissing duplicative derivative action under Colorado River); Ash, 2000 U.S. Dist. LEXIS 171, at *11-12 (same); Sutterfield, slip op. at *12. (same).

August 23, 2005

Brooks R. Magratten (# 3585)
VETTER & WHITE
Attorneys for Defendants
20 Washington Place
Providence, RI 02903
(401) 421-3060
(401) 272-6803 (FAX)

OF COUNSEL:

Brandon F. White
John H. Henn
Matthew C. Baltay
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210
(617) 832-1000
(617) 832-7000 (FAX)

CERTIFICATE OF SERVICE

To:

Peter N. Wasylyk, Esq.
Law Offices of Peter N. Wasylyk
1307 Chalkstone Avenue
Providence, RI 02908

I hereby certify that I served on the above-named counsel of record a copy of the within Memorandum In support of Defendants' Motion for This Court To Abstain from Exercising Jurisdiction by first class mail, postage prepaid, on the 23rd day of August, 2005.

______________________________