**STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS**

**NEWPORT, SC.** **SUPERIOR COURT**

**(FILED – SEPTEMBER 27, 2005)**

| | | |
|---|---|---|
| **HAMID MEHRVAR, Derivatively on Behalf of KVH INDUSTRIES, INC., Plaintiff** | : | |
| **VS.** | : | **NO. N.C./04-0375** |
| **MARTIN A. KITS VAN HEYNINGEN and PATRICK J. SPRATT, ROBERT W.B. KITS VAN HEYNINGEN, ARENT H. KITS VAN HEYNINGEN, MARK S. AIN, STANLEY K. HONEY, BRUCE J. RYAN, CHARLES R. TRIMBLE, Defendants** | : | |
| **and** | : | |
| **KVH INDUSTRIES, INC., Nominal Defendant** | : | |

**DECISION**

**RUBINE, J.,** Plaintiff Hamid Mehrvar ("Plaintiff"), a shareholder, has filed this derivative suit on behalf of KVH Industries, Inc. ("KVH" or "the Corporation"). Before the Court is the Defendants' motion, pursuant to Super. R. Civ. P. 23.1 to dismiss the Plaintiff's Amended Complaint ("Complaint"). In support of the motion, Defendants argue that Plaintiff failed to make a pre-suit demand on the Board of Directors of KVH and that the Complaint fails to allege with particularity sufficient grounds to justify why the making of such demand would be futile. The Defendants request that the Complaint be dismissed with prejudice, without leave to further amend.

## FACTS

KVH, a Rhode Island-based technology company, is in the business of designing and manufacturing satellite communication products for the marine and automotive industries, as

well as tactical navigation products for the military. The Plaintiff, Hamid Mehrvar, a shareholder of KVH, has filed a shareholder derivative claim against KVH's Board of Directors ("Board) and executive officers, and against KVH as a nominal defendant (collectively "Defendants").[1] The Complaint asserts claims alleging that the Defendants have breached their fiduciary duties to the Corporation by, inter alia, participating in the issuance of false and misleading information concerning the financial condition of the Corporation. As a result of the alleged wrongful conduct, it is alleged that the Corporation is now the subject of several class action lawsuits that claim violations of federal securities law, and that the Corporation has and will continue to suffer loss as a result of the Defendants' wrongful conduct.

According to the Plaintiff, between October 1, 2003 and the present (the "Relevant Period"), the Defendants caused KVH to issue false and misleading statements regarding KVH's TracVision A5 and G8 satellite TV (collectively the "TracVision Systems") in an effort to divert attention from KVH's decreasing defense revenues. The Plaintiff alleges that such false and misleading statements created the appearance of profitability and continuing growth for KVH – when really the TracVision Systems could not be produced in quantities or at cost levels that warranted the Defendants' representations. Therefore, the Plaintiff claims that the Defendants caused KVH to artificially inflate its financial results by manipulating its sales numbers through improper revenue recognition and aggressive sales practices, such as channel stuffing and undisclosed side agreements. The Plaintiff further asserts that the Defendants' laudatory comments concerning the TracVision Systems caused KVH's stock to artificially appreciate by

[1] The Defendants are as follows: 1) KVH Industries, Inc.; 2) Martin A. Kits van Heyningen ("Martin") - founder, President, CEO and a director of KVH; 3) Patrick J. Spratt ("Spratt") - CFO; 4) Robert W.B. Kits van Heyningen ("Robert") - founder, VP of Research and Development and director; 5) Arent H. Kits van Heyningen ("Arent") - founder, Chairman of the Board, and director; 6) Mark S. Ain ("Ain") - non-employee director; 7) Stanley K. Honey ("Honey") - non-employee director; 8) Bruce K. Ryan ("Ryan") - non-employee director; and 9) Charles R. Trimble ("Trimble") - non-employee director.

113%, leading to a Relevant Period high of $33.00. During this Relevant Period high, the Plaintiff alleges that the Defendants used KVH's artificially inflated stock to carry out a public offering that generated more than $51.5 million in proceeds.

On July 6, 2004, according to the Plaintiff, the Defendants caused KVH to make an announcement that it was slashing the retail price of its TracVision Systems by more than 34% and taking a multi-million dollar write down of vendor purchase commitments and on-hand inventories to reflect the true value of KVH's TracVision Systems sales. Consequently, the Plaintiff alleges that KVH common stock declined more than 19% in the pre-opening market and opened at $9.51 per share on July 6, 2004 – a 49% decline from the public offering price of $18.75 four months prior and a more than 70% decline form the alleged Relevant Period high of $33.00. Overall, the Plaintiff alleges that the Defendants' improper conduct resulted in $15 million in damage to KVH's market capitalization.

On February 11, 2004, the Plaintiff filed an Amended Complaint[2] setting forth the following six causes of action: (1) against certain Defendants for breach of fiduciary duties for insider selling and misappropriation of information; (2) against all Defendants for breach of fiduciary duty; (3) against all Defendants for abuse of control; (4) against all Defendants for gross mismanagement; (5) against all Defendants for waste of corporate assets; and (6) against all Defendants for unjust enrichment.

In accordance with the requirements of Rule 23.1, the Plaintiff alleges in the Complaint that he will adequately and fairly represent the interests of KVH in enforcing and prosecuting its rights, and that the Plaintiff is and was an owner of the stock of KVH during the relevant period of time. The Plaintiff's filing of suit, however, was not preceded by any demand on the Board to

[2] The original complaint was amended in response to an earlier motion to dismiss, which motion was never heard or determined by the Court.

take action with regard to the Plaintiff's allegations. The Plaintiff instead claims that no demand has been made on the Board of KVH to institute this action because such a demand would be "a futile, wasteful, and useless act."[3] It is this failure to make a demand on the Board that forms the basis of the Defendants' motion to dismiss.

## STANDARD OF REVIEW

"The sole function of a motion to dismiss is to test the sufficiency of the complaint." Rhode Island Employment Sec. Alliance, Local 401, S.E.I.U., AFL-CIO v. State Dep't of Employment and Training, 788 A.2d 465, 467 (R.I. 2002) (quoting Rhode Island Affiliate, ACLU v. Bernasconi, 557 A.2d 1232, 1232 (R.I. 1989)). The movant must meet a difficult standard to persuade the court to grant a motion to dismiss. Pellegrino v. Rhode Island Ethics Comm'n, 788 A.2d 1119, 1123 (R.I. 2002). In reviewing a motion to dismiss, the trial justice looks only to the complaint, considers all allegations raised in the complaint as true, and resolves any doubts in favor of the non-moving party. Id. "The motion may then only be granted if it 'appears beyond a reasonable doubt that a [non-movant] would not be entitled to relief under any conceivable set of facts.'" Toste Farm Corp. v. Hadbury, Inc., 798 A.2d 901, 905 (R.I. 2002) (quoting Estate of Sherman v. Almeida, 747 A.2d 470, 473 (R.I. 2000)).

## ANALYSIS

In accordance with Rule 23.1, the complaint in a derivative suit must allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors, or, in the absence of such a demand, the reasons for the failure to obtain the action or for not making the effort. Super. R. Civ. P. 23.1; Hendrick v. Hendrick, 755 A.2d 784, 794 (R.I. 2000). Failure to have made such a demand, or a particularized showing as to why such

[3] The demand futility allegations are contained in Paragraphs 72-77 of the Complaint.

demand would be futile, constitutes grounds for the dismissal of the complaint upon a defendants' motion to dismiss made pursuant to Rule 12(b)(6). Hendrick, 755 A.2d at 794.

The parameters of the so-called "demand futility" doctrine have not been precisely addressed in Rhode Island case law. The parties to this action, however, have agreed that since KVH is a Delaware corporation, the substantive law of Delaware will govern this Court's analysis of Rule 23.1. See Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 108-09 (1991) (noting that issues relating to the demand requirement and futility exception are matters of substance and should be resolved according to the law of the state of incorporation); see also Rales v. Blasband, 634 A.2d 927, 932 n.7 (Del. 1993) (finding that "[t]he United States Supreme Court has recognized that the demand requirements for a derivative suit are determined by the law of the state of incorporation."). Jurisprudence in Delaware is quite well defined with regard to the requirement that a complaint in a derivative claim contain particularized allegations as to why demand upon the Board of Directors would be futile if such a complaint is to withstand the scrutiny of a motion to dismiss. See, e.g., id.; Aronson v. Lewis, 473 A.2d 805 (Del. 1984).

By way of background, the demand futility doctrine is a corollary to the general proposition of corporate law that directors, rather than shareholders, manage the business affairs of a corporation. Aronson, 473 A.2d at 811. The derivative action developed in equity to enable shareholders to bring suit on behalf of the corporation when those in control refused to assert a claim belonging to the corporation. Id. As the Court in Aronson stated:

> "By its very nature the derivative action impinges on the managerial freedom of directors. Hence, the demand requirement of Chancery Rule 23.1 exists at the threshold, first to insure that a stockholder exhausts his intracorporate remedies, and then to provide a safeguard against strike suits. Thus, by promoting this form of alternate dispute resolution, rather than immediate recourse to litigation, the demand requirement is a recognition of

the fundamental precept that directors manage the business and affairs of corporations." Id. at 811-12 (footnotes omitted).

In this case, since the Complaint does not challenge a business judgment made by the director Defendants, the requirement of demand may be excused only if the Plaintiff can demonstrate that the directors are incapable of making an impartial decision regarding litigation without being influenced by improper considerations. Rales, 634 A.2d at 932 (citing Levine v. Smith, 591 A.2d 194, 200 (Del. 1991)). The Delaware Supreme Court has articulated the following test:

> "[A] court must determine whether or not the particularized factual allegations of a derivative stockholder complaint create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand. If the derivative plaintiff satisfies this burden, then demand will be excused as futile." Rales, 634 A.2d 934.

The requirement that a complaint state the facts justifying the lack of demand with particularity has been strictly construed by the courts of Delaware. Mere notice pleading is insufficient to meet the plaintiff's burden of showing demand excusal in a derivative case. Guttman v. Huang, 823 A.2d 492, 499 (Del. Ch. 2003) (citing White v. Panic, 783 A.2d 543, 552-53 (Del. 2001)). Accordingly, the Court will view the allegations of the Complaint, drawing all reasonable inferences from the factual allegations in the light most favorable to the Plaintiff, in order to determine if the demand excusal requirements have been met. Guttman, 823 A.2d at 499. In order to survive this motion, the Plaintiff herein must show that four of the seven directors of KVH were sufficiently interested such that an independent judgment could not be exercised if the Board was confronted with a demand that this suit be filed on behalf of the Corporation. See Levine, 591 A.2d at 205 (noting that the plaintiff in a derivative action must demonstrate that a majority of directors lacked independence to excuse demand); see also

Guttman, 823 A.2d at 502. After thoroughly reviewing the Plaintiff's Complaint, this Court finds that the Plaintiff has failed to allege with sufficient particularity facts from which it may be inferred that making a demand upon the KVH Board of Directors would have been futile.

Initially, Plaintiff alleges that three directors – Arent Kits van Heyningen, Martin Kits van Heyningen and Robert Kits van Heyningen are related[4] and, therefore, would not be disinterested for that reason. In order for this argument to be convincing, however, the Complaint must allege with particularity that one of the related directors is interested, and that the familial relationship would result in the related directors voting with their interested relative, thus destroying the independence of the family bloc. See, e.g., In re Cooper Companies, Inc. Shareholders Derivative Litig., No. 12584, 2000 WL 1664167 (Del. Ch. Oct. 30, 2000); Mizel v. Connelly, No. Civ. A. 16638, 1999 WL 550369 (Del. Ch. July 22, 1999). Other than to allege that three of the directors are also "founders" of the company and are related, the Complaint fails to allege why this group of related individuals possess such a self interest that they cannot consider a demand solely on the merits. In fact, the allegations made concerning the release of factually misleading and inaccurate financial data are more pointedly addressed to the members of the Audit Committee ("Committee"), on which the three related directors do not sit.

Unlike the Mizel and Cooper cases, there are no particularized allegations in this Complaint to suggest that any one of the three related directors were themselves interested, thus negating an inference that the family "bloc" might side with an interested family member director. Without such a particularized allegation, this Court cannot say that the three related directors lack the requisite independence to consider impartially a demand made upon them relative to these claims. Even were this Court to find, for purposes of this motion, that all three family members were deemed interested, the Plaintiff would still need a fourth interested director

[4] It is alleged and undisputed that Arent is the father of Martin and Robert.

to form a majority and demonstrate demand futility. Here, the Plaintiff has failed to demonstrate that a fourth member of the KVH Board lacks independence or disinterest.

Plaintiff alleges that demand is excused because the three outside directors of KVH who comprised the Audit Committee during the Relevant Period – Ain, Ryan and Trimble – are interested directors by virtue of their position on the Audit Committee. The basis for such allegation is a provision of the KVH corporate charter that charges the Audit Committee members with a duty to review financial statements and other financial disclosures prior to public distribution. According to the Plaintiff, it reasonably may be inferred that the Audit Committee directors breached this duty because this Complaint alleges that the Committee permitted the dissemination of false information and caused or allowed improper financial reports and public disclosures.

At most, the Plaintiff avers that the Audit Committee had specific responsibilities and that the three outside directors should be found interested solely by virtue of their membership on such Committee. Delaware law, however, has specifically found that it is insufficient for a plaintiff to be excused from the demand requirement solely by pleading that a director, by virtue of his or her position, must be charged with knowledge of wrongful conduct. See Rattner v. Bidzos, C.A. No. 19700, 2003 Del. Ch. LEXIS 103, at *35 n.53 (Del. Ch. Sept. 30, 2003); see also Caviness v. Evans, No. CIV.A.04-12524-JLT, 2005 WL 1995389, *4 n.46 (D.Mass. Aug. 18, 2005) (citing and quoting In re Xcel Energy, Inc., 222 F.R.D. 603, 607 (D. Minn. 2004)) ("generalized statements[—]that Audit Committee members 'knew or should have known' of false statements[—]did 'not constitute facts . . . with particularity'"). Further, a corporation's outside directors are presumptively considered to be independent. See Grobow v. Perot, 526 A.2d 914, 924 (Del. Ch. 1987). According to Delaware law, in order to survive a demand futility

motion to dismiss, the Complaint should contain particularized facts regarding the company's internal financial controls during the Relevant Period, including the actions and practices of the Audit Committee. Rattner, 2003 Del. Ch. LEXIS 103, at *44. Additionally, the Complaint should set forth facts regarding the Board's involvement in the preparation of the allegedly false information. Id. at 45. Such facts include "whether the company had an audit committee during that period, how often and how long it met, who advised the committee, and whether the committee discussed and approved any of the allegedly improper accounting practices." Id. at *45, n.72 (quoting Guttman, 823 A.2d at 498). The Plaintiff has not alleged specific facts regarding the actual practices of the Audit Committee by, for example, going beyond the KVH charter to obtain the minutes of the Audit Committee to determine what the Committee members actually knew and when they knew it.[5] See also In re Sonus Networks, Inc., No. 04-073 BLS, 2004 Mass. Super. LEXIS 351, at *12-*13 (Mass. Super. Sept. 27, 2004) (generalized allegations of poor supervision over issuance of financial statements by the Audit Committee insufficient to excuse demand). Therefore, because the allegations made relative to the Audit Committee are general and based solely on Committee membership, lack of independence of the directors who are members of the Audit Committee cannot be inferred.

The Plaintiff also makes several other allegations claiming director interest, all of which fail to provide an adequate reason to excuse demand. For example, the Plaintiff alleges that insider selling Defendants - Robert Kits van Heyningen and Charles Trimble - made stock sales during the relevant period and that as a result of their access to and review of internal corporate documents, conversations with other corporate officers, employees and directors, the two knew

[5] For instance, Paragraph 75(b) of the Complaint alleges that the Committee "would have" convened at least quarterly, and "would have" known the truth concerning the alleged misstatements, had they acted consistent with their mandated duties. What is absent from the Complaint is any allegation of what the Committee members actually knew based upon a review of company or Audit Committee records.

non-public information about KVH when making such sales. The Delaware courts have found that in a derivative action, insider-trading allegations require particularized allegations of fraudulent intent by the selling insider. Guttman, 823 A.2d at 505. The Plaintiff must demonstrate that "each sale by each individual defendant was entered into and completed on the basis of, and because of, adverse material non-public information." Id. (citation omitted). Cursory allegations of insider trading by a director with knowledge of insider information or material misinformation allegedly gained merely from his status as a director will not satisfy the particularized pleading standard of Rule 23.1. See, e.g., Rattner, 2003 Del. Ch. LEXIS 103, at *36-37 (citing Guttman, 823 A.2d at 502).

Although there is a reference made to the number of shares sold by the alleged insider selling Defendants, the Plaintiff makes no allegation of facts that would arouse suspicion relative to the timing or amount of the sales. For instance, there is no allegation that after the insider sales, either Robert or Trimble sold a large percentage of their KVH stock. In fact, it appears from other allegations in the Complaint that the alleged insider sales resulted in a sale of only a small portion of each directors' KVH holdings.[6] In addition, it appears that the insider sales in question in this case occurred at least seven months before the alleged damaging revelations were made by the company, attenuating any suspicion that might be attached to the sales. See In re Sonus Networks, Inc., 2004 Mass. Super. LEXIS 351, at *12.

The Plaintiff alleges that demand must be excused because the KVH directors would be forced to sue themselves and for that reason lack the necessary independence to consider

[6] Publicly available filings indicate that Robert Kits van Heyningen sold only nine percent of his stock in the alleged insider sales during the relevant period, and Trimble sold fourteen percent of his equity. The Court may take judicial notice of the SEC Form 4 information without converting this motion into a summary judgment motion. See Crowell v. Ionics, Inc., 343 F. Supp.2d 1, 15 n.7 (D. Mass. 2004). In Gutman, sales of even thirty-two percent of a director's holdings, without more particularized pleadings as to the timing of sales and actual knowledge of the seller was insufficient to rise to the level of suspicious. Gutman, 823 A.2d at 504.

impartially any demand. The Aronson Court rejected this type of allegation as insufficient, and noted that an argument "that demand is excused because the directors otherwise would have to sue themselves, thereby placing the conduct of the litigation in hostile hands and preventing its effective prosecution" is a bootstrap argument that has been rejected by other courts. Aronson, 473 A.2d at 818. "Its acceptance would effectively abrogate Rule 23.1 and weaken the managerial power of directors. Unless facts are alleged with particularity to overcome the presumptions of independence and a proper exercise of business judgment, in which case the directors could not be expected to sue themselves, a bare claim of this sort raises no legally cognizable issue under Delaware corporate law." Id. (citations omitted).[7]

Finally, the mere general allegation that one or more directors have personal or business affiliations with one another is insufficient to excuse demand. See, e.g., In re Paxson Commun. Corp. S'holders Litig., No. 17568, 2001 Del. Ch. LEXIS 95, at *35 (Del. Ch. July 12, 2001) (finding that allegations made in the complaint claiming that the company's board members "have close personal and business ties with each other" to be "hopelessly vague" because no facts were pled beyond very generalized statements to support such an allegation); Beam v. Stewart, 845 A.2d 1040, 1050 (Del. 2004) (stating that "[a]llegations of mere personal friendship or a mere outside business relationship, standing alone, are insufficient to raise a reasonable doubt about a director's independence."); In re Sonus Networks, Inc., 2004 Mass. Super. LEXIS 351, at *13-14 (noting that "[t]here is nothing sinister or corrupt in the single fact of association or affiliation in financial matters. There must be some further fact before there is anything wrong about it.") (quoting Bartlett v. New York, N.H., & H.R.R. Co., 221 Mass. 530, 537, 109 N.E. 452 (1915)).

[7] Plaintiff's general allegations of domination of some directors serving on the Compensation Committee over others whose compensation is determined by the Committee are equally unavailing to establish demand futility. See In re Sonus Networks, Inc., 2004 Mass. Super. LEXIS 351, at *13. Similarly, boilerplate allegations that the directors are compensated in part by stock and are therefore compromised as to their independent judgment have been held insufficient. See Jacobs v. Yang, No. Civ.A. 206-N, 2004 WL 1728521, at *5 (Del. Ch. Aug. 2, 2004).

The Defendants have requested that this Court dismiss the Plaintiff's Complaint with prejudice. The Rhode Island Supreme Court has "consistently held that Rule15(a) liberally permits amendment absent a showing of extreme prejudice," Hendrick, 755 A.2d at 794 (citations omitted), and that accordingly the Court should be cautious in dismissing a complaint with prejudice if the pleading defect might be cured by re-filing. The Court has further found that the burden of demonstrating the existence of such extreme prejudice is on the party arguing in favor of the dismissal with prejudice. Id

The Defendants argue that dismissal must be with prejudice because the Plaintiff, in filing the Amended Complaint, has already had an opportunity to cure the deficiencies from the original Complaint. Because such deficiencies were not cured, the Defendants claim that demand futility cannot be shown, and permitting a third attempt to show futility would itself be an exercise in futility. No actual prejudice has been demonstrated other than that associated with possibly having to respond if the Plaintiff chooses to re-file after taking actions designed to cure the pleading inadequacies noted by this Court. However, dismissal with prejudice would result in finality of these claims even if the Plaintiff availed himself of the "tools at hand" such as demand for production of books and records pursuant to 8 Del. C. § 220, before filing an amended derivative complaint. See Guttman, 823 A.2d at 504; Brehm v. Eisner, 746 A.2d 244, 266-67 (Del. 2000). In addition, actual demand may be made upon the board of directors, obviating the demand futility argument.

## CONCLUSION

Based on the foregoing analysis, it is apparent that the Plaintiff has failed to allege, with the required particularity, facts that would support a conclusion that a pre-suit demand would

have been futile. Because the Defendants have failed to show actual prejudice, Defendants' motion to dismiss is granted without prejudice.

The parties shall prepare and submit a form of order reflecting this disposition.