# ROBBINS UMEDA & FINK, LLP

ATTORNEYS AT LAW

BRIAN J. ROBBINS
MARC M. UMEDA
JEFFREY P. FINK

OF COUNSEL
BENJAMIN ROZWOOD

610 WEST ASH STREET, SUITE 1800
SAN DIEGO, CALIFORNIA 92101
TELEPHONE (619) 525-3990
FACSIMILE (619) 525-3991

CAROLINE A. SCHNURER
KELLY M. McINTYRE
LOUIS A. KERKHOFF
STEVEN R. WEDEKING


October 14, 2005

**VIA CERTIFIED MAIL**

Board of Directors
c/o Arent H. Kits van Heyningen
Chairman of the Board
KVH Industries, Inc.
50 Enterprise Center
Middletown, RI 02842

**Re:** ***Shareholder Demand Letter Pursuant to R.I. Super. Ct. R. Civ. P. 23.1***

Dear KVH Corporation Board of Directors:

We represent Mr. Hamid Mehrvar, a shareholder of KVH Industries Inc., ("KVH" or the "Company"). Mr. Mehrvar is very concerned about the damage done to KVH as a result of KVH's Board of Directors (the "Board") and senior officers ("Officers") causing or allowing the Company to conceal the true facts that KVH was misrepresenting its financial results as well as making false and misleading statements concerning its business prospects and financials between October 1, 2003 and the present (the "Relevant Period").

The false statements and misrepresented financials resulted in unwarranted market optimism. In turn, KVH's stock traded at substantially inflated prices until July 6, 2004 when the shocking truth regarding KVH's problems became known to the public when the Directors and Officers caused or allowed KVH to announce, prior to the opening of the financial markets, that it was slashing the retail price of its TracVision systems by more than 34% and taking a multi-million dollar write down of vendor purchase commitments and on-hand inventories to reflect the true value of the KVH's TracVision systems sales. The investing public was stunned. In pre-opening market trading, KVH common stock declined more than 19% to open at $9.51 per share on July 6, 2004, a 49% decline from the public offering price of $18.75 just 4 months prior and a more than 70% decline from the Relevant Period high of $33.

There can be no doubt that KVH's Board and Officers have been delinquent in their management and oversight of the Company by condoning the misrepresentation of business prospects and financial results and causing or allowing KVH to communicate false information to the public. Mr. Mehrvar now demands that the Board take steps to address and remedy the harm inflicted on KVH as a result of the misconduct of these directors and officers.

On October 1, 2003, the Board and Officers caused or allowed KVH to issue a press release entitled "KVH Provides Third Quarter Update; New TracVision A5 & TracVision G8 Shipping." This release conveniently sandwiched KVH's lackluster 3Q:03 with KVH's purported successful launch of the TracVision systems. The press release stated in relevant part:

> According to Martin Kits van Heyningen, president and chief executive officer, KVH began shipments of its new TracVision A5 satellite TV system to retailers nationwide during the last week of September. "This is a major development milestone for the company as we have successfully brought this new product to market," said Mr. Kits van Heyningen. "TracVision A5 enables KVH to enter the growing automotive multimedia market by offering live satellite TV in cars. By the end of the quarter, we shipped approximately 150 TracVision A5 units and anticipate shipping 2,000 to 3,000 units in the fourth quarter. Also at the end of September we significantly expanded our marine market coverage by shipping our new TracVision G8 satellite TV system for larger yachts and commercial vessels."
>
> Preliminary financial results indicate overall third quarter revenues were up approximately 8% to $13.4 million. Chief Financial Officer Pat Spratt said, "Our third quarter earnings per share will be in the range of breakeven to a modest loss - primarily due to lower-than-anticipated military revenues. The end-of-quarter timing of the first TracVision A5 shipments and higher-than-anticipated TracVision A5 startup expenses and initial unit production costs were also contributing factors in these financial results."
>
> * * *
>
> "In the fourth quarter, we believe that we will see strong revenue growth in the range of 30% to 50% compared with last year's fourth quarter, driven largely by sales of the TracVision A5 and our existing satellite products," said Mr. Spratt. "We expect our fourth quarter earnings to show only a modest profit as a result of a lower percentage of high-margin military products in our sales mix and the continuing high startup and early volume production costs of TracVision A5. Our profit margins should, however, begin to trend upward during the fourth quarter and into 2004 as TracVision A5 production volume increases and we benefit from our ongoing cost reduction efforts."

On October 3, 2003, Peter Friedland, an analyst from WR Hambrecht & Co., issued a positive report on KVH maintaining his buy rating and 12-month share price target of $24. Incorporating the guidance the Board and Officers caused or allowed the Company to project on A5 sales and margins as reported in the Company's October 1, 2003 press release, the analyst report stated in pertinent part:

> Yesterday after the close, KVH pre-announced a Q3:03 miss due to a shortfall in defense and delayed initial shipments of the [A5], which is not surprising given that the A5 began shipping later in Q3:03 than anticipated. Management waited until the end of the quarter to pre-announce in hopes that it would receive a $1.0 MM follow-on defense order that did not materialize, though it is still in the pipeline. Q4:03 top-line guidance is very positive, as the company expects 2,000-3,000 A5 unit shipments, which makes up for the shortfall in Q3:03. While Q4:03 guidance is soft due to high A5 startup production costs, we expect margins to improve as volumes ramp. Therefore, despite the setback, we maintain our buying rate as we continue to believe the A5 has the potential to double KVH's revenue over the next 2-3 years.

That same day, spurred by the Company's press release on October 1, 2003, Needham analyst, Richard Valera, issued a report reiterating his "Buy" rating on KVH common stock and maintaining a 12-month share price target of $26 per share. The analyst report stated in relevant part:

> With respect to KVHI's negative pre-announcement last night, the slippage of the defense order and the A5 production delay (which appears to be largely resolved) does not overly concern us. And we find that company's 2,000-3,000 A5 unit estimate for the A5 encouraging in that it demonstrates solid initial demand for the A5 and some confidence on the company's part in its ability to meet this demand.

On October 16, 2003, the Board and Officers caused or allowed KVH to issue a press release entitled "KVH Industries Announces Results for the Third Quarter" which stated in relevant part:

> KVH Industries Inc., a leading provider of mobile satellite communications products and defense-related navigation and guidance systems, today reported its results for the third quarter ended September 30, 2003. Revenue for the period was $13.5 million, up 9% from $12.4 million for the third quarter ended September 30, 2002. Net loss for the period was ($0.16) million, or ($0.01) per share. By comparison, KVH recorded a net profit of $0.15 million, or $0.01 per diluted share, during the same period last year.
>
> In discussing KVH's third quarter, Martin Kits van Henyningen stated in part as follows:
>
> "During the third quarter, sales in our existing satellite markets were strong while our overall growth was moderate," explained Martin Kits van Heyningen, KVH's president and chief executive officer. "A delayed military order from an existing customer led to a greater-than-anticipated decline in military sales and a drop in margins and earnings. Even so, KVH strengthened its competitive and strategic position in each of its markets through new product introductions."

* * *

> This is, however, still below the gross margin in the first quarter of 2003 when the product mix consisted of a much larger percentage of military products. ...

The true facts, which were known or should have been known by the Board and Officers, were concealed form the investing public during the Relevant Period. Specifically, the Board and Officers knew or should have known that: (i) prior to the secondary offering on or about February 13, 2004 the Company's revenues and earnings were artificially inflated by stuffing the retail channels with overpriced TracVision systems. Subsequently, the Company was forced to slash the suggested retail price of its TracVision systems by more than 34% and to effectively refund millions of dollars in purported sales revenues to its retail dealers in the form "vendor purchase commitment" charges in order to promote sell-through of TracVision retail channel inventory; (ii) the Company's revenues were not growing by millions of dollars per quarter and the purported growth trends in the Company's revenues could not be sustained; (iii) KVH's retail marketing and sales programs purportedly aimed at the sell-through market for the Company's TracVision systems were not performing to expectations and were causing the Company to incur additional expenses and higher losses as inventories of unsold TracVision systems in the retail channels continued to grow throughout the Relevant Period; and (iv) KVH had not realized any material cost reduction in the manufacture of its TracVision systems and would be forced to write-down its inventory of manufactured goods by millions of dollars. Certain of the Company's Officers and Directors, capitalized on their possession of this material non-public information by selling their personally owned shares of KVH stock.

As a further result of the misconduct described herein, KVH has been named in a large and costly class action securities fraud lawsuit which has passed the motion to dismiss stage and has now caused the Company to begin extensive and costly discovery. These actions have collectively exposed the Company to millions of dollars of potential liability. KVH's demise is directly traceable at least to the Company's Officers and Directors, who failed to fulfill their fiduciary duties to properly oversee and govern the Company's operations. As a proximate cause of the Officers' and directors' misconduct, greed and avarice, KVH's once valuable enterprise and reputation has been irreparably tarnished by the refusal of the Board to keep the Company in compliance with applicable state and federal laws and to abstain from looting the Company. Our analysis indicates that KVH has suffered millions of dollars worth of damage and that the self-dealing behavior engaged in by KVH's directors and Officers in response to this crisis have only compounded these problems. The Board's unwillingness to remedy the source of these problems, in fact, threatens to destroy this once valuable Company.

It is time for KVH to be made whole and liberate itself from the selfish, imprudent governing to which it has been subjected. Mr. Mehrvar demands that the Company commence legal proceedings against each KVH Board member and senior officer who served during the Relevant Period for their breaches of fiduciary duty to the Company including the duty of loyalty and due care for: (i) causing the Company to engage in unlawful conduct or failing to properly oversee the Company's press releases and internal controls to prevent such misconduct; (ii) causing the Company to issue false and misleading statements; and (iii) exposing the Company to staggering potential liability for the foregoing violations. The legal proceedings should seek recovery of illegal insider

sales proceeds as well as millions of dollars in salaries, bonuses, retirement benefits and long term compensation paid to directors and Officers in connection with their past and ongoing wrongdoing. Further, Mr. Mehrvar demands that the Board implement sound corporate governance policies to prevent the recurrence of the acts complained of in this letter.

In making the foregoing demands to commence litigation, our client does not concede that the Board or any member thereof is independent or competent to consider these demands.

Our client, as a KVH shareholder, thanks you and the rest of the Board for your prompt attention to this serious matter. It is incumbent on KVH's Board to do the right thing and hold accountable all those responsible for the harm done to KVH and to ensure a prosperous future for the Company by restoring its reputation. Should you have any requests, questions or concerns, please do not hesitate to contact us.

Very truly yours,

JEFFREY P. FINK

JPF/cd