UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| YEMIN JI, Derivatively on Behalf of KVH INDUSTRIES, INC.,<br>Plaintiff,<br>v.<br>MARTIN A. KITS VAN HEYNINGEN, PATRICK J. SPRATT, ROBERT W.B. KITS VAN HEYNINGEN, ARENT H. KITS VAN HEYNINGEN, MARK S. AIN, STANLEY K. HONEY, BRUCE J. RYAN, and CHARLES R. TRIMBLE,<br>Defendants,<br>and<br>KVH INDUSTRIES, INC.<br>Nominal Defendant. | Civil Action No. 05-273-ML |

**DEFENDANTS' MOTION TO DISMISS**
**VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT**

Defendants hereby move this Court to dismiss Plaintiff's Verified Shareholder Derivative Complaint for failure to comply with Federal Rule of Civil Procedure 23.1. The grounds for this motion, as more particularly set forth in the accompanying Memorandum in Support of Motion to Dismiss Verified Shareholder Derivative Complaint, are as follows:

1. The Rhode Island Superior Court's final ruling in Mehrvar ex rel. KVH Indus., Inc. v. Kits van Heyningen, No. 04-375, 2005 WL 2385939 (R.I. Super. Sept. 27, 2005), that the same complaint does not pass Rule 23.1's demand futility requirements, must be given preclusive collateral estoppel effect here; and

2. In any event, the Complaint does not meet the heightened pleading requirements of Rule 23.1.

Defendants respectfully request oral argument, anticipating that one hour will be sufficient to allow both parties to be heard.

Attorneys for Defendants

Brooks R. Magratten (# 3585)
VETTER & WHITE
20 Washington Place
Providence, RI 02903
(401) 421-3060
(401) 272-6803 (FAX)

Brandon F. White
Matthew C. Baltay
Kalun Lee
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210
(617) 832-1000
(617) 832-7000 (FAX)

January 5, 2006

## CERTIFICATE OF SERVICE

TO:

Peter N. Wasylyk, Esq.
Law Offices of Peter N. Wasylyk
1307 Chalkstone Avenue
Providence, RI 02908

William B. Federman, Esq.
Federman & Sherwood
120 N. Robinson, Suite 2720
Oklahoma City, OK 73102

I hereby certify that I served on the above-named counsel a copy of the within Defendants' Motion To Dismiss Verified Shareholder Derivative Complaint by first class mail, postage prepaid, on the 5th day of January, 2006.

Melanie Sosetti

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| YEMIN JI, Derivatively on Behalf of KVH INDUSTRIES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>MARTIN A. KITS VAN HEYNINGEN, PATRICK J. SPRATT, ROBERT W.B. KITS VAN HEYNINGEN, ARENT H. KITS VAN HEYNINGEN, MARK S. AIN, STANLEY K. HONEY, BRUCE J. RYAN, and CHARLES R. TRIMBLE,<br><br>Defendants,<br><br>and<br><br>KVH INDUSTRIES, INC.<br><br>Nominal Defendant. | Civil Action No. 05-273-ML |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT**

Attorneys for Defendants

Brooks R. Magratten (# 3585)
VETTER & WHITE
20 Washington Place
Providence, RI 02903
(401) 421-3060
(401) 272-6803 (FAX)

Brandon F. White
Matthew C. Baltay
Kalun Lee
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210
(617) 832-1000
(617) 832-7000 (FAX)

January 5, 2006

## TABLE OF CONTENTS

Table of Authorities ........ iii

Introduction ........ 1

Background ........ 2

Argument ........ 5

I. COLLATERAL ESTOPPEL MANDATES DISMISSAL BECAUSE THE ISSUE OF DEMAND FUTILITY AS ALLEGED IN JI'S COMPLAINT HAS ALREADY BEEN ADJUDICATED ........ 5

A. The Doctrine of Collateral Estoppel Protects Constitutional Principles and Advances Important Public Policies ........ 6

B. The Demand Futility Issue Here is Identical to the Demand Futility Issue Decided in Mehrvar ........ 7

C. The Mehrvar Decision Was Final on the Issue of Demand Futility ........ 8

D. For Collateral Estoppel Purposes, the Parties Are Identical ........ 12

E. The Doctrinal Result Is Also logical and Fair ........ 13

II. THE COMPLAINT MUST BE DISMISSED FOR FAILURE TO ALLEGE DEMAND FUTILITY WITH THE REQUISITE PARTICULARITY ........ 14

A. The Substantive Law of Delaware Governs the Demand Futility Analysis ........ 15

B. Plaintiff Faces a Heavy Burden in Pleading Demand Futility ........ 15

C. Plaintiff Has Not Met His Burden ........ 18

1. Paragraph 83(a) -- Status as Inside Directors ........ 18

2. Paragraph 83(b) -- Familial Relationships ........ 19

3. Paragraph 83(c) -- Business Relationships ........ 20

4. Paragraph 83(d) -- Ownership of 6.9% of KVH ........ 21

5. Paragraphs 83(e), 83(f) and 83(n) -- Being Directors, Participating in Wrongs and Being on the Audit Committee ........ 22

6. Paragraphs 83(g) -- Directors Suing Themselves ....................................25

7. Paragraphs 83(h) -- Acts Constitute Violations of Duty..........................26

8. Paragraphs 83(i) -- Securities Law Liability...........................................26

9. Paragraphs 83(j) -- Failure To Act........................................................27

10. Paragraphs 83(k) -- Failure To Act.......................................................27

11. Paragraphs 83(l) -- Insurance Coverage ................................................28

12. Paragraphs 83(m) -- Insider Trading.....................................................28

13. Summary of Demand Futility Allegations..............................................35

Conclusion .........................................................................................................36

## TABLE OF AUTHORITIES

### CASES

Acevedo-Villalobos v. Hernandez, 22 F.3d 384 (1st Cir. 1994) .......... 10

In re Advanta Corp. Sec. Litig., 180 F.3d 525 (3d Cir. 1999) .......... 33, 34

Allen v. McCurry, 449 U.S. 90 (1980) .......... 5, 6, 7

Allison v. Brooktree Corp., 999 F. Supp. 1342 (S.D. Cal. 1998) .......... 34

Aronson v. Lewis, 473 A.2d 805 (Del. 1984) .......... passim

In re Baan Co. Sec. Litig., 103 F. Supp. 2d 1 (D.D.C. 2000) .......... 33

In re Baker Hughes Sec. Litig., 136 F. Supp. 2d 630 (S.D. Tex. 2001) .......... 33

Beam v. Martha Stewart Living Omnimedia, Inc., 845 A.2d 1040 (Del. 2004) .......... 17

Berman v. Thomson, 403 F. Supp. 695 (N.D. Ill.1975) .......... 13

Blonder - Tongue Labs., Inc. v. Univ. of Illinois Found., 402 U.S. 313 (1971) .......... 13

Brehm v. Eisner, 746 A.2d 244 (Del. 2000) .......... 17, 21

Caruana v. Saligman, C.A. No. 11135, 1990 WL 212304 (Del. Ch. Dec. 21, 1990) .......... 28

Caviness v. Evans, 229 F.R.D. 354 (D. Mass. 2005) .......... passim

Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976) .......... 4

Cramer v. General Telegraph & Electrics, Corp., 582 F.2d 259 (3d Cir. 1978) .......... 13

Crowell v. Ionics, Inc., 343 F. Supp. 2d 1 (D. Mass. 2004) .......... 34

Decker v. Clausen, C.A. Nos. 10684, 10685, 1989 WL 133617 (Del. Ch. Nov. 6, 1989) .......... 28

In re Duncan, 713 F.2d 538 (9th Cir. 1983) .......... 5

Dyndul v. Dyndul, 620 F.2d 409 (3d Cir. 1980) .......... 9

E.W. Audet & Sons, Inc. v. Fireman's Fund Ins. Co. of Newark, N.J., 635 A.2d 1181 (R.I. 1994) .......... 8

Grimes v. Donald, 673 A.2d 1207 (Del. 1996) .......... 16, 17

Grossman v. Johnson, 674 F.2d 115 (1st Cir. 1982) .......... 23

Guttman v. Huang, 823 A.2d 492 (Del. Ch. 2003) .......... passim

Haber v. Bell, 465 A.2d 353 (Del. Ch. 1983) .......... 16

Heit v. Baird, 567 F.2d 1157 (1st Cir. 1977) .......... 26, 35

Jackson v. Med. Coaches, 734 A.2d 502 (1999) .......... 10

Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90 (1991) .......... 14, 15

In re Kauffman Mut. Fund Actions, 479 F.2d 257 (1st Cir. 1973) .......... passim

Kaufman v. Beal, No. 6485, 1983 WL 20295 (Del. Ch. Feb. 25, 1983) .......... 18

Kaufman v. Belmont, 479 A.2d 282 (Del. Ch. 1984) .......... 23

Kitces v. Wood, 917 F. Supp. 338 (D.N.J. 1996) .......... 11

Lee v. Rhode Island Council 94, A.F.S.C.M.E., AFL-CIO, Local 186,
796 A.2d 1080, 1084 (R.I. 2002) .......... 12

Levine v. Smith, 591 A.2d 194 (Del. 1991) .......... 16, 18

Lewis v. Aronson, No. 6919, 1985 WL 11553 (Del. Ch. May 1, 1985) .......... 18

Lummus Co. v. Commonwealth Oil Ref. Co., 297 F.2d 80 (2d Cir. 1961) .......... 9

McCall v. Scott, 239 F.3d 808 (6th Cir. 2001) .......... 29

Mehrvar ex rel. KVH Indus., Inc. v. Kits van Heyningen, N.C. No. 04-375,
2005 WL 2385939 (R.I. Super. Ct. Sept. 27, 2005) .......... passim

Migra v. Warren City Sch. Dist. Bd. of Educ., 104 S.Ct. 892 (1984) .......... 5

Miller v. Norris, 247 F.3d 736 (8th Cir. 2001) .......... 11

Mottolese v. Kaufman, 176 F.2d 301 (2d Cir. 1949) .......... 12

Muñiz Cortes v. Intermedics, Inc., 229 F.2d 12 (1st Cir. 2000) .......... 11

Nathan v. Rowen, 651 F.2d 1223 (6th Cir. 1981) .......... 12, 13

Neer v. Pelino, 389 F. Supp. 2d 648 (E.D. Pa. 2005) .......... 8

In re Nike, Inc. Sec. Litigation, 181 F. Supp. 2d 1160 (D. Or. 2002) ....................34

Nottingham Partners v. Trans-Lux Corp., 925 F.2d 29 (1st Cir. 1991)....................7

Offshore Sportswear, Inc. v. Vuarnet International, 114 F.3d 848 (9th Cir. 1997)....................10

Oran v. Stafford, 226 F.3d 275 (3d Cir. 2000) ....................34

O'Reilly v. Malon, 747 F.2d 820 (1st Cir. 1984) ....................9

Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322 (1979)....................6

In re Paxson Commc'n Corp. S'holders Litigation, No. 17568, 2001 WL 812028
(Del. Ch. July 12, 2001)....................20

Rales v. Blasband, 634 A.2d 927 (Del. 1993) ....................15, 16, 17

Rattner v. Bidzos, No. 19700, 2003 WL 22284323 (Del. Ch. Oct. 7, 2003)....................23, 31

Ret. Bd. of the Employees' Ret. Sys. of R.I. v. DiPrete, 845 A.2d 270 (R.I. 2004) ....................7, 8

Richardson v. Graves, No. 6617, 1983 WL 21109 (Del. Ch. Mar. 7, 1983) ....................27

Ronconi v. Larkin, 253 F.3d 423 (9th Cir. 2001) ....................34

Sachs v. Sprague, , -- F. Supp. 2d --, 2005 WL 3116592
(D. Mass. Nov. 22, 2005) ....................20, 21, 24, 25

San Remo Hotel, L.P. v. City and County of San Francisco, 125 S. Ct. 2491 (2005) ....................6

Seminaris v. Landa, 662 A.2d 1350 (Del. Ch. 1995)....................20

In re Sonus Networks, Inc. Derivative Litig., 18 Mass. L. Rptr. 295,
2004 WL 2341395 (Mass. Super. Ct. Sept. 27, 2004)....................21, 31

In re Stone & Webster, Inc. Sec. Litig., 253 F. Supp. 2d 102 (D. Mass. 2003) ....................34

In re Syncor International Corp. Sec. Litig., 327 F. Supp. 2d 1149 (C.D. Cal. 2004)....................34

Tabas v. Mullane, 608 F. Supp. 759 (D.N.J. 1985) ....................19

Turul v. Rogatol Distrib., Inc., 951 F.2d 1 (1st Cir. 1991) ....................35

United States v. Shenberg, 89 F.3d 1461 (11th Cir. 1996)....................5

White v. Panic, 783 A.2d 543 (Del. 2001)....16

Wietschner v. Monterey Pasta Co., 294 F. Supp. 2d 1102 (N.D. Cal. 2003)....34

Wilen v. Pollution Control Indus., Inc., No. 7254, 1984 WL 8272 (Del.Ch. Oct 15, 1984)....22

**DOCKETED CASES**

Mehlenbacher v. Jitaru, No. 04-1118, slip op. (M.D. Fla. June 6, 2005)....8

Mehrvar ex rel. KVH Indus., Inc., v. Kits van Heyningen, N.C. No. 04-375 (R.I. Super. Ct., filed Feb. 10, 2005)....1, 2

Sekuk Global Enters. v. KVH Indus., Inc., No. 04-306-ML (D.R.I., filed July 21, 2004)....2

**STATUTES**

15 U.S.C. § 7243 (2005)....4, 8

28 U.S.C. § 1738 (2005)....7

**COURT RULE**

Fed. R. Civ. P. 23.1....1, 10, 12

**MISCELLANEOUS**

Folk on the Delaware General Corporation Law (2005 ed.)....18

18 Moore's Federal Practice (3d ed. 2005)....10

Restatement (Second) of Judgments § 27 (1982)....8, 9

18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure (2005)....6

## INTRODUCTION

Defendants submit this memorandum of law in support of their motion to dismiss Plaintiff's Verified Shareholder Derivative Complaint ("Complaint") pursuant to Federal Rule of Civil Procedure 23.1. As a prerequisite to bringing suit in the name of KVH Industries, Inc., ("KVH"), Plaintiff Yemin Ji ("Ji") was required by Rule 23.1 either to make demand on KVH's board of directors to institute the action, or to allege with particularity why such demand would have been futile. As Plaintiff has done neither, dismissal is required.

Plaintiff unabashedly copied his Complaint from one filed earlier in Rhode Island Superior Court in an identical derivative action, Mehrvar ex rel. KVH Industries, Inc. v. Kits van Heyningen, N.C. No. 04-375 (R.I. Super. Ct.). The Rhode Island court recently dismissed that case, ruling that the complaint, brought without demand, fails to establish that demand would have been futile. Mehrvar ex rel. KVH Indus., Inc. v. Kits van Heyningen, N.C. No. 04-375, 2005 WL 2385939 (R.I. Super. Ct. Sept. 27, 2005) (attached at Ex. 1 to Appendix of Authorities submitted herewith ("App.")).

The ruling in Mehrvar has collateral estoppel effect here, mandating that this case likewise be dismissed under Rule 23.1. All three elements of collateral estoppel are fulfilled. First, the issue decided in Mehrvar is identical to the issue before the Court today: whether this Complaint adequately alleges demand futility. Second, final judgment was entered on the issue in Mehrvar. Third, because KVH is deemed the plaintiff for collateral estoppel purposes in both derivative actions, and both complaints name the same seven defendants, there is identity of parties. As a result, Ji is precluded from re-litigating the issue that has already been decided.

Alternatively, even if collateral estoppel did not end the demand futility inquiry, the same result would be required because a review of Ji's Complaint reveals that his boilerplate demand

futility allegations do not meet the heightened pleading requirements of Rule 23.1. See Fed. R. Civ. P. 23.1 ("The complaint shall also allege with particularity . . . the reasons . . . for not making the [demand]."). Either way, Ji's Complaint fails to pass muster under Rule 23.1 and must be dismissed.

## BACKGROUND

This Court is already familiar with the matters underlying this suit. KVH, a Rhode Island-based technology company, and its CEO and CFO are defendants in a securities class action filed in this Court: Sekuk Global Enters. v. KVH Indus., Inc., No. 04-306-ML (D.R.I., filed July 21, 2004) (the "Securities Action"). The allegations in the Securities Action are essentially that KVH's then-newest product, an automobile satellite television antenna known as the "TracVision A5," was not as successful as touted and was fraudulently used to inflate KVH's revenue and stock price throughout the putative class period. Specifically, the Securities Action complaint alleges that KVH's CEO and director (Martin A. Kits van Heyningen) and its CFO (Patrick J. Spratt) perpetrated fraud on the stock market in their disclosures and omissions concerning the launch of the TracVision A5. The Securities Action complaint contains no allegations of wrongdoing against any of the other six members of KVH's board, nor does it name any of those other six directors as defendants.

On August 16, 2004, a purported KVH shareholder named Hamid Mehrvar filed a derivative action in Rhode Island Superior Court based on the allegations in the Securities Action, naming as defendants the two individuals named in the Securities Action (the CEO, who is also a director, and the CFO), plus KVH's other six directors. See Mehrvar ex. rel KVH Indus., Inc. v. Kits van Heyningen, N.C. No. 04-375 (R.I. Super. Ct.). The Mehrvar amended complaint ("Mehrvar Complaint") is attached hereto as Ex. A. After copying the core allegations of wrongdoing from the Securities Action complaint, see Mehrvar Complaint ¶¶ 29-68, the

Mehrvar Complaint added the allegation that all of the six directors who were not named (or even mentioned) in the Securities Action complaint, by virtue of their positions as directors, must have known of the fraud allegedly perpetrated by the CEO and CFO and are each liable for breach of fiduciary duty for allowing the fraud to occur and the Securities Action to be brought. The Mehrvar Complaint also alleged that because two of the directors sold stock while the TracVision A5 was being launched, and again because, as directors, they must have known of the fraud, they are liable for illegal insider trading. Id. ¶¶ 69-71. As damages, Mehrvar sought recovery by KVH of costs incurred in defending the Securities Action, plus disgorgement of profits from the alleged insider selling. Id. ¶¶ 21-22.

On June 20, 2005 -- some ten months after Mehrvar filed his Complaint -- a competing plaintiffs' firm filed the instant complaint (the "Ji Complaint") in this Court. Ji's counsel simply copied the substance of the Mehrvar Complaint and re-filed here. Indeed, the introductory paragraphs of the Ji Complaint, while slightly re-ordered, are the same as those in the Mehrvar Complaint, both naming the same seven directors and the CFO as defendants for the same alleged wrongs. The substantive allegations of both Complaints, paragraphs 23-71 in each, are identical.

The Ji Complaint, like the Mehrvar Complaint, states that Ji made no demand on the directors to bring suit (¶ 83); instead, the pleading repeats the same allegations found in the Mehrvar Complaint as to why demand would be futile. See Ji Complaint ¶ 83(a)-(n). The Ji Complaint either copies the allegations verbatim from the Mehrvar Complaint (compare Ji Complaint ¶ 83(g), with Mehrvar Complaint ¶ 75(i)), or repeats the substance of the Mehrvar demand futility allegations using slightly altered verbiage (compare Ji Complaint ¶¶ 83(b) and 83(c), with Mehrvar Complaint ¶¶ 75(g)(iii) and 75(g)(iv)). At the core of the demand futility

allegations is the assertion that because each director served as a director, each presumably was privy to inside information and each presumably knew of the fraud, so demand on each would be futile. See Ji Complaint ¶ 83(a)-(n). Lastly, the Ji Complaint brings the same counts that Mehrvar brought against the same defendants: breach of fiduciary duty; abuse of control; gross mismanagement; corporate waste; unjust enrichment; and insider selling.[1]

On August 23, 2005, Defendants moved this Court to abstain from exercising jurisdiction in this case under Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976), on the grounds that an identical case, Mehrvar, was already under way in state court. Before Ji filed his opposition to Defendants' motion to abstain, however, Judge Rubine granted Defendants' motion to dismiss the Mehrvar Complaint (on September 27, 2005) because "[it] failed to allege, with the required particularity, facts that would support a conclusion that a pre-suit demand would have been futile." Mehrvar, 2005 WL 2385939, at *6.

Plaintiff then filed his opposition to the abstention motion and, without even trying to rebut the fact that his case is identical to Mehrvar, simply asserted that there was no longer a pending state case on which to base abstention, since Mehrvar was dismissed. See dkt. no. 7 (Oct. 3, 2005). This Court agreed and ruled that Judge Rubine's dismissal of the Mehrvar Complaint on Rule 23.1 grounds, even though it was "without prejudice," closed the case. See Order of December 6, 2005. It is Judge Rubine's ruling dismissing the Mehrvar complaint that gives rise to collateral estoppel on the Rule 23.1 issue.

[1] Ji's only effort to differentiate his Complaint from Mehrvar is the addition of a count for breach of Section 304 of the Sarbanes-Oxley Act (15 U.S.C. § 7243), Ji Complaint ¶¶ 109-10, against the CEO and CFO for disgorgement of bonuses and incentive-based compensation. As explained below in footnote 2, this perfunctory attempt at differentiation has no bearing on demand futility and, in any event, the purported Sarbanes-Oxley count does not even state a claim on which relief can be granted.

In addition to the collateral estoppel effect of his ruling, Judge Rubine was correct that Plaintiff's demand futility claim falls short of Rule 23.1's heightened pleading requirements. Indeed, while Rule 23.1 requires particularity as to why a majority of the seven directors in this case cannot fairly evaluate a demand, Mehrvar, and now Ji, merely make the same generalized allegations that each, by virtue of his position as director, must have known of the alleged underlying fraud. The courts uniformly recognize that such non-particularized allegations must fail, as otherwise they would nullify the strict requirements of Rule 23.1. Judge Rubine reached this conclusion after a full and fair hearing and properly dismissed the Mehrvar Complaint in a detailed written decision. Ji's copycat Complaint must be dismissed now as well, either on collateral estoppel grounds or, alternatively, on the merits of the Rule 23.1 issue.

## ARGUMENT

### I. COLLATERAL ESTOPPEL MANDATES DISMISSAL BECAUSE THE ISSUE OF DEMAND FUTILITY AS ALLEGED IN JI'S COMPLAINT HAS ALREADY BEEN ADJUDICATED.

The doctrine of collateral estoppel precludes re-litigation in this case of the same demand futility question that was fully resolved in Mehrvar. Under the doctrine of collateral estoppel, also referred to as issue preclusion, once a court has decided an issue of fact and/or law necessary to a judgment, such decision will preclude re-litigation of the same issue in a subsequent suit in another court. Allen v. McCurry, 449 U.S. 90, 94 (1980).[2] To be clear,

[2] While the terminology used in the area of preclusion is somewhat confused, Migra v. Warren City Sch. Dist. Bd. of Educ., 104 S.Ct. 892, 894 n.1 (1984), it is clear that claim preclusion applies in subsequent actions among the same parties whether the subsequent matter is on the same or different claims. Restatement (Second) of Judgments § 27 (1982). Technically, issue preclusion consists of: (1) collateral estoppel, which is the correct term when the subsequent action is on a different claim or cause of action; and (2) "direct estoppel" which is the technically correct term to use when the subsequent action raises the same claim as the first suit. In re Duncan, 713 F.2d 538, 541 (9th Cir. 1983) ("Issue preclusion in a second action on the same claim is designated direct estoppel, while issue preclusion in a second action brought on a different claim is termed collateral estoppel."). While "purists" may be obliged to refer to the latter form as "direct estoppel," 18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4402 (2005), in order to avoid confusion as "direct estoppel" is not a commonly-known term, courts often refer to both strains of issue preclusion as simply collateral estoppel. United States v. Shenberg, 89 F.3d 1461, 1478-79 (11th Cir. 1996) (discussing the difference between "direct" and "collateral" estoppel, observing that issue

Defendants do not seek to invoke res judicata (claim preclusion) as to the entire case; instead, they seek to apply the narrower doctrine of collateral estoppel (issue preclusion) to the single issue of whether this particular Complaint passes Rule 23.1's demand futility requirement.[3]

**A. <u>The Doctrine of Collateral Estoppel Protects Constitutional Principles and Advances Important Public Policies.</u>**

Collateral estoppel upholds important interests as it "relieve[s] parties of the cost and vexation of multiple lawsuits, conserve[s] judicial resources, and, by preventing inconsistent decisions, encourage[s] reliance on adjudication." <u>Allen v. McCurry</u>, 449 U.S. 90, 94 (1980). The Supreme Court has also explained that adherence to collateral estoppel "promote[s] the comity between state and federal courts that has been recognized as a bulwark of the federal system." <u>Id.</u> at 96. In fact, while the principles of collateral estoppel are "ancient," the Full Faith and Credit Clause of the United States Constitution mandates that these principles be given credence, as does the Federal full faith and credit statute, which dates to 1790. <u>San Remo Hotel, L.P. v. City and County of San Francisco</u>, 125 S. Ct. 2491, 2500 (2005):

> Article IV, § 1, of the United States Constitution demands that "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof." In 1790, Congress responded to the Constitution's invitation by enacting the first version of the full faith and credit statute. See Act of May 26, 1790, ch. 11, 1 Stat. 122. The modern version of the statute, 28 U.S.C. § 1738, provides that "judicial proceedings . . . shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such

---

preclusion principles are the same under both, and using the term "collateral estoppel" in a case involving direct estoppel to avoid confusion). Courts have also begun simply referring to the doctrine as issue preclusion. Wright, Miller & Cooper, <u>supra</u> § 4402.

[3] "Under the doctrine of res judicata, a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action. Under the doctrine of collateral estoppel, on the other hand . . . the judgment in the prior suit precludes relitigation of issues actually litigated and necessary to the outcome of the first action." <u>Parklane Hosiery Co., Inc. v. Shore</u>, 439 U.S. 322, 326 n.5 (1979).

> State . . . ." This statute has long been understood to encompass the doctrines of res judicata, or "claim preclusion," and collateral estoppel, or "issue preclusion."

Id. (quoting Allen, 449 U.S. at 96). Further, application of collateral estoppel is not discretionary; when applicable, the doctrine must be applied. See id. at 2502 ("Federal courts, moreover, are not free to disregard 28 U.S.C. § 1738."). Failure to apply the doctrine when applicable results in reversal. See Allen, 449 U.S. at 105 (reversing Court of Appeals affirmance of district court's refusal to apply collateral estoppel).

In the full faith and credit statute, "Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgment emerged would do so." Allen, 449 U.S. at 96 (citing 28 U.S.C. § 1738). Accordingly, "[i]n ascertaining whether issue preclusion flows as a consequence of previous state court litigation, a federal court must look to state law." Nottingham Partners v. Trans-Lux Corp., 925 F.2d 29, 32 (1st Cir. 1991) (citing Allen, 449 U.S. at 96).

Rhode Island law, like federal law, provides that "[u]nder the doctrine of collateral estoppel, also known as issue preclusion, certain legal and factual issues litigated and resolved in a previous action may not be re-litigated in a subsequent action." Ret. Bd. of the Employees' Ret. Sys. of R.I. v. DiPrete, 845 A.2d 270, 282 (R.I. 2004). More particularly, under Rhode Island law, collateral estoppel will apply if there is "'(1) an identity of issues; (2) a final judgment on the merits; and (3) an establishment that the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior action.'" Id. (citation omitted). As explained below, all three elements are met in the present case.

### B. The Demand Futility Issue Here Is Identical to the Demand Futility Issue Decided in Mehrvar.

The first element of collateral estoppel is fulfilled if the issue before the court is one litigated in a prior action. The requirement of identity of issues has been subdivided into three

factors: "(1) the issue sought to be precluded must be identical to the issue determined in the earlier proceeding, (2) the issue must actually have been litigated in the prior proceeding, and (3) the issue must necessarily have been decided." E.W. Audet & Sons, Inc. v. Fireman's Fund Ins. Co. of Newark, N.J., 635 A.2d 1181, 1186 (R.I. 1994). All of these factors are plainly present here. First, the same issue is before the Court today as was before Judge Rubine: whether the Mehrvar/Ji Complaints, which are materially identical, adequately make out a case of demand futility.[4] The issue of demand futility was fully litigated in Mehrvar. Indeed, the parties fully briefed the matter and Judge Rubine heard oral argument that lasted in excess of two hours and issued a lengthy and comprehensive written decision on the very issue of demand futility. Certainly it was "necessary" to decide the issue of demand futility in Mehrvar, as a derivative case cannot proceed without a demand or a showing of futility, and the motion to dismiss was made, and granted, solely on that ground. The doctrine of collateral estoppel is designed precisely to relieve the court and litigants from re-litigating this issue.

### C. The Mehrvar Decision Was Final on the Issue of Demand Futility.

The second element of collateral estoppel requires that the prior ruling represented a final judgment on the merits of the issue. DiPrete, 845 A.2d at 282. The Restatement (Second) of Judgments, which the Rhode Island Supreme Court recognizes as authoritative on collateral estoppel, see E.W. Audet and Sons, Inc., 635 A.2d at 1186, explains that a judgment in a prior

[4] The only notable change made by Ji when he copied the Mehrvar Complaint appears in Ji's sixth cause of action for breach of Section 304 of the Sarbanes-Oxley Act (15 U.S.C. § 7243). See Ji Complaint ¶¶109-10. This attempted addition is of no consequence here. First, as Defendants established in their memorandum in support of their motion to abstain (dkt. no. 4, at p. 14), the sixth cause of action does not state a claim because there is no private right of action under Section 304. The statutory text lacks any express grant of a private right of action, a fact which is generally fatal to an assertion of a private claim. Further, every court to have addressed the issue agrees that there is no private right of action under Section 304. Neer v. Pelino, 389 F. Supp. 2d 648, 651-57 (E.D. Pa. 2005) (holding no private right of action under Section 304); Mehlenbacher v. Jitaru, No. 04-1118, slip op. (M.D. Fla. June 6, 2005) (same) (attached at App. Ex. 3 to Defendants' Motion to Abstain). Second, Section 304, on its face, applies only when a company has made a financial restatement, which did not happen, and is not alleged, in this case. Third, in any event, the mere existence of a Section 304 count, even if valid, would have no impact on the demand futility allegations in this case.

matter is deemed final for collateral estoppel purposes if it is "sufficiently firm to be accorded conclusive effect." Restatement (Second) of Judgments § 13 (1982). There is no bright line test, and finality for collateral estoppel purposes "'may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again.'" O'Reilly v. Malon, 747 F.2d 820, 823 (1st Cir. 1984) (quoting Lummus Co. v. Commonwealth Oil Ref. Co., 297 F.2d 80, 89 (2d Cir. 1961)).[5] The Restatement, and case law,[6] set forth a number of factors that may be useful in assessing whether a prior ruling was sufficiently firm to be given preclusive effect including: (1) whether the parties were fully heard, (2) whether the court supported its decision with a reasoned opinion, and (3) whether the decision was subject to appeal. Restatement (Second) of Judgments § 13 cmt. g.

With regard to the first Restatement factor, the parties in Mehrvar were fully heard on the demand futility issue. Both sides submitted comprehensive briefing on the precise issue of whether the complaint adequately alleges demand futility. Judge Rubine also heard oral argument that lasted in excess of two hours on the issue.

Turning to the second factor referenced in the Restatement, Judge Rubine supported his decision with a well-reasoned and comprehensive written decision, further supporting a finding of finality for collateral estoppel purposes. See Ex. 1 to App.

The third Restatement factor on finality is also met here as the Mehrvar decision, even though without prejudice, is final. For one thing, the Mehrvar ruling is (or was) subject to

---

[5] See also Dyndul v. Dyndul, 620 F.2d 409, 412 (3d Cir. 1980) ("Finality for purposes of issue preclusion is a more 'pliant' concept than it would be in other contexts. . . . [Finality] may mean little more than that the litigation of a particular issue has reached such a point that a court sees no really good reason for permitting it to be litigated again.").

[6] See O'Reilly, 747 F.2d at 823 ("'Whether a judgment, not 'final' in the sense of 28 U.S.C. § 1291, ought nevertheless be considered 'final' in the sense of precluding further litigation of the same issue, turns upon such factors as the nature of the decision (i.e., that it was not avowedly tentative), the adequacy of the hearing, and the opportunity for review.'") (citations omitted).

appeal. Pursuant to Rhode Island law, a dismissal of a complaint without prejudice is appealable if "it leaves nothing further to be done in that particular dismissed lawsuit." Jackson v. Med. Coaches, 734 A.2d 502, 504 (1999); see also Acevedo-Villalobos v. Hernandez, 22 F.3d 384, 388 (1st Cir. 1994) (same). As Ji noted in his opposition to the Defendant's motion to abstain, Judge Rubine's decision was a final and appealable decision dismissing the case. In ruling on the motion to abstain, this Court noted that even though Judge Rubine's dismissal was without prejudice, it wiped the slate clean and resulted in a complete dismissal of the case: "there exists now no suit in state court . . . ." Order of December 6, 2005 at 3. Review of the Mehrvar case docket confirms the same, namely that "judgment [has] entered" and the case is closed (attached hereto at Ex. B). There is "nothing further to be done in that particular dismissed lawsuit" and thus it is final. Jackson, 734 A.2d at 504.

Further, while appealability is not a prerequisite to a finding of finality for issue preclusion purposes, and a non-appealable ruling may be given preclusive effect if it has been fully litigated, "[i]f appellate review is available, a failure to pursue an appeal clearly renders the district court's decision final for issue preclusion." 18 Moore's Federal Practice § 132.03[5][b] at 132-129 (3d ed. 2005). Here, Mehrvar allowed the appeal period to pass without filing an appeal of Judge Rubine's decision.

Courts have often explained that where a case is dismissed without prejudice, the plaintiff may file a new case on the same cause of action, but collateral estoppel will nevertheless prevent re-litigation of any issue that was actually and fully litigated. See Offshore Sportswear, Inc. v. Vuarnet Int'l, 114 F.3d 848 (9th Cir. 1997) (An order dismissing an action based on a forum selection clause is preclusive on the issue of the applicability and enforceability of the clause when the issues and the parties are the same, and the plaintiff may not re-litigate these issues

even though the dismissal of the prior action was "without prejudice."); Miller v. Norris, 247 F.3d 736, 739 (8th Cir. 2001) ("Although the dismissal was without prejudice, 'an *issue* actually decided in a non-merits dismissal is given preclusive effect in a subsequent action between the same parties.'") (citation omitted); Kitces v. Wood, 917 F. Supp. 338, 342 (D.N.J. 1996) (same).

For example, in Muñiz Cortes v. Intermedics, Inc., 229 F.3d 12 (1st Cir. 2000), the Superior Court of Puerto Rico granted summary judgment for the defendant in a products liability case brought under the Puerto Rico Civil Code on grounds that the claims were preempted by the Federal Food, Drug and Cosmetics Act. Rather than appeal, the plaintiff re-filed his suit in the United States District Court for the District of Puerto Rico. Id. at 13. The District Court, and the First Circuit, concluded that "even assuming arguendo that res judicata does not bar the federal district court from adjudicating appellants' *claims*, the doctrine of collateral estoppel prevents the court from rehearing the *issue* of preemption." Id. at 14. The First Circuit explained that, while res judicata does not bar a plaintiff from bringing a *claim* in federal court similar to one brought in state court that was dismissed for a reason other than the underlying merits, "the doctrine of collateral estoppel prevents the court from rehearing the *issue* [that the Superior Court already decided]." Id.

An excellent example of the application of collateral estoppel in the same context now before the Court is provided by In re Kauffman Mutual Fund Actions, 479 F.2d 257 (1st Cir. 1973), itself a derivative action. The district court dismissed the case without prejudice on demand futility grounds, finding that the complaint failed adequately to allege reasons for not making a demand under Rule 23.1. The First Circuit affirmed the dismissal and went on to explain that while the dismissal was without prejudice as to plaintiff's rights to litigate the

underlying merits of the derivative action, the finding that demand futility was not met would be given preclusive effect in future suits:

> In affirming we must, however, comment upon one phrase in the order of the district court granting the motion to dismiss, that it is "without prejudice." This must mean without prejudice as to the substantive cause of action. The dismissal is with prejudice on the issue of the obligation to make a demand on the directors with respect to that substantive complaint. The principle applies that "[a]lthough, where a judgment for the defendant is not on the merits, the plaintiff is not precluded from maintaining a new action on the same cause of action, he is precluded from relitigating the very question which was litigated in the prior action."

Id. at 267 (citations omitted).

Accordingly, Judge Rubine's ruling was final for collateral estoppel purposes. While this does not foreclose Ji's opportunity to litigate the underlying merits of his claims, it does foreclose re-litigation of the issue that was heard and decided by the Rhode Island Superior Court and the issue on which dismissal was based -- the adequacy of the allegations in the Mehrvar/Ji Complaints of demand futility under Rule 23.1.

**D. For Collateral Estoppel Purposes, the Parties Are Identical.**

Pursuant to Rhode Island (and First Circuit) law, the third element of collateral estoppel requires that "the parties are the same or in privity with the parties of the previous proceeding." Lee v. Rhode Island Council 94, A.F.S.C.M.E., AFL-CIO, Local 186, 796 A.2d 1080, 1084 (R.I. 2002). "[I]n shareholder derivative actions arising under Fed. R. Civ. P. 23.1, parties and their privies include the corporation and all nonparty shareholders." Nathan v. Rowen, 651 F.2d 1223, 1226 (6th Cir. 1981). Because derivative actions are brought in the name of the corporation to enforce the rights of the corporation and redress corporate harm, the corporation is deemed the plaintiff for res judicata and collateral estoppel purposes. Mottolese v. Kaufman, 176 F.2d 301, 302 (2d Cir. 1949) (L. Hand, J.) ("The real plaintiff in interest there and here is not the shareholder, but, as in all shareholders' derivative suits, the [] Company; and a judgment in

the state action, if indeed not an absolute bar in this action, would at least be an estoppel as to the controlling issues."); Cramer v. Gen. Tel. & Elecs., Corp., 582 F.2d 259, 267 (3d Cir. 1978) (finding that requirement of identity of parties for preclusion purposes was met in subsequent derivative action brought by different shareholder because "[i]n a shareholders' derivative suit, the substantive claim belongs to the corporation"); Berman v. Thomson, 403 F. Supp. 695, 700-01 (N.D. Ill. 1975) (same); Nathan, 651 F.2d at 1226 (same).

The plaintiff in Mehrvar and in Ji is therefore the same for collateral estoppel purposes -- KVH. The defendants named in each case also happen to be the same, so there is complete identity of parties.[7] All of the elements of collateral estoppel are thus fulfilled and Ji is precluded from relitigating the demand futility issue determined in Mehrvar.

## E. The Doctrinal Result Is Also Logical and Fair.

Not only is this result mandated by law, it makes eminent sense. Mehrvar's counsel drafted the complaint and brought it to state court seeking to initiate suit on behalf of KVH against its directors and CFO. By motion, Defendants tested whether the complaint made out a case of demand futility. After full briefing and argument by counsel, the court issued an authoritative decision finding that the Complaint does not clear the high hurdle imposed by Rule 23.1. Thus, the issue has been decided.

Defendants are not seeking broad-based preclusion here, but the contrary. Defendants are not asking that the underlying claims be precluded from consideration or even that Ji or any other shareholder be precluded from attempting to satisfy the demand or demand futility requirements of Rule 23.1. Instead, Defendants today simply seek to preclude re-litigation of a very narrow

[7] See Blonder - Tongue Labs., Inc. v. Univ. of Illinois Found., 402 U.S. 313, 329 (1971) (A plaintiff is estopped from asserting a claim that the plaintiff had previously litigated and lost even when the defendants are not the same).

issue, namely whether this Complaint, which was copied from the complaint at issue in Mehrvar, satisfies Rule 23.1's demand futility requirements.

Ji, who did nothing more than crib the Mehrvar Complaint and seek to initiate in federal court the same suit between the same parties relying on the same demand futility allegations, should be bound by Judge Rubine's Rule 23.1 opinion. Any other result would waste judicial resources, do violence to both collateral estoppel and full faith and credit, and leave corporations and their directors open to an endless procession of copycat suits. Accordingly, Judge Rubine's holding that this Complaint fails to clear Rule 23.1 should be given preclusive effect and the Ji Complaint should be dismissed under Rule 23.1.

## II. THE COMPLAINT MUST BE DISMISSED FOR FAILURE TO ALLEGE DEMAND FUTILITY WITH THE REQUISITE PARTICULARITY.

Even without applying collateral estoppel, dismissal under Rule 23.1 must nevertheless follow because that is the only result the Court can reach on the merits of the question.

A derivative action permits an individual shareholder to bring suit to enforce a corporate cause of action against officers, directors, and third parties. Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 95 (1991). In discussing the origins of the derivative suit and the demand requirement, the Supreme Court explained:

> Devised as a suit in equity, the purpose of the derivative action was to place in the hands of the individual shareholder a means to protect the interests of the corporation from the misfeasance and malfeasance of "faithless directors and managers." To prevent abuse of this remedy, however, equity courts established as a "precondition for the suit" that the shareholder demonstrate "that the corporation itself had refused to proceed after suitable demand, unless excused by *extraordinary conditions*."

Id. at 95-96 (citation omitted) (emphasis added).

The requirement that the shareholder instituting a derivative action first make demand on the corporation to do so, or demonstrate that such demand is "excused by extraordinary

conditions," has been codified in Fed. R. Civ. P. 23.1. Turul v. Rogatol Distribs., Inc., 951 F.2d 1, 2 (1st Cir. 1991). The First Circuit has explained that, unlike Rule 8 and its basic notice pleading requirements, "Rule 23.1 is not an ordinary, but an exceptional rule of pleading, serving a special purpose, and requiring a different judicial approach." In re Kauffman Mut. Fund Actions, 479 F.2d at 263. The underlying policy recognizes that it is the directors, not individual shareholders, who conduct the affairs of the company, including deciding when to bring suit on the company's behalf. Id. "A shareholder derivative action is an action of last resort" and before a shareholder may be allowed, *sua sponte*, to usurp this corporate power, he must demonstrate, why the case at hand is sufficiently exceptional to allow such a deviation from the ordinary course. Id.; Turul, 951 F.2d at 2. To do so, "a shareholder must plead with particularity either that demand was made on the corporation or that demand was futile." (citing Fed. R. Civ. P. 23.1). "This circuit vigorously enforces this requirement and will dismiss derivative actions when plaintiffs do not comply." Turul, 951 F.2d at 2.

### A. The Substantive Law of Delaware Governs the Demand Futility Analysis.

While Federal Rule of Civil Procedure 23.1 codifies the demand requirement, the contours of futility law involve substantive corporate matters governed by the law of the state of incorporation. Kamen, 500 U.S. at 108-09; Turul, 951 F.2d at 2; Rales v. Blasband, 634 A.2d 927, 932 n.7 (Del. 1993) ("The United States Supreme Court has recognized that the demand requirements for a derivative suit are determined by the law of the state of incorporation."). Because KVH is a Delaware corporation (see Ji Complaint ¶ 7), Delaware substantive law governs the demand futility analysis.

### B. Plaintiff Faces a Heavy Burden in Pleading Demand Futility.

Under Delaware law, it is clear that "[i]f a claim belongs to the corporation, it is the corporation, acting through its board of directors, which must make the decision whether or not

to assert the claim." Grimes v. Donald, 673 A.2d 1207, 1215 (Del. 1996). The Delaware Supreme Court explained in the seminal case of Aronson v. Lewis, 473 A.2d 805 (Del. 1984), that "[a] cardinal precept of the General Corporation Law of the State of Delaware is that directors, rather than shareholders, manage the business and affairs of the corporation" and "[b]y its very nature, the derivative action impinges on the managerial freedom of directors." Id. at 811-12. The demand requirement "exists at the threshold, first to insure that a stockholder exhausts his intracorporate remedies, and then to provide a safeguard against strike suits." Id. at 812.

The demand requirement is not a mere formality of litigation. Rather, it is an important stricture of substantive law. Levine v. Smith, 591 A.2d 194, 207 (Del. 1991). Accordingly, a shareholder's failure to satisfy the demand requirement precludes a court from considering the merits of an otherwise valid claim. Haber v. Bell, 465 A.2d 353, 357 (Del. Ch. 1983).

A plaintiff who has not made a pre-suit demand must show that demand would have been futile. The *sine qua non* of a successful assertion of demand futility is a showing that a majority of the directors were so compromised that they were "incapable of making an impartial decision" regarding whether to bring suit. Rales, 634 A.2d at 932. Pursuant to the business judgment rule, the directors of a corporation enjoy a "powerful presumption" that they acted and would act independently and properly in connection with the challenged transaction and any demand to bring suit. Id. at 933. Plaintiff bears the burden at the pleading stage of overcoming this strong presumption. Id.

Additionally, a plaintiff must make his demand futility allegations *with particularity*. See Rule 23.1 (demand futility allegations must be made "with particularity"); White v. Panic, 783

A.2d 543, 551 (Del. 2001) (same). As the Delaware Supreme Court explained, the particularity requirement goes well beyond basic notice pleading:

> [demand futility] pleadings must comply with stringent requirements of factual particularity that differ substantially from the permissive notice pleadings governed solely by Chancery Rule 8(a). Rule 23.1 is not satisfied by conclusory statements or mere notice pleading.

Brehm v. Eisner, 746 A.2d 244, 254 (Del. 2000); see also Beam v. Martha Stewart Living Omnimedia, Inc., 845 A.2d 1040, 1048 (Del. 2004) ("'Conclusory allegations are not considered . . . .'"). These heightened pleading requirements are designed to "deter costly, baseless suits by creating a screening mechanism to eliminate claims where there is only a suspicion expressed solely in conclusory terms." Grimes, 673 A.2d at 1217.

To plead demand futility, a plaintiff's particularized allegations must create a reasonable doubt that: 1) the directors are disinterested and independent; or 2) the challenged transaction was otherwise the product of a valid exercise of business judgment. Aronson, 473 A.2d at 814. Where, as in this case, a plaintiff does not challenge a particular business decision (such as a board's approval of an executive compensation package), the second Aronson prong is inapplicable. Rales, 634 A.2d at 934. In cases such as this one, the issue is whether a plaintiff has shown that the directors would have been incapable of making an impartial decision on whether to bring suit due to of exposure to liability on the derivative claims. Beam, 845 A.2d at 1048.

Courts closely scrutinize the allegation that a given director is interested due to his or her potential personal liability. Because nearly every derivative complaint asserts liability against each director, the *threat of liability* is insufficient to render a director compromised; instead, particularized allegations must demonstrate "*a substantial likelihood of director liability*." Aronson, 473 A.2d at 815, 817 (emphasis added).

The demand futility test also requires that a plaintiff demonstrate not only that some of the directors lacked independence or disinterest, but that *a majority* were so lacking. Levine, 591 A.2d at 205.[8] A finding that some, but less than a majority, of the directors lacked independence is insufficient. Guttman v. Huang, 823 A.2d 492, 502 (Del. Ch. 2003).

### C. Plaintiff Has Not Met His Burden.

Plaintiff's demand futility allegations are contained in paragraph 83(a)-(n) of the Complaint. These allegations fail to meet the substantive pleading requirements established by Delaware law.

#### 1. Paragraph 83(a) -- Status as Inside Directors

Paragraph 83(a) alleges that because Arent, Martin and Robert Kits van Heyningen are inside directors, demand on each would have been futile. Delaware law is clear, however, that one's status as an officer and director does not disqualify one from considering a demand. As one of the leading Delaware corporate law treatises summarizes, "demand is not excused . . . by an allegation that directors serve as officers of the corporation." See Folk on the Delaware General Corporation Law § 327.4 at 789 (2005 ed.) (citing Delaware case law); Lewis v. Aronson, No. 6919, 1985 WL 11553 (Del. Ch. May 1, 1985) (for demand futility analysis, the fact that directors hold positions as officers with the company is not disqualifying); Kaufman v. Beal, No. 6485, 1983 WL 20295, at *5 (Del. Ch. Feb. 25, 1983) ("Nor does the mere serving on

[8] From the beginning of the period in question through today, KVH has had a board of directors consisting of the same seven individuals, all of whom are named defendants here. See Ji Complaint ¶ 75. At least four of the seven directors, Mark Ain, Stanley Honey, Bruce Ryan, and Charles Trimble, are outside directors not otherwise employed by the Company. Id. at ¶¶ 12-15. These same four outside directors (Ain, Honey, Ryan and Trimble) hold all of the positions on the board's various committees, including its Audit Committee, Compensation Committee, and Nominating and Corporate Governance Committee. Id. Directors Ain, Ryan and Trimble sit on the three committees (Audit Committee, Compensation Committee, and Nominating and Corporate Governance Committee) while Honey sits only on the Nominating and Corporate Governance Committees. Id.

a Board of Directors or serving as an officer of a corporation demonstrate control or domination."); Tabas v. Mullane, 608 F. Supp. 759, 767 (D.N.J. 1985) (same).

Any other rule would seriously lower the high bar set by Rule 23.1, as every director who also happens to hold a position with the company would immediately be disqualified. This is not the law. What is needed to disqualify a director is not a boilerplate allegation that he is a director, the chairman of the board, or an officer, but rather a particularized explanation of why, under the circumstances at hand, he cannot neutrally evaluate a demand.

**2. Paragraph 83(b) -- Familial Relationships**

In paragraph 83(b), Plaintiff alleges that because Arent, Martin, and Robert Kits van Heyningen are related (father and sons), they would never vote to take action against one another, so demand upon each would be futile. Plaintiff fails, however, to support this conclusory allegation with any reasoned explanation. See Mehrvar, 2005 WL 2385939, at *4 (bare allegations that Martin, Arent and Robert Kits van Heyningen were founders and related were insufficient to excuse demand). By the same logic (or *a fortiori*), no director would ever vote to proceed with a suit in which he was named as a defendant because he would be voting to proceed against himself. The courts have held that because this type of allegation could be made in nearly every case, it is meaningless:

> Plaintiff's final argument is the incantation that demand is excused because the directors otherwise would have to sue themselves . . . This bootstrap argument has been made to and dismissed by other courts . . . . Its acceptance would effectively abrogate Rule 23.1 and weaken the managerial power of directors. Unless facts are alleged with particularity to overcome the presumptions of independence and a proper exercise of business judgment, in which case the directors could not be expected to sue themselves, a bare claim of this sort raises no legally cognizable issue under Delaware corporate law.

Aronson, 473 A.2d at 818. Thus, in alleging that the three Kits van Heyningen family members cannot be expected to sue each other "[p]laintiff is merely uttering a slightly altered version of

the discredited refrain -- 'you can't expect directors to sue themselves.'" Seminaris v. Landa, 662 A.2d 1350, 1355 (Del. Ch. 1995).

### 3. Paragraph 83(c) -- Business Relationships

Paragraph 83(c) alleges that Arent and Robert Kits van Heyningen were both engineers at Raytheon and so would not sue each other. While Plaintiff fails to provide any particulars, the Mehrvar Complaint that he copied attempts to do so by alleging that Arent worked at Raytheon as an engineer from 1963 until 1986 and Robert worked there from 1979 until 1982. See Mehrvar Complaint ¶ 75(g)(iv). The relevance of this common three- or four-year work period occurring twenty-two plus years ago is unexplained. Aronson teaches that in order to make a meaningful allegation that directors' "personal or other relationships" have affected their independence, a plaintiff must demonstrate not just that the directors have some relation with one another (as they often do), but that the directors "are beholden" to one another. See Aronson, 473 A.2d at 815; see also Sachs v. Sprague, -- F. Supp. 2d --, 2005 WL 3116592, at *5 (D. Mass. Nov. 22, 2005) (attached at Ex. 2 to App.) (allegations of directors' close personal ties are insufficient to excuse demand without facts "'that would support the inference that . . . non-interested director would be more willing to risk his or her reputation than risk the relationship with the interested director'"); Mehrvar, 2005 WL 2385939, at *6 ("the mere general allegation that one or more directors have personal or business affiliations with one another is insufficient to excuse demand"); In re Paxson Commc'n Corp. S'holders Litig., No. 17568, 2001 WL 812028, at *10 (Del. Ch. July 12, 2001) (allegations that board members "have close personal and business ties with each other" are too conclusory to prove anything under the strict pleading requirements of Rule 23.1).

**4. Paragraph 83(d) -- Ownership of 6.9% of KVH**

Paragraph 83(d) alleges that because the three Kits van Heyningens own a total of 6.9% of the KVH's stock and are related, it is extremely likely that they so dominate the board that the remaining directors are indebted to them for their positions and would not vote to sue them.

Because every corporation necessarily has individuals, including majority shareholders and directors, with the power to elect directors or set director compensation, much more must be alleged to overcome the demand requirement than the fact that such individuals may possess such powers. First, plaintiffs must establish, through particularized allegations, that the controlling person himself is "interested" in the transaction at hand. Brehm v. Eisner, 746 A.2d at 257; see also Sachs, 2005 WL 3116592, at *7 ("[the] argument of voting control and general board pliancy has been emphatically rejected"); Caviness v. Evans, 229 F.R.D. 354 (D. Mass. 2005) (attached at Ex. 3 to App.) (bald assertion that the board of directors was controlled by one individual did not excuse demand because the complaint failed to particularize how the directors are beholden to that one individual); In re Sonus Networks, Inc. Derivative Litig., 18 Mass. L. Rptr. 295, 2004 WL 2341395, at *5 (Mass. Super. Ct. Sept. 27, 2004) (attached at Ex. 4 to App.) ("There are allegations that Fern and Severino, by virtue of their positions on Sonus's Compensation Committee, exert control over fellow board members. Again, however, there are no particularized allegations of any interest on the part of these allegedly controlling directors that would render them less than disinterested and independent." (citing Brehm)).

Second, plaintiff must set forth particularized facts showing not only the potential for control, but particular examples of actual control by the allegedly controlling person over the directors in question. Boilerplate allegations of control and domination are insufficient.

Aronson, 473 A.2d at 815-16 ("The shorthand shibboleth of 'dominated and controlled directors' is insufficient."). Instead:

> [I]n the demand context even proof of majority ownership of a company does not strip the directors of the presumptions of independence, and that their acts have been taken in good faith and in the best interests of the corporation. There must be coupled with the allegation of control such facts as would demonstrate that through personal or other relationships the directors are beholden to the controlling person. . . . [that is, plaintiff] must allege particularized facts manifesting "a direction of corporate conduct in such a way as to comport with the wishes or interests of the corporation (or persons) doing the controlling."

Aronson, 473 A.2d at 815-16 (citations omitted). In Aronson, the allegedly controlling shareholder owned 47% of the company, and that allegation, without any particulars of actual control over the other directors' will, was inadequate. See also Wilen v. Pollution Control Indus., Inc., No. 7254, 1984 WL 8272, at *3 (Del. Ch. Oct 15, 1984) (stating that whereas 47% ownership standing alone in Aronson was inadequate, "the allegation of mere ownership of 20% of the stock of Pollution Control, absent any allegation of facts showing exercise of control, is not a sufficient allegation to state a claim based on domination of the Board").

Here, Plaintiff fails to allege with particularity that Arent, Robert, or Martin Kits van Heyningen lacks independence. Plaintiff also fails to allege that Arent, Robert, or Martin Kits van Heyningen ever even attempted to use any power they may have to control the other board members, or that any director is in fact "beholden" to them. Accordingly, this boilerplate allegation also must fail.

### 5. Paragraphs 83(e), 83(f) and 83(n) -- Being Directors, Participating in Wrongs and Being on the Audit Committee

Paragraphs 83(e) and 83(f) allege, without any added particularity, that the Defendants "participated in, approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts to conceal or disguise those wrongs." Paragraph 83(n) alleges that the three outside directors who make up the Audit Committee (Ain, Ryan and Trimble), by virtue of

their position on that committee, allowed allegedly improper financials to be published. Such bland and wholly conclusory allegations must be disregarded. Caviness, 229 F.R.D. at 360 ("[C]onclusory allegation that [a member of the audit committee] breached her supervisory duties, without more, fails to establish reasonable doubt that [she] is disinterested.").

First, "the mere approval of a corporate action, absent any allegation of particularized facts supporting a breach of fiduciary duty or other indications of bias, will not disqualify the director from subsequently considering a pre-suit demand to rectify the challenged transaction." Kaufman v. Belmont, 479 A.2d 282, 288 (Del. Ch. 1984). Without any particulars, these allegations in essence assert that each and every director, simply by virtue of his position as a director, participated in the "wrongs complained of herein." Merely alleging that a director knows undisclosed adverse matters by virtue of his position alone necessarily fails to establish demand futility, Rattner v. Bidzos, No. 19700, 2003 WL 22284323, at *10 n.53 (Del. Ch. Oct. 7, 2003), as otherwise, "the demand requirements of our law would be meaningless." Aronson, 473 A.2d at 814; see also Mehrvar, 2005 WL 2385939, at *4 (solely pleading that director knew of wrongful conduct by virtue of his position is insufficient to excuse demand).

The allegation that demand would be futile simply because a director acquiesced in a challenged matter is also legally insufficient. Grossman v. Johnson, 674 F.2d 115, 124 (1st Cir. 1982) ("[M]ere 'participation' or 'acquiescence' by the directors . . . is an insufficient excuse."); In re Kauffman Mut. Fund Actions, 479 F.2d at 265 ("Where mere approval of the corporate action, absent self-interest or other indication of bias, is the sole basis for establishing the directors' 'wrongdoing' and hence for excusing demand on them, plaintiff's suit should ordinarily be dismissed."); Kaufman v. Belmont, 479 A.2d 282, 288 (Del. Ch. 1984) ("As mentioned, the mere approval of a corporate action, absent any allegation of particularized

facts supporting a breach of fiduciary duty or other indications of bias, will not disqualify the director from subsequently considering a pre-suit demand to rectify the challenged transaction."); Aronson, 473 A.2d at 814, 817 (same).

At its core, the claim Plaintiff attempts to plead here is well-known in Delaware law as a Caremark claim, which "'is possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment.'" Guttman, 823 A.2d at 505-06 n.33 (quoting In re Caremark Int'l Derivative Litig., 698 A.2d 959, 967 (Del. Ch. 1996)). To prevail on such a claim, a plaintiff must allege and prove that the directors acted in bad faith and knowingly failed to do their jobs. Id. at 506. To use a Caremark claim to clear Rule 23.1, a plaintiff must allege such failure with the requisite particularity. Sachs, 2005 WL 3116592, at *5. Plaintiff simply fails to do so.

In Guttman, the plaintiff attempted to allege that the directors on the audit committee failed to do their jobs and thus demand on them would be futile. See Guttman, 823 A.2d at 497. The Guttman court rejected this attempt, noting that successful pleading in that context required the plaintiff to allege with particularity "that the company lacked an audit committee, that the company had an audit committee that met only sporadically and devoted patently inadequate time to its work or that the audit committee had clear notice of serious accounting irregularities and simply chose to ignore them or, even worse, to encourage their continuation." Id. at 506-507. In Guttman, because plaintiff's demand futility allegations against the audit committee members were general and based on their positions alone -- as they are here -- the court found demand was not excused, and explained as follows:

> From the complaint, it is impossible to tell anything about the financial compliance systems in place at [the company] during the Contested Period. . . . For all I know, [the company's] audit committee met six times a year for half-day sessions, was comprised entirely of independent directors, had retained a qualified

> and independent audit firm that performed no other services for the company, was given no notice of the alleged irregularities by either management or the audit firm, had paid its audit firm to perform professionally credible random tests of management's integrity in recording revenue and other important financial data, and could not have been expected to discover the accounting irregularities, even when exercising a good faith effort, because discovery required disclosure by management or uncovering by the auditors of conduct deep below the surface of the financial statements.

Id. at 507; see also Sachs, 2005 WL 3116592, at *5 (demand not excused where the complaint lacked particularized allegations of "'sustained and systematic failure of the board to exercise oversight'") (quoting Guttman 823 A.2d at 506); Caviness, 229 F.R.D. at 360 (to advance the claim for failure to exercise oversight, plaintiff *must* plead particularized facts showing that "the company lacked an audit committee, that the company had an audit committee that met only sporadically and devoted patently inadequate time to its work, or that the audit committee had clear notice of serious accounting irregularities and simply chose to ignore them or . . . to encourage their continuation"); Mehrvar, 2005 WL 2385939, at *4 ("[I]n order to survive a demand futility motion to dismiss, the Complaint should contain particularized facts regarding the company's internal controls during the [Class] Period, including the actions and practices of the Audit Committee."). The same holds true of the instant complaint.

### 6. Paragraphs 83(g) -- Directors Suing Themselves

In paragraph 83(g), Plaintiff alleges that to bring suit, the directors would have to sue themselves. As noted above, because this allegation could be made in nearly every case, it is meaningless.

> Plaintiff's final argument is the incantation that demand is excused because the directors otherwise would have to sue themselves . . . . This bootstrap argument has been made to and dismissed by other courts. Its acceptance would effectively abrogate Rule 23.1 and weaken the managerial power of directors. Unless facts are alleged with particularity to overcome the presumptions of independence and a proper exercise of business judgment, in which case the directors could not be expected to sue themselves, a bare claim of this sort raises no legally cognizable issue under Delaware corporate law.

Aronson, 473 A.2d at 818 (citations omitted); see also Heit v. Baird, 567 F.2d 1157, 1161 (1st Cir. 1977) ("Merely making disinterested directors as defendants does not allow the prosecutor of a derivative suit to avoid his duty to make a demand on them."); Mehrvar, 2005 WL 2385939, at *5 (allegation that demand is excused because the directors would be forced to sue themselves is insufficient). No such particularity is provided. This allegation must therefore be disregarded.

**7. Paragraphs 83(h) -- Acts Constitute Violations of Duty**

Here, Plaintiff alleges that the acts complained of constitute violations of fiduciary duties and are incapable of ratification. The bare and conclusory allegation that unspecified acts constitute violations of fiduciary duties cannot be credited in a Rule 23.1 analysis. See Brehm, 746 A.2d at 254 (Rule 23.1 "pleadings must comply with stringent requirements of factual particularity that differ substantially from the permissive notice pleadings governed solely by Chancery Rule 8(a). Rule 23.1 is not satisfied by conclusory statements or mere notice pleading."). Further, it is entirely unclear how the allegation relating to ratification is at all relevant to this analysis. If this point is supposed to be that refusal of a demand for suit would amount to an impermissible ratification of the breaches of duty that Plaintiff complains about, his logic is once again circular. If merely including a claim of breach of fiduciary duty could by itself disable the directors from considering a demand, Rule 23.1 would be rendered useless.

**8. Paragraphs 83(i) -- Securities Law Liability**

Paragraph 83(i) alleges that the derivative suit would expose the directors to further securities law liability. This is a strange allegation because there already is a federal securities law class action pending in this Court and the allegations in the present Complaint were copied from the Mehrvar Complaint, which is itself copied from the Securities Action complaint. The federal Securities Action, amended once already, only targets a single director, Martin Kits van Heyningen. Plaintiff's suggestion here that this derivative action, copied second-hand from the

federal Securities Action, will cause further securities claims to be asserted makes no sense. "[T]he mere threat of personal liability" fails to pass muster under Rule 23.1; instead "a substantial likelihood of director liability," which is lacking here, is required. Aronson, 473 A.2d at 815, 817.

**9. Paragraphs 83(j) -- Failure To Act**

Paragraph 83(j) alleges that despite KVH's expected losses from "the wrongs complained of herein," the directors have failed to sue themselves, further evincing their bias. Plaintiff, however, fails to show the relevance of this allegation. In all events, a general allegation of failure by the directors to bring suit must be rejected, as such inaction will always exist by definition when demand futility is asserted. As the Delaware Court explained:

> Plaintiff next contends that the corporation's inaction in seeking redress against the four named individuals is proof that a demand would have been futile. The theory, I presume, is "if they were inclined to sue, they would have done so before now." Such conclusions have no basis in fact and in law. There may have been very good reasons why McDermott has decided not to sue. The point is, however, we do not know why they elected not to sue. The mere fact that they have not elected to sue before the derivative action was filed should not of itself indicate "interestedness." As a matter of fact, it is the Board's inaction in most every case which is the raison d'etre for Rule 23.1.

Richardson v. Graves, No. 6617, 1983 WL 21109, at *4 (Del. Ch. Mar. 7, 1983).

**10. Paragraphs 83(k) -- Failure To Act**

Paragraph 83(k), which is difficult to summarize because it makes so little sense, seems to allege that because the current derivative action would establish wrongdoing of the directors, they would not want to bring suit because they would be forced to take contrary positions in the derivative and securities cases, which Plaintiff presumably envisions as admitting liability in the instant action while denying it in the securities case. This is an odd proposition, because six of the seven directors are not even defendants in the Securities Action. Further, Plaintiff's bald assertion of liability here is nothing more than that – an unsubstantiated threat, which falls far

short of the requisite well-pled "substantial likelihood of director liability." Aronson, 473 A.2d at 815, 817.

**11. Paragraphs 83(l) -- Insurance Coverage**

Paragraph 83(l) alleges that if a certain variety of corporate insurance policy is in place, there may be an exclusion for suits by the corporation against directors that would discourage the directors from electing to bring suit, thereby rendering demand futile. The courts have found such allegations meaningless as another variant on the inadequate "you cannot expect directors to sue themselves" refrain. See Caviness, 229 F.R.D. at 359 (conclusory allegation that "the directors are interested because they are not covered by the Company's insurance in suits brought against them directly by the Company" failed to excuse demand); Caruana v. Saligman, No. 11135, 1990 WL 212304, at *4 (Del. Ch. Dec. 21, 1990) (rejecting conclusory allegation that company liability policy would not cover suit by corporation against directors as such policy exclusion is typical); Decker v. Clausen, Nos. 10684, 10685, 1989 WL 133617, at *2 (Del. Ch. Nov. 6, 1989) ("Decker's allegation that BAC's liability insurance would not cover an action brought by the company against its own directors and the allegation that the directors recommended a charter amendment limiting their liability are but variations on the 'directors suing themselves' and 'participating in the wrongs' refrain. They provide no particularized facts creating a reasonable doubt that the directors are disinterested or independent.").

**12. Paragraphs 83(m) -- Insider Trading**

Paragraph 83(m) alleges that two of the directors made stock sales during the "Relevant Period," from October 1, 2003 to the present. More specifically, the Amended Complaint alleges that Robert Kits van Heyningen sold 17,326 shares of KVH stock on November 17, 2003 and Charles Trimble sold 5,000 shares on November 10, 2003. Complaint ¶¶ 69-70, 83(m). The

Complaint also alleges that "[a]s a result of their access to and review of internal corporate documents, conversations with other corporate officers, employees and directors" the two selling directors necessarily knew of adverse non-public information about KVH when they made their stock sales. Complaint ¶ 83(m). The Amended Complaint further alleges that the sales were "suspicious" because they occurred during the class period in November 2003 "at the peak of defendants' improper actions" and because Defendant Trimble did not make any stock sales in the preceding year, while Robert Kits van Heyningen traded only twice in the past year, in two six-month intervals. Id. ¶ 70. Lastly, Plaintiff alleges that because these two directors allegedly made insider sales, neither would sue each other or initiate action. Id. ¶ 83(m).

As a preliminary matter, these are boilerplate allegations. The Complaint contains no specific allegations that either Robert Kits van Heyningen or Charles Trimble knew anything in particular or knew anything even generally other than by virtue of their positions within the Company.

Directors often receive stock as compensation which they must sell to convert their compensation into cash; accordingly, directors frequently sell stock. As the court explained in McCall v. Scott, 239 F.3d 808 (6th Cir. 2001), in reviewing and rejecting conclusory allegations of insider trading for demand futility purposes: "[a] director is free to trade in the corporation's stock without liability to the corporation. In fact, when directors and officers own stock or receive compensation in stock, they should be expected to trade in those securities in the normal course of events." Id. at 825 (citations omitted) (applying Delaware law); see also Guttman, 823 A.2d at 502 ("As a matter of course, corporate insiders sell company stock."). Additionally, "the complaint fails to address whether the directors traded because options were expiring or because IPO-related restrictions on liquidity had recently ended." Guttman, 823 A.2d at 504.

Because directors commonly sell stock, allegations of "insider selling" are predictably commonplace in securities and derivative complaints. Courts have nevertheless repeatedly rejected boilerplate allegations of insider trading by directors. The Delaware Chancery Court recently explained in a derivative action similar to the present one that insider trading allegations require particularized allegations of fraudulent intent by the selling insider. Id. at 505. In addressing the legal framework for demand futility for a director who sold stock, the court explained:

> [I]t is unwise to formulate a common law rule that makes a director "interested" [for demand futility purposes] whenever a derivative plaintiff cursorily alleges that he made sales of company stock in the market at a time when he possessed material, non-public information.
>
> This would create the same hair-trigger demand excusal that Aronson and Rales eschewed. The balanced approach that is more in keeping with the spirit of those important cases is to focus the impartiality analysis on whether the plaintiffs have pled particularized facts regarding the directors that create a sufficient likelihood of personal liability because they have engaged in material trading activity at a time when (one can infer from particularized pled facts that) they knew material, non-public information about the company's financial condition.

Id. at 502.

In Guttman, apparently seven of the directors had sold stock during the federal securities class action period, and plaintiffs in the derivative case alleged that the selling directors, by virtue of their position as directors, knew damaging information and thus were compromised for demand purposes. Guttman, 823 A.2d at 503-04. Plaintiffs also alleged that the sales were suspicious because they were made during the class period and were different from director sales made in the preceding year. Id. These allegations (remarkably similar to those in the instant case) were rejected by the Delaware court, which held that "[t]he cursory allegations . . . do not come close to meeting the plaintiffs' burden." Id. at 504.

The Guttman court noted that (similar to the present case) five of the directors were not even named as defendants in the underlying securities action, id., thus undermining the conclusory allegation that those directors knew of the matters alleged in the securities action. The court explained that the requisite particularized allegations were lacking as to what information came to the directors' attention and why those directors would have known about any of the alleged accounting irregularities. Id. at 503. In addressing the plaintiffs' allegation that the trading was "suspicious," the court noted that the plaintiffs alleged nothing more than that the trades were in the class period and were different in number from the amount sold the prior year. Id. at 504. The court noted that "[t]he prior year measure in itself is a weak one, covering as it does a temporally brief period." Id. The court continued and found the allegations deficient as they "fail[ed] to address whether the directors traded because options were expiring or because IPO-related restrictions on liquidity had recently ended." Id. The court found these shortcomings in the insider trading allegations to be "fatal to the plaintiffs' efforts to show demand excusal." Id.

In another similar derivative demand futility case, the Delaware Chancery Court in Rattner v. Bidzos, No. 19700, 2003 WL 22284323 (Del. Ch. Oct. 7, 2003), was confronted with allegations that directors who sold stock knew material adverse information by virtue of their position, and thus their trades were illegal and disabling events. See id. at *10 n.53. The court found such allegations too conclusory and dismissed the complaint. Even more recently, several local courts, including those within the First Circuit, applying Delaware law, have reached the same result in In re Sonus, 2004 WL 2341395, at *4 (dismissing derivative complaint for failure to plead demand futility where insider trading allegations lacked sufficient particularity to show any director impropriety); Caviness, 229 F.R.D. at 359 (conclusory allegations of insider stock

sales without any particularized basis that the seller knew of the accounting improprieties is insufficient to challenge independence); Mehrvar, 2005 WL 2385939, at *5 ("Cursory allegations of insider trading by a director with knowledge of insider information or material misinformation allegedly gained merely from his status as a director will not satisfy the pleading standard of Rule 23.1.").

In the present case, Plaintiff alleges that the two selling directors knew material adverse information simply by virtue of their positions. As explained above, such boilerplate allegations are insufficient under Delaware law. See, e.g., Rattner, 2003 WL 22284323, at *10 n.53 (rejecting allegations that director knew non-public adverse information by virtue of his position).

Further, Plaintiff has failed to provide any particulars that might allow the Court to assess whether the insider sales were suspicious in either timing or amount. In fact, there is nothing specifically suspicious about the timing of the sales other than that they occurred during the "Relevant Period" (which now covers October 2003 to the present). Plaintiff alleges that the sales were made "at the peak of defendants' improper actions" and "following artificially favorable press releases," Complaint ¶ 70, without specifying how or why this is the case or offering further details.

Plaintiff's allegation of suspiciousness based on Robert Kits van Heyningen's sales six months and twelve months prior to the one under discussion is unavailing, showing nothing more than that Robert has traded some amount of stock consistently every six months. Plaintiff's highlighting of the fact that Trimble did not make any trades in the previous twelve months is similarly unavailing, as twelve months is an insufficient period upon which to create a "history."

See Guttman, 823 A.2d at 504 ("The prior year measure in itself is a weak one, covering as it does a temporally brief period.").

Further, one of the most important metrics in assessing "suspiciousness" is the percentage of stock sold by the insider; the lower the percentage sold, the less suspicious any given trade is because a director who retains large holdings is motivated to keep the stock profitable in the long run and not prop it up temporarily by fraud.[9] Thus, the relevant question here is what percentage of Trimble and Robert's stock was sold. Because of the import of percentage sold, many courts have held that the mere failure of a plaintiff to allege the percentage sold vitiates the allegation that the trades made were unusual or suspicious. See In re Baker Hughes Sec. Litig., 136 F. Supp. 2d 630, 646 (S.D. Tex. 2001) (refusing to consider trading allegations where plaintiff failed to plead the percentage of stock sold); In re Baan Co. Sec. Litig., 103 F. Supp. 2d 1, 19 (D.D.C. 2000) ("Plaintiffs do not indicate what percentage of their stock each defendant (or partnership) sold.").

This information is readily available in publicly-filed Forms 4 (Robert Kit van Heyningen's is attached hereto at Ex. C and Charles Trimble's is at Ex. D),[10] and while it is apparent that Plaintiff (or more likely Mehrvar) relied on the Forms 4 filed in this case to provide the information on the dates, volume and price of the sales, Plaintiff omits the key information regarding the percentages sold. Courts, however, often take judicial notice of Forms 4 in such

[9] See In re Advanta Corp. Sec. Litig., 180 F.3d 525, 540 (3d Cir. 1999) (plaintiff's allegation that the "defendants had a motive to capitalize on artificially inflated prices" was contradicted by directors' retention of most of their stock during the alleged fraud, because it suggested "that they had every incentive to keep [the company] profitable").

[10] The relevant Forms 4 are publicly-available on the SEC website at http://www.sec.gov in two ways. Once on website: (1) click "Search for Company Filings" under "Filings & Forms (EDGAR)"; (2) click on "Companies & Other Filers"; (3) enter "KVH" in the Company name box; (4) enter "4" in the "Form Type" box (for Form 4); (5) locate the relevant Forms 4 chronologically (Trimble: 2003-11-12; Robert: 2003-11-19). Additionally, once can: (1) click "Search for Company Filings" under "Filings & Forms (EDGAR)"; (2) click on "Companies & Other Filers"; (3) enter "000903732" for Trimble and "0001184875" for Robert in the "CIK" box; (4) locate the relevant Forms 4 chronologically (Trimble: 2003-11-12; Robert: 2003-11-19).

cases, as the Sonus court did and as Judge Rubine did in Mehrvar, so as to prevent plaintiffs from selectively, and at times misleadingly, offering only portions of the data contained therein.[11] Reference to the Forms 4 at issue here confirms that the volumes were not suspicious, as Robert sold only 9% of his holdings, while Trimble sold 14%. Such small percentages are insufficient to be "suspicious." Guttman, 823 A.2d at 503; see also Ronconi v. Larkin, 253 F.3d 423, 435 (9th Cir. 2001) (sales by insiders of "only 10 percent and 17 percent, respectively, of their total number of shares and options" not suspicious); In re Nike, Inc. Sec. Litig., 181 F. Supp. 2d 1160, 1169 (D. Or. 2002) (sales by two insiders of 9.4% and 11.6% of their total holdings not suspicious in amount); Mehrvar, 2005 WL 2385939, at *5 ("[I]t appears that the alleged insider sales [of Robert Kits van Heyningen and Charles Trimble] resulted in a sale of only a small portion of each directors' KVH holdings."). The Forms 4 only confirm what is evident from the face of Plaintiff's pleading: Plaintiff has failed to make the required substantial case of insider selling.[12]

In summary, the alleged insider sales amount to nothing other than routine sales made by just two of the Company's seven directors.

[11] See Oran v. Stafford, 226 F.3d 275, 289 (3d Cir. 2000) (on motion to dismiss, court may court may take judicial notice of information contained in Forms 4 and 5); Advanta, 180 F.3d at 540 (same); Crowell v. Ionics, Inc., 343 F. Supp. 2d 1, 14 n.7 (D. Mass. 2004) ("this Court may take judicial notice of the Form 4, without converting the[] motion to dismiss into a motion for summary judgment."); In re Syncor Int'l Corp. Sec. Litig., 327 F. Supp. 2d 1149, 1156-57 (C.D. Cal. 2004) (same); In re Stone & Webster, Inc. Sec. Litig., 253 F. Supp. 2d 102, 128 & n.11 (D. Mass. 2003) (same); Wietschner v. Monterey Pasta Co., 294 F. Supp. 2d 1102, 1109 (N.D. Cal. 2003) (on motion to dismiss, "the Court takes judicial notice of Mr. Hewitt and Mr. Brinkman's SEC Forms 4"); Allison v. Brooktree Corp., 999 F. Supp. 1342, 1352 n.3 (S.D. Cal. 1998) ("The court takes judicial notice of Bixby's Form 4 wherein he reported the purchases to the SEC."); Mehrvar, 2005 WL 2385939, at *5 n.6 ("The Court may take judicial notice of the SEC Form 4 information without converting this motion [to dismiss] into a summary judgment motion.").

[12] A further factor undermining any suggestion of "suspicious" sales is that despite Plaintiff's allegation that all seven directors were in on a broad conspiracy to defraud the market, Complaint ¶¶ 23 et seq., only two of seven allegedly sold any stock during the Relevant Period, and even they did so in relatively small amounts.

### 13. Summary of Demand Futility Allegations

In summary, the demand futility allegations set forth in paragraph 83 are repetitive and conclusory. They do nothing more than make broad allegations of the type present in the many cases rejected by courts applying Delaware law. They do not point to particular facts regarding the directors *in this case* that would overcome the strong presumption of director independence. Plaintiff has failed to allege with any particularity that the directors in fact participated in the wrongful conduct alleged in the securities class action. Turul, 951 F.2d at 3 (reversing judgment on verdict against defendants because "the complaint did not plead with particularity as required under Rule 23.1"); Heit, 567 F.2d at 1161 ("As the complaint fails to set forth facts showing that majority of the directors . . . engaged in a facially improper transaction, we hold that the failure of the plaintiff to make demand . . . was unexcused, and dismissal of the case for noncompliance with Rule 23.1 was proper."); In re Kauffman Mut. Fund Actions, 479 F.2d at 265 ("If by plaintiff's merely alleging error, the directors are to be presumed incapable of exercising sound business judgment, Rule 23.1 would become virtually meaningless."). Plaintiff's attempt at parlaying a federal securities class action that alleges nothing against six of seven directors into a derivative action against all seven directors fails. Plaintiffs have attempted the same feat in many cases recently, including Guttman, In re Sonus, Sachs, Caviness, not to mention Mehrvar itself, with the same result -- dismissal of the derivative complaints. The same result must follow here.

## CONCLUSION

The issue of demand futility has already been fully and fairly litigated in Mehrvar, the very case from which Plaintiff copied the instant Complaint. Collateral estoppel should apply to give that ruling preclusive effect here, requiring dismissal. Alternatively, on the merits of the demand futility issue, the Complaint fails to allege particularized facts demonstrating that a demand on KVH would have been futile. For this reason as well, the Complaint must be dismissed.

Attorneys for Defendants

Brooks R. Magratten (# 3585)
VETTER & WHITE
20 Washington Place
Providence, RI 02903
(401) 421-3060
(401) 272-6803 (FAX)

Brandon F. White
Matthew C. Baltay
Kalun Lee
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210
(617) 832-1000
(617) 832-7000 (FAX)

January 5, 2006

<u>CERTIFICATE OF SERVICE</u>

TO:

Peter N. Wasylyk, Esq.
Law Offices of Peter N. Wasylyk
1307 Chalkstone Avenue
Providence, RI 02908

William B. Federman, Esq.
Federman & Sherwood
120 N. Robinson, Suite 2720
Oklahoma City, OK 73102

I hereby certify that I served on the above-named counsel a copy of the within Defendants' Memorandum In Support Of Motion To Dismiss Verified Shareholder Derivative Complaint by first class mail, postage prepaid, on the 5th day of January, 2006.

/s/ Melanie Gosetti