UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| YEMIN JI, Derivatively on Behalf of KVH INDUSTRIES, INC., Plaintiff, v. MARTIN A. KITS VAN HEYNINGEN, PATRICK J. SPRATT, ROBERT W.B. KITS VAN HEYNINGEN, ARENT H. KITS VAN HEYNINGEN, MARK S. AIN, STANLEY K. HONEY, BRUCE J. RYAN, and CHARLES R. TRIMBLE, Defendants, and KVH INDUSTRIES, INC. Nominal Defendant. | Civil Action No. 05-273-ML |

**REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT**

Attorneys for Defendants

Brooks R. Magratten (# 3585)
VETTER & WHITE
20 Washington Place
Providence, RI 02903
(401) 421-3060
(401) 272-6803 (FAX)

Brandon F. White
Matthew C. Baltay
Kalun Lee
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210
(617) 832-1000
(617) 832-7000 (FAX)

March 27, 2006

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... ii

INTRODUCTION .......... 1

ARGUMENT .......... 2

I. Collateral Estoppel Applies. .......... 2

A. There is Identity of Parties. .......... 2

B. There is Identity of Issues. .......... 2

C. The Mehrvar Ruling is "Final" for Collateral Estoppel Purposes. .......... 4

II. The Complaint Fails to Plead Demand Futility Under Rule 23.1. .......... 9

A. Rule 23.1 Requires Particularized Allegations Establishing Demand Futility. .......... 9

B. Plaintiff's Allegations of Substantial Likelihood of Liability Fall Short. .......... 11

C. Plaintiff's Caremark Claim Fails to Excuse Demand. .......... 12

D. Plaintiff's Insider Trading Allegations Fail to Establish Demand Futility. .......... 14

E. Plaintiff's Allegations of Domination, Control and Relationships Fail. .......... 16

CONCLUSION .......... 17

# TABLE OF AUTHORITIES

## CASES

Adams v. Kinder Morgan, Inc., 340 F.3d 1083 (10th Cir. 2003) ..... 15

In re Advanta Corp. Sec. Litig., 180 F.3d 525, 539 (3d Cir. 1999) ..... 15, 16

Aronson v. Lewis, 473 A.2d 805 (Del. 1984) ..... 11, 12

In re Campbell Soup Co., Sec. Litig., 145 F. Supp. 2d 574 (D.N.J. 2001) ..... 16

Caviness v. Evans, 229 F.R.D. 354 (D. Mass. 2005) ..... 14, 15

Cooter v. Gell, 496 U.S. 384 (1990) ..... 5

DiGiore v. Ryan, 172 F.3d 454 (7th Cir. 1999) ..... 8

In re FirstEnergy S'holder Derivative Litig., 320 F. Supp. 2d 621 (N.D. Ohio 2004) ..... 13

Guttman v. Huang, 823 A.2d 492 (Del. Ch. 2003) ..... 13, 14

Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90 (1991) ..... 10

In re Kauffman Mut. Fund Actions, 479 F.2d 257 (1st Cir. 1973) ..... 8, 10

Lummus Co. v. Commonwealth Oil Ref. Co., 297 F.2d 80 (2d Cir. 1961) ..... 5

Lynk v. LaPorte Superior Court No. 2, 789 F.2d 554 (7th Cir. 1986) ..... 7

M&D Cycles, Inc. v. Am. Honda Motor Co., Inc., No. CIV. 01-355-JD, 2002 WL 31236397 (D.N.H. Oct. 4, 2002) ..... 7

M&D Cycles, Inc. v. Am. Honda Motor Co., Inc., 208 F. Supp. 2d 115 (D.N.H. 2002) ..... 7

Mehrvar v. Kits van Heyningen, N.C. No. 04-375, 2005 WL 2385939 (R.I. Super. Ct. Sept. 27, 2005) ..... passim

Miller v. Norris, 247 F.3d 736 (8th Cir. 2001) ..... 8

Muñiz Cortes v. Intermedics, Inc., 229 F.3d 12 (1st Cir. 2000) ..... 8

Nat'l R.R. Passenger Corp. v. Int'l Ass'n of Machinists & Aerospace Workers, 915 F.2d 43 (1st Cir. 1990) ..... 7

North Ga. Elec. Membership Corp. v. City of Calhoun, 989 F.2d 429 (11th Cir. 1993) ..... 8

Ochoa v. Union Camp Corp., 391 A.2d 123 (R.I. 1978) .......... 7

Offshore Sportswear, Inc. v. Vuarnet Int'l, 114 F.3d 848 (9th Cir. 1997) .......... 8

In re Oxford Health Plans, Inc., Sec. Litig., 192 F.R.D. 111 (S.D.N.Y. 2000) .......... 13

In re Oxford Health Plans, Inc., Sec. Litig., 187 F.R.D. 133 (S.D.N.Y. 1999) .......... 13

Pennsylvania v. PepsiCo., Inc., 836 F.2d 173 (3d Cir. 1988) .......... 3

Pilot's Point Marina, Inc. v. Cazzani Power Boat Mfg., Inc., 745 A.2d 782 (R.I. 2000) .......... 7, 8

In re Piper Aircraft Distribution Sys. Antitrust Litig., 551 F.2d 213 (8th Cir. 1977) .......... 5, 7

Rales v. Blasband, 634 A.2d 927 (Del. 1993) .......... 10, 11

Rattner v. Bidzos, No. 19700, 2003 WL 22284323 (Del. Ch. Oct. 7, 2003) .......... 12, 14, 15

Ret. Bd. of the Employees' Ret. Sys. of R.I. v. DiPrete, 845 A.2d 270 (R.I. 2004) .......... 2

Sachs v. Sprague, 401 F. Supp. 2d 159 (D. Mass. 2005) .......... 13

In re Sonus Networks, Inc. Derivative Litig., 2004 WL 2341395 (Mass. Super. Ct. Sept. 27, 2004) .......... 14, 15

Steele v. Fed. Bureau of Prisons, 355 F.3d 1204 (10th Cir. 2003) .......... 8

Turul v. Rogatol Distribs., Inc., 951 F.2d 1 (1st Cir. 1991) .......... 9, 10, 16

In re Whitehall Jewellers, Inc. S'holder Derivative Litig., No. 05 C 1050, 2006 WL 468012 (N.D. Ill. Feb. 27, 2006) .......... 3

Wolff v. Wynne, No. 01-4377, 2003 WL 1880125 (R.I. Super. Ct. March 25, 2003) .......... 8

Wolgin v. Simon, 722 F.2d 389 (8th Cir. 1983) .......... 3, 4

## DOCKETED CASES

Ji v. Kits van Heyningen, 05-cv-273-ML (D.R.I. filed Dec. 6, 2005) .......... 6

Sekuk Global Enters. v. KVH Indus., Inc., No. 04-306-ML (D.R.I. filed July 21, 2004) .......... 11

## COURT RULE

Fed. R. Civ. P. 41(a)(1) .......... passim

## MISCELLANEOUS

18 Moore's Federal Practice (3d ed. 2005) .......... 8

Restatement (Second) of Judgments (1982) .......... 5, 6

Restatement (Second) of Judgments (Tentative Draft No. 1, 1973) .......... 5

Restatement of Judgments (1942) .......... 8

## INTRODUCTION

Defendants respectfully submit this reply memorandum in response to Plaintiff's Opposition to Defendants' Motion to Dismiss Verified Shareholder Derivative Complaint ("Opposition" or "Opp.").

Plaintiff asserts that the prior state court decision dismissing the complaint in Mehrvar v. Kits van Heyningen, N.C. No. 04-375, 2005 WL 2385939 (R.I. Super. Ct. Sept. 27, 2005) (attached at Ex. 1 to Appendix of Authorities submitted with Defendants' Motion to Dismiss Verified Shareholder Derivative Complaint ("App.")), for failure to make pre-suit demand cannot be given collateral estoppel effect because, under Federal Rule of Civil Procedure 41(a)(1), a voluntary dismissal without prejudice obliterates all decisions rendered in the underlying suit, thereby depriving them of any collateral estoppel impact. While this may be a proper statement of the result of a Rule 41(a)(1) dismissal, it has no relevance to this case because Rule 41(a)(1) is not involved here.

There was no voluntary dismissal by Mehrvar. Instead, the court granted Defendants' Motion to Dismiss. In granting that motion, the state court made a comprehensive decision on the merits of the issue now before this Court which fulfills all of the requisites of collateral estoppel. The fact that the dismissal was "without prejudice" means that the substantive cause of action has not been resolved, but that phrase in no way deprives the state court's decision of its preclusive effect as to the demand futility issue that was resolved.

If this Court decides to look beyond collateral estoppel to the merits of the Rule 23.1 issue, it should conclude independently that Plaintiff's Verified Shareholder Derivative Complaint ("Complaint") fails to plead with the requisite particularity that a majority of KVH Industries, Inc.'s ("KVH") Board of Directors would be ineligible to consider a demand for suit.

Because Plaintiff has failed to meet the threshold requirement of making a pre-suit demand on the corporation, or showing that doing so would be futile, dismissal is required.

## ARGUMENT

### I. Collateral Estoppel Applies.

As Defendants explained in their Memorandum in Support of Motion to Dismiss Verified Shareholder Derivative Complaint ("Memorandum" or "Mem."), the decision rendered by the Rhode Island Superior Court in Mehrvar must be accorded preclusive effect in this case on the issue actually decided. See Mem. at 5-14. After full briefing and argument, in a thorough, written decision, the Rhode Island Superior Court concluded that the very same complaint Plaintiff has filed here does not adequately allege demand futility under Rule 23.1. See Mehrvar, 2005 WL 2385939, at *2-6. As established in Defendants' Memorandum, the issue actually litigated and resolved in the prior decision -- the lack of adequate demand futility allegations in this complaint -- may not be re-litigated where, as here, there is identity of parties, identity of issues, and finality of judgment. Ret. Bd. of the Employees' Ret. Sys. of R.I. v. DiPrete, 845 A.2d 270, 282 (R.I. 2004).

#### A. There is Identity of Parties.

Defendants established in their Memorandum that there is a complete identity of parties in the Mehrvar and Ji cases for collateral estoppel purposes; indeed, the authorities are unanimous that the corporation is deemed the plaintiff in both cases for these purposes, and the same eight directors and officers are named as defendants in both suits. See Mem. at 12-13. Notably, Plaintiff does not disagree with this conclusion.

#### B. There is Identity of Issues.

Defendants also established in their Memorandum that the discreet issue before this Court of whether this Complaint makes out a case of demand futility under Rule 23.1 is **identical** to the

issue that was before Judge Rubine in Mehrvar. See Mem. at 7-8. This is so because the Complaint under scrutiny today is, in every material way, the same as the one that was the subject of inquiry in Mehrvar (one having been copied from the other), see Mem. at 1, 3-4, and the same legal question is being asked about the Complaint again, namely, whether it adequately alleges demand futility.

In his Opposition, Plaintiff does not seriously contest the fact that there is identity of issues. Plaintiff does not disagree that he copied the Mehrvar complaint, or that the same issue decided by Judge Rubine in Mehrvar is now before this Court. The only resistance Plaintiff offers is a half-hearted remark found in a single sentence at the end of his argument on collateral estoppel where he asserts:

> Furthermore, the allegations in the Mehrvar case and the present case are not identical, and in any event Plaintiff can, as set forth herein, allege additional facts not alleged in the Mehrvar [sic].

Opp. at 19. This passing suggestion that the complaints "are not identical" falls flat, as by all measures the two complaints are the same in every material way. Plaintiff does not, because he cannot, specify the differences to which he broadly alludes.[1] Plaintiff's blithe assertion that he "can, as set forth herein, allege additional facts," id., rings equally hollow, as Plaintiff nowhere states what these additional facts might be.[2]

---

[1] The only addition made by Ji to Mehrvar's complaint was a count under Section 304 of the Sarbanes-Oxley Act (15 U.S.C. § 7243). See Complaint ¶¶ 109-10. That attempt fails for a number of reasons, see Mem. at 8 n.4, including that, as **every court** to have addressed the issue has held, there is no private right of action under Sarbanes-Oxley Section 304. Since Defendants filed their Memorandum, yet another court has followed suit. In re Whitehall Jewellers, Inc. S'holder Derivative Litig., No. 05 C 1050, 2006 WL 468012, at *7 (N.D. Ill. Feb. 27, 2006) ("§ 304 does not give rise to a private right of action.").

[2] Even if Plaintiff had given some indication of what he might allege to cure the shortcomings of his Complaint or make it meaningfully different, which he does not, such an attempt would be impermissible as a party may not avoid a motion to dismiss by attempting to amend his Complaint. Pennsylvania v. PepsiCo., Inc., 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."). Moreover, a party who does properly seek to amend a complaint must actually provide the specifics of the proposed amendment. See Wolgin v. Simon, 722

### C. The Mehrvar Ruling is "Final" for Collateral Estoppel Purposes.

As Defendants set forth in their Memorandum, the authorities are clear that Judge Rubine's ruling in Mehrvar, even though "without prejudice," was final for collateral estoppel purposes. Mem. at 8-12. Indeed, the demand futility issue addressed by Judge Rubine was fully briefed and argued, culminated in a thorough written decision that was appealable (but was not appealed), and resulted in dismissal of the case. Under the mandatory doctrine of collateral estoppel, Judge Rubine's comprehensive decision is "final" and must be respected and followed here.

Despite the clear authorities, Plaintiff boldly labels Defendants' utterly conventional position "simply incorrect" and goes on to proffer a novel theory whereby a judicial dismissal without prejudice is self-obliterating and can never be afforded collateral estoppel effect:

> Mehrvar, relied upon by Defendants in support of their collateral estoppel argument, was dismissed without prejudice. The effect of this type of dismissal is to put the plaintiff in the same legal position as if he had never brought the first suit and to render the proceedings a nullity and leave the parties as if the action had never been brought.

Opp. at 18. Plaintiff, however, relies for this theory on principles applicable only under Rule 41(a)(1), which governs voluntary dismissal by a plaintiff. **The critical fact here is that the present case does not involve a Rule 41(a)(1) dismissal in any way.**

Rule 41(a)(1) is the embodiment of the age-old common law doctrine of "voluntary nonsuit," whereby a plaintiff could dismiss his case voluntarily once, at any time before the jury

---

F.2d 389, 394 (8th Cir. 1983) (In derivative action, "[t]he appellant did not submit a proposed amendment to the trial court, nor was there anything in the appellant's brief to indicate what an amended complaint would have contained. In this context, the trial court could not, and did not, rule on the question of amendment. Further, under these circumstances a grant of leave to amend would have been inappropriate."). It is also disingenuous for Plaintiff now to suggest he could add some unspecified allegations to this Complaint when, to date, he has done nothing but crib the entire Complaint from Mehrvar.

rendered its verdict.[3] The seminal modern case for the proposition that a plaintiff's voluntary dismissal under Rule 41(a)(1) obliterates all prior rulings so that they can have no preclusive effect is In re Piper Aircraft Distribution System Antitrust Litigation, 551 F.2d 213 (8th Cir. 1977). In that case, the court repeatedly stressed that its ruling was limited to cases of voluntary dismissal. See id. at 219. The court also acknowledged the general rule which provides collateral estoppel effect to a ruling (whether appealable or not) so long as "'the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again.'" Id. at 220 (quoting Lummus Co. v. Commonwealth Oil Ref. Co., 297 F.2d 80, 89 (2d Cir. 1961), and Restatement (Second) of Judgments § 41 (Tentative Draft No. 1, 1973)).[4] The In re Piper court went on and explained that this general test "has no application here" given "[t]he crucial fact" that plaintiff voluntarily dismissed the first action pursuant to Fed. R. Civ. P. 41(a)(1)(i). In re Piper, 551 F.2d at 220.

Plaintiff asserts in his Opposition that (1) "[t]he [In re Piper] Court based its decision on the fact that the previous action had been dismissed without prejudice;" and (2) "[t]he [In re Piper] Court observed that the element of finality essential to application of collateral estoppel is plainly lacking in a judgment upon dismissal without prejudice." Opp. at 19. These are blatant mischaracterizations of In re Piper, which should not be condoned by this Court. **In re Piper, by its own express terms, is limited to Rule 41(a)(1) voluntary dismissals.**

---

[3] Rule 41(a)(1) of the modern rules of civil procedure simultaneously enshrines and limits the plaintiff's common law right to declare a voluntary nonsuit. "Prior to the promulgation of the Federal Rules, liberal state and federal procedural rules often allowed dismissals or nonsuits as a matter of right until the entry of the verdict. Rule 41(a)(1) was designed to curb abuses of these nonsuit rules." Cooter v. Gell, 496 U.S. 384, 397 (1990).

[4] In re Piper, 551 F.2d at 220, cited Restatement (Second) of Judgments § 41 (Tentative Draft No. 1, 1973), which became Restatement (Second) of Judgments § 13 (1982), which in turn provides "for purposes of issue preclusion . . . 'final judgment' includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect."

Where, as in the present case, no Rule 41(a)(1) dismissal is at issue, the ordinary rules of collateral estoppel govern. As the Restatement sets forth, issue preclusion applies whenever there is a final judgment, even though the judgment might not result in res judicata (i.e., because it is not entered with prejudice). See Restatement (Second) of Judgments § 20 cmt. b (1982).[5] Were the rule as Plaintiff suggests, then all dismissals without prejudice would render nugatory not only the decision of dismissal itself but also all preceding rulings, which would come as a shock to countless judges and litigants who have understood and relied on the ordinary rule over the years.

Plaintiff's unprecedented argument conflates two very distinct concepts, resulting in a fundamental misunderstanding of the workings of collateral estoppel. Plaintiff begins with the valid premise that a plaintiff's voluntary dismissal without prejudice under Federal Rule of Civil Procedure 41(a)(1) does away with all rulings made in the underlying case, ab initio, leaving them with no collateral estoppel effect. Then Plaintiff vaults to the conclusion that the same is true in this case, in which the state court dismissed the complaint without prejudice upon Defendants' motion. But that is not the law. In some ways, the effects of a voluntary dismissal without prejudice are the same as the effects of a court's granting of a motion to dismiss without prejudice. For example, neither results in res judicata; in both instances, the plaintiff can re-file the suit. Also, as this Court has observed, both events leave no state court case pending, and so no basis for Colorado River abstention. Ji v. Kits van Heyningen, 05-cv-273-ML, slip op. at 3 (D.R.I. filed Dec. 6, 2005). In some ways, however, the respective effects of the two events are very different. For example, the voluntary dismissal is not appealable, while the judge's ruling

---

[5] Restatement (Second) of Judgments § 20 cmt. b (1982), often cited by the courts, provides that "[t]he rules of issue preclusion (see §§ 27, 28) apply to a valid and final personal judgment for the defendant even though the judgment is one which, under this Section [res judicata], does not bar another action on the same claim."

is. Also, of course, the voluntary dismissal obliterates all prior rulings, while the judge's ruling does nothing of the kind. Yet, Plaintiff relies on this concept of obliteration in a vain effort to escape the collateral estoppel impact of Judge Rubine's ruling.

Not surprisingly, Plaintiff has cited no precedent for his novel theory that a judicial dismissal without prejudice obliterates all prior rulings as well as the very dismissal ruling itself. Plaintiff cites to Ochoa v. Union Camp Corp., 391 A.2d 123 (R.I. 1978), which stands for nothing more remarkable than the mundane proposition that a case that has been dismissed without prejudice cannot function as a placeholder to toll the running of the statute of limitations. Id. at 904. There was no prior ruling at issue in Ochoa, and no mention of collateral estoppel. Pilot's Point Marina, Inc. v. Cazzani Power Boat Manufacturing, Inc., 745 A.2d 782 (R.I. 2000), likewise fails to support Plaintiff's new theory, and even helps to dispel it. In Pilot's Point Marina, the court dismissed defendant's counterclaim without prejudice. Id. at 783. The court never held, stated, or even implied that the dismissal obliterated all prior proceedings in the action. To the contrary, the court explained that collateral estoppel may bar re-litigation of certain facts decided in the first suit. Id. at 785; see also infra n.7. The rest of the cases Plaintiff cites are Rule 41(a) voluntary dismissal cases and are thus obviously inapposite. See In re Piper, 551 F.2d at 213; Nat'l R.R. Passenger Corp. v. Int'l Ass'n of Machinists & Aerospace Workers, 915 F.2d 43, 48 (1st Cir. 1990); Lynk v. LaPorte Superior Court No. 2, 789 F.2d 554, 565 (7th Cir. 1986); M&D Cycles, Inc. v. Am. Honda Motor Co., Inc., No. CIV. 01-355-JD, 2002 WL 31236397, at *2 (D.N.H. Oct. 4, 2002) (M&D Cycles II).[6]

---

[6] The facts of M&D Cycles, Inc., are presented in better detail in M&D Cycles, Inc. v. American Honda Motor Co., Inc., 208 F. Supp. 2d 115 (D.N.H. 2002) (M&D Cycles II). M&D II Cycles explains that the first suit was dismissed without prejudice in accordance with plaintiff's motion for a voluntary nonsuit. Id. at 118.

The First Circuit case of In re Kauffman Mutual Fund Actions, 479 F.2d 257 (1st Cir. 1973), by contrast, is **directly on point** and its teaching is inescapable. In re Kauffman, like the present matter, was a derivative action brought by a shareholder who did not make a pre-suit demand on the board of directors. Id. at 261. Defendants moved to dismiss the complaint under Rule 23.1 on the grounds that plaintiff had failed adequately to allege that demand on the board would have been futile. Id. The district court agreed and dismissed the case without prejudice and the First Circuit affirmed, explaining:

> In affirming we must, however, comment upon one phrase in the order of the district court granting the motion to dismiss, that it is "without prejudice." This must mean without prejudice as to the substantive cause of action. The dismissal is with prejudice on the issue of the obligation to make a demand on the directors with respect to that substantive complaint. The principle applies that "[a]lthough, where a judgment for the defendant is not on the merits, the plaintiff is not precluded from maintaining a new action on the same cause of action, he is precluded from relitigating the very question which was litigated in the prior action."

In re Kauffman, 479 F.2d at 267 (quoting Restatement of Judgments § 49 cmt. b (1942)). Plaintiff cannot distinguish In re Kauffman. Rhode Island law is in accord,[7] as is other national authority.[8]

---

[7] See, e.g., Pilot's Point Marina, 745 A.2d at 784-85 (dismissal of claim without prejudice on grounds of incapacity to sue leaves open possibility that the party may proceed on its claim in a separate action after taking the necessary steps to regain its corporate capacity, but collateral estoppel may bar re-litigation of certain matters in subsequent suit); Wolff v. Wynne, No. 01-4377, 2003 WL 1880125, at *6 (R.I. Super. Ct. March 25, 2003) (decisions made during first application that was administratively dismissed **without prejudice** given collateral estoppel effect in second application process).

[8] See, e.g., Steele v. Fed. Bureau of Prisons, 355 F.3d 1204, 1215 (10th Cir. 2003) ("[A] dismissal without prejudice for, say, lack of subject-matter jurisdiction, would still preclude relitigation of the issue of subject-matter jurisdiction in the absence of newly arising facts or law."); Offshore Sportswear, Inc. v. Vuarnet Int'l, 114 F.3d 848, 849 (9th Cir. 1997) (enforcement of forum selection clause); Miller v. Norris, 247 F.3d 736, 739 (8th Cir. 2001) (failure to exhaust administrative remedies); Muñiz Cortes v. Intermedics, Inc., 229 F.3d 12, 14-15 (1st Cir. 2000) (issue of preemption); North Ga. Elec. Membership Corp. v. City of Calhoun, 989 F.2d 429, 433 (11th Cir. 1993) (lack of jurisdiction); DiGiore v. Ryan, 172 F.3d 454, 466 (7th Cir. 1999) (justiciability issue); 18 Moore's Federal Practice § 132.03[5][d] (3d ed. 2005) (similar with respect to standing).

Plaintiff's confused and confusing attempts to import the impact of a Rule 41(a)(1) voluntary dismissal to a case dismissed by a judge upon a defendant's adversarial motion should be seen for what it is: the last resort of a party faced with clear doctrine and unanimous adverse precedent. Rule 41(a)(1) has no application here. All of the elements of collateral estoppel are met, and Ji's copycat complaint must go the way of the flawed creature from which it was cloned.

## II. The Complaint Fails to Plead Demand Futility Under Rule 23.1.

As Defendants established in their Memorandum, see Mem. at 14-35, even if Judge Rubine's decision were not entitled to preclusive effect here, the same result must be reached because, as Judge Rubine found after full assessment, Plaintiff's Complaint "has failed to allege, with the required particularity, facts that would support a conclusion that a pre-suit demand would have been futile." Mehrvar, 2005 WL 2385939, at *6.

### A. Rule 23.1 Requires Particularized Allegations Establishing Demand Futility.

Defendants' opening brief carefully set forth the governing pleading standards under Rule 23.1 and Delaware law. See Mem. at 14-18. These standards are "stringent" and vigorously enforced in the First Circuit. See Mem. at 14-15 (citing Turul v. Rogatol Distribs., Inc., 951 F.2d 1, 2 (1st Cir. 1991)).

In his Opposition, Plaintiff attempts to discount the stringency of these standards by asserting "[p]leading futility of demand is not nearly as difficult as Defendants pretend." Opp. at 20. While Plaintiff fails to elaborate on what he believes Defendants "pretend," in reality Defendants do nothing more than recite and apply the governing standards which, regrettably for Plaintiff, are strict and spell doom for Plaintiff's demand futility case.

At its core, Plaintiff's demand futility allegations fail because they are routine and boilerplate. Plaintiff basically alleges that every director, by virtue of his position as a director,

must have known of the supposed fraud, and because each must have been in on the fraud, each faces liability and so demand would have been futile. If making demand futility allegations were this easy, the protections and mechanisms of Rule 23.1 would be eviscerated, as nearly every case could pass muster simply by alleging that the directors are liable. This is not the law.

Reverting to fundamentals, under Delaware law, directors are afforded a "powerful presumption" that they act in the best interests of the corporation and it is the directors, not shareholders, who run the affairs of the corporation, including making the decision as to when to institute litigation on the corporation's behalf. Mem. at 15-16 (citing Rales v. Blasband, 634 A.2d 927, 932 (Del. 1993)). Only in carefully circumscribed instances, and only as "an action of last resort," may a shareholder usurp this directorial power and himself bring suit on the company's behalf. Id. (quoting Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 95-96 (1991), and Turul, 951 F.2d at 2). At a minimum, under Rule 23.1, before a shareholder may commence a derivative action, he must first make a demand on the corporation or show, with particularity, that demand was excused "by extraordinary conditions." Kamen, 500 U.S. at 95-96. A fundamental aspect of a derivative plaintiff's burden of showing "extraordinary circumstances" is the requirement that he allege **with particularity** precisely why demand would have been futile. See Mem. at 14. Here, it is worth repeating, "Rule 23.1 is not an ordinary, but an exceptional rule of pleading, serving a special purpose, and requiring a different judicial approach." In re Kauffman, 479 F.2d at 263.

Further, these heightened pleading requirements are not mere formalities but are core strictures of Delaware corporate law designed to ensure that shareholders do not lightly usurp corporate control, that derivative suits are reserved as matters of last resort, that shareholders exhaust their intracorporate remedies, and, moreover, to "provide a safeguard against strike

suits." Mem. at 15 (quoting Aronson v. Lewis, 473 A.2d 805, 812 (Del. 1984)). Thus, Rule 23.1 requires a particularized showing as to why a majority of this board of directors cannot evaluate a demand. Boilerplate and conclusory allegations are simply inadequate. In this case, the fundamental defect with the Complaint is that it was copied from the complaint in Sekuk Global Enterprises v. KVH Industries, Inc., No. 04-306-ML (D.R.I. filed July 21, 2004), which itself made no allegations whatsoever against six of the seven directors. Instead of filling this critical gap, Mehrvar simply added boilerplate allegations that each director, by virtue of his position, must have known of the fraud, and Ji simply copied that. Such conclusory allegations are inadequate under Rule 23.1. Dismissal is required.

**B. Plaintiff's Allegations of Substantial Likelihood of Liability Fall Short.**

While Defendants carefully explained why each of Plaintiff's sub-paragraphs on demand futility fails, see Mem. at 18-35 (addressing Complaint ¶¶ 83(a)-(m)), Plaintiff only focuses on four general areas in opposition: (1) substantial likelihood of liability; (2) Caremark claim; (3) insider trading; and (4) beholden or controlled directors.

Because Plaintiff does not challenge a particular board decision (such as a compensation package to a director or a merger involving interested parties), Delaware's Rales test for futility applies. See Rales, 634 A.2d 927. Under this test, Plaintiff must establish that four of the seven KVH directors either (1) are themselves **interested** because they face a **substantial likelihood of personal liability** and thus cannot neutrally evaluate a demand to bring suit, or (2) are beholden to such an interested director and thus **lack independence**.

Plaintiff first asserts that each director faces a substantial likelihood of liability in this derivative action because "[e]ach of the Defendant Directors actually engaged in securities fraud." See Opp. at 22. Plaintiff then explains that each did so by making public statements and signing SEC reports (which all directors must do) in which misstatements were made and that

"[t]his makes them liable." See Opp. at 22-23. But, it is elementary that under the applicable heightened pleading standards at work here (as in a securities fraud case), more than mere assertion of one's position is needed. To make out a securities fraud claim, and thus to establish a substantial likelihood of liability therefor, Plaintiff must allege with particularity what was fraudulent and why, what each director's role in the fraud was, what each director knew in connection with the fraud, and how each such director knew the matters to be false. Yet Plaintiff offers no particularized, non-conclusory allegation on any of these points. In the end, Plaintiff's assertion comes down to the allegation that because the directors were directors, they all must have been in on whatever fraud the securities case happens to allege against only one of them.

Alleging that a director knows undisclosed adverse matters by virtue of his position alone necessarily fails to establish demand futility, Rattner v. Bidzos, No. 19700, 2003 WL 22284323, at *10 n.53 (Del. Ch. Oct. 7, 2003), as otherwise, "the demand requirements of our law would be meaningless." Aronson, 473 A.2d at 814. Judge Rubine carefully reached the same conclusion on this same complaint. See Mehrvar, 2005 WL 2385939, at *4 (citing case law and explaining that pleading that director knew of wrongful conduct by virtue of his position is insufficient to excuse demand). This should be the end of Plaintiff's broad-sweeping and conclusory allegations that all of the directors face a substantial likelihood of liability for securities fraud.

**C. Plaintiff's Caremark Claim Fails to Excuse Demand.**

Plaintiff next asserts that he has adequately pled a Caremark claim for director abdication of responsibilities and that the directors accordingly face a substantial likelihood of liability thereunder. See Opp. at 24-30. As Defendants set forth in their Memorandum, however, Caremark "'is possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment.'" Mem. at 24-25 (quoting cases). As case law requires, under Caremark, a plaintiff must allege and prove that the directors acted in bad faith and knowingly

failed to do their jobs. Guttman v. Huang, 823 A.2d 492, 506 (Del. Ch. 2003). To use a Caremark claim to clear Rule 23.1, a plaintiff must allege such failure with particularity. Sachs v. Sprague, 401 F. Supp. 2d 159, 165 (D. Mass. 2005) (attached at Ex. 2 to App.). Plaintiff does not begin to do so. The core of Plaintiff's Caremark claim is that the alleged fraud could not have taken place unless all of the directors had knowingly abdicated their roles. Opp. at 16, 25. This type of ipse dixit allegation could be made in every case and simply lacks the concrete details needed to make out this most difficult of claims. Defendants, in their Memorandum, set forth the cases reaching this precise holding on similarly vague allegations, including Mehrvar itself. See Mem. at 24-25 (collecting cases).

Plaintiff's citation to In re Oxford Health Plans, Inc., Securities Litigation, 192 F.R.D. 111 (S.D.N.Y. 2000) (Oxford II), see Opp. at 28, is misplaced because In re Oxford, unlike the present case, included many particularized allegations regarding what the directors knew and should have done.[9] In re Oxford only serves to highlight the deficiencies in Plaintiff's case.

Plaintiff's citation to an Ohio federal case, In re FirstEnergy Shareholder Derivative Litigation, 320 F. Supp. 2d 621 (N.D. Ohio 2004), see Opp. at 29, is equally unavailing because In re FirstEnergy applied Ohio corporate law and, according to In re FirstEnergy, the simple

---

[9] To cite just a few examples, the In re Oxford plaintiff alleged that the company was the target of investigations into its accounting practices conducted by both the New York Attorney General's Office and the New York State Insurance Department and that even after the Attorney General's Office began its investigation into complaints regarding the company's billing practices, Oxford's directors continued issuing press releases touting its financial health despite the unreliability of its accounting data. In re Oxford Health Plans, Inc., Sec. Litig., 187 F.R.D. 133, 137 (S.D.N.Y. 1999) (Oxford I). After the NY Insurance Department's investigation of Oxford's financial and internal control information, Oxford was fined $3 million and ordered to increase its reserves by $50 million, terminate certain of its management, including its CFO, and remove or replace leaders of its outside auditing team. Id. at 138. Oxford continued representing that it was profitable after the Insurance Department's investigation, but subsequently announced that it had to increase its accounting reserves by $164 million and recorded a net loss for the year. Id. at 138-39 One of its directors was alleged with particularity to have been informed of the specific computer problems that contributed to the company's unreliable accounting data, and certain members of the board held an emergency meeting to hire a third party to fix the computer problems, even as the company continued issuing positive press releases regarding its financial health and accounting. Id. Such details are wholly lacking here as to any of these directors.

naming of directors as wrongdoers and defendants is sufficient under Ohio law to show demand futility. Id. at 624. This differs so significantly from Delaware law as to render the case useless to the present analysis.

In sum, as Judge Rubine concluded, see Mehrvar, 2005 WL 2385939, at *4, and as Defendants established, see Mem. at 24-25, this Complaint fails to allege with particularity the basis for the conclusory allegation of director abdication and liability.

**D. Plaintiff's Insider Trading Allegations Fail to Establish Demand Futility.**

Plaintiff next asserts that because two of the seven directors sold some KVH stock during the "relevant period" from October 1, 2003 to the present, those two directors must be deemed to face a disabling "substantial likelihood of liability" for insider trading. Defendants thoroughly addressed this argument in their Memorandum. See Mem. at 28-34. As Defendants explained, the two leading Delaware cases of Guttman v. Huang, 823 A.2d 492, and Rattner v. Bidzos, 2003 WL 22284323, as well as a series of the most recent cases from within the First Circuit applying Delaware law, including In re Sonus Networks, Inc. Derivative Litig., 2004 WL 2341395, *4 (Mass. Super. Ct. Sept. 27, 2004) (attached at Ex. 4 to App.), and Caviness v. Evans, 229 F.R.D. 354, 359 (D. Mass. 2005) (attached at Ex. 3 to App.), hold that conclusory allegations of insider stock sales like the ones here are insufficient to show demand futility. Judge Rubine followed the relevant precedents and made the same ruling:

> The Delaware courts have found that in a derivative action, insider-trading allegations require particularized allegations of fraudulent intent by the selling insider. The Plaintiff must demonstrate that "each sale by each individual defendant was entered into and completed on the basis of, and because of, adverse material non-public information."

Mehrvar, 2005 WL 2385939, at *5 (citing Guttman and Rattner). As Judge Rubine concluded, there are no such particularized allegations in this Complaint.

Moreover, as Defendants have also demonstrated, see Mem. at 32-34, the alleged insider sales, constituting isolated sales of relatively small quantities by just two of seven directors, undercut rather than support the assertion that the trades were suspicious. Based on the allegations in this Complaint and the strictures of Delaware law, this Court should conclude, as Judge Rubine did, that the alleged sales were not "suspicious" and that Plaintiff's allegations are nothing more than boilerplate allegations that two directors happened to sell small portions of their stock during Plaintiff's two-plus year "Relevant Period." See also Mehrvar, 2005 WL 2385939, at *5 (plaintiff's identical allegations of insider trading fail to meet the particularity requirements of Rule 23.1).

Having no way to escape the relevant precedents, Plaintiff resorts to citing cases that do not even deal with Rule 23.1's requirements for adequately alleging a director's interestedness. On the issue now before this Court, however, the authorities are as unambiguous as they are unanimous:

> Cursory allegations of insider trading by a director with knowledge of insider information or material misinformation allegedly gained merely from his status as a director will not satisfy the particularized pleading standard of Rule 23.1.

Id.; see also Caviness, 229 F.R.D. at 361 (inside director who sold stock was not interested without particularized allegations that he faced a substantial likelihood of liability); In re Sonus, 2004 WL 2341395, at *4; Rattner, 2003 WL 22284323, at *10 n.53 (allegations of insider trading based on knowledge gained merely from defendant's position a director does not excuse demand).[10]

---

[10] Plaintiff cites exclusively cases which deal with the scienter pleading requirements of a federal securities case and do not deal with the requirements for adequately alleging a director's interestedness under Rule 23.1. See Opp. at 31-32. Importantly, even going out of context, Plaintiff is hard-pressed to find reliable authority for the proposition that knowledge can be imputed to a non-officer director solely because of his position as a director. The cases cited by Plaintiff would be unavailing even if they were relevant because they permit the inference of knowledge on the part of senior officers where the matters are at the "core" of a company's operations and this inference is supported by allegations of other particularized facts. E.g., Adams v. Kinder Morgan, Inc., 340 F.3d 1083, 1106 (10th Cir.

**E. Plaintiff's Allegations of Domination, Control and Relationships Fail.**

Plaintiff lastly focuses on his generalized allegations of directors being beholden and controlled by one another. See Opp. at 34-35. For example, Plaintiff asserts that because the Kits van Heyningens own 7% of the company's stock, they necessarily control all other directors. Defendants addressed these allegations head on in their opening Memorandum. See Mem. at 21-22. Indeed, because every corporate setting will involve potentials for control, in order to remain faithful to the presumptions of director independence, not only must a plaintiff allege an ability to control, he must also allege with particularity examples of actual control by the allegedly controlling person over the directors in question and must show that that person is himself disabled. See Mem. at 21-22.

In summary, Plaintiff has failed to clear the high hurdle set by Rule 23.1. This Complaint, with its generalized allegations that all directors must have been in on the alleged fraud by virtue of their positions alone, falls far short. Dismissal is the remedy. See Turul, 951 F.2d at 2 ("This circuit vigorously enforces this requirement and will dismiss derivative actions when plaintiffs do not comply.").

---

2003) ("[S]tanding alone, the fact that a defendant was a senior executive in a company cannot give rise to a strong inference of scienter."); see also In re Advanta Corp. Sec. Litig., 180 F.3d 525, 539 (3d Cir. 1999) ("Generalized imputations of knowledge do not suffice, regardless of the defendants' positions within the company."). This is not the case here. Plaintiff does not (and cannot) allege that the A5 was critical to KVH's survival, which is a prerequisite before imputing knowledge of facts to its senior officers. In re Advanta, 180 F.3d at 539 (noting that the subject of the alleged misstatements must be the most significant in the company's history before its knowledge may be imputed to the its key officers); cf. In re Campbell Soup Co., Sec. Litig., 145 F. Supp. 2d 574, 599 (D.N.J. 2001) (noting that the product which was allegedly channel-stuffed was "indisputably the bread and butter" of the company). Even if the facts alleged by Plaintiff could be imputed to Messrs. Kits van Heyningen and Trimble, Judge Rubine found that there "is no allegation of fact that would arouse suspicion relative to the timing or amount of [their stock] sales." Mehrvar, 2005 WL 2385939, at *5. It should be noted that Plaintiff incorrectly identifies Robert Kits van Heyningen as the Company's Chairman. KVH's Chairman is, as correctly noted by Plaintiff elsewhere in his brief, Arent Kits van Heyningen.

## CONCLUSION

As set forth herein and more fully in Defendants' Memorandum in Support of Motion to Dismiss Verified Shareholder Derivative Complaint, Plaintiff's Complaint should be dismissed. Full faith and credit requires that the Rhode Island judge's ruling of dismissal on the same issue and the same Complaint be given collateral estoppel effect. In the alternative, looking to the requirements of Rule 23.1 itself, it is clear that this conclusory Complaint fails to meet that rule's stringent pleading requirements. Again, dismissal is the remedy.

Respectfully submitted,

Attorneys for Defendants

Brooks R. Magratten (# 3585)
VETTER & WHITE
20 Washington Place
Providence, RI 02903
(401) 421-3060
(401) 272-6803 (FAX)

Brandon F. White
Matthew C. Baltay
Kalun Lee
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210
(617) 832-1000
(617) 832-7000 (FAX)

March 27, 2006

CERTIFICATE OF SERVICE

TO:

Peter N. Wasylyk, Esq.
Law Offices of Peter N. Wasylyk
1307 Chalkstone Avenue
Providence, RI 02908

William B. Federman, Esq.
Federman & Sherwood
120 N. Robinson, Suite 2720
Oklahoma City, OK 73102

I hereby certify that I served on the above-named counsel a copy of the within Defendants' Reply Memorandum by first class mail, postage prepaid, on the 27th day of March, 2006.

______________________________