UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

YEMIN JI, derivatively on behalf of
Nominal Defendant, KVH INDUSTRIES,
INC.,
Plaintiff,

v. CA 05-273ML

MARTIN A. KITS VAN HEYNINGEN,
PATRICK J. SPRATT, ROBERT W.B.
KITS VAN HEYNINGEN, ARENT H.
KITS VAN HEYNINGEN, MARK S. AIN,
STANLEY K. HONEY, BRUCE J. RYAN,
and CHARLES R. TRIMBLE,
Defendants,

and

KVH INDUSTRIES, INC.,
Nominal Defendant.

MEMORANDUM AND ORDER

This case is before the Court on Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 23.1. For the reasons set forth below, Defendants' motion is granted.

I. Background

Three civil actions have been instituted concerning the corporate conduct of KVH Industries, Inc. ("KVH") and its directors. The first, Sekuk Global Enterprises. v. KVH Industries, Inc., No. 04-306ML (D.R.I. filed July 21, 2004), is a federal class action alleging *inter*

*alia* that the CEO and CFO of KVH made fraudulent misstatements and omissions in connection with the offering for sale of KVH securities in violation of various federal securities laws. The suit contains no allegations against the remaining six members of KVH's seven-member board, nor are those remaining directors named as defendants in that action. The essence of the class action complaint is that KVH artificially inflated its reported financial results through improper accounting practices, such as recognizing revenue from fictitious sales, engaging in various acts of channel stuffing and shipping defective products. On August 11, 2005, this Court granted in part and denied in part the defendants' motion to dismiss the class action complaint. The surviving claims allege securities fraud in the form of materially misleading statements in SEC filings, public statements by KVH executives, and statements by third parties which hid KVH's true financial status.

Subsequent to this Court's granting in part and denying in part the class action motion to dismiss, two derivative actions were filed by two different plaintiffs. The first, Mehrvar ex rel. KVH Industries, Inc. v. Van Heyningen, No. N.C. 04-0375, 2005 WL 2385939 (R.I. Super. 2005 Sept. 27, 2005), was filed in Rhode Island Superior Court on August 16, 2004, and the second, the instant case, was filed in this Court on June 20, 2005. Each alleges state law claims of breach of fiduciary duty, abuse of control, gross mismanagement, waste of corporate assets, unjust enrichment and insider selling. The federal action also alleges a violation of the Sarbanes-Oxley Act of 2002, § 304, 15 U.S.C. § 7243. Significant portions of the complaints of each of these actions are substantially identical.

On September 27, 2005, the state action was dismissed without prejudice for the plaintiff's failure either to make a demand on the KVH board to take action with regard to

plaintiff's allegations or to plead sufficiently that demand would be futile. Mehrvar, 2005 WL 2385939, at *6. On January 5, 2006, Defendants filed a Motion to Dismiss Verified Shareholder Derivative Complaint, arguing both that the state court dismissal of Mehrvar for failure to plead demand futility is binding on this action and that the Complaint fails on its own merits to plead demand futility with sufficient particularity. Plaintiff Ji filed his Opposition to Defendants' Motion on February 27, 2006, and Defendants filed their Reply on March 27, 2006.

## II. Standard of Review

### A. Issue Preclusion

Defendants move to dismiss the action based on issue preclusion, a doctrine which falls under the umbrella doctrine of *res judicata*.[1] While *res judicata* is more properly pleaded as an affirmative defense in an answer under Fed. R. Civ. P. 8(c), Plaintiff has not objected, and the Court discerns no prejudice to Plaintiff as a result of considering the issue on a motion to dismiss. Rodriguez v. Baldrich, 628 F.2d 691, 692 n.2 (1st Cir. 1980). Even without a motion, a court on notice of a *res judicata* defense may dismiss the action *sua sponte*. Bezanson v. Bayside Enterps., Inc. (In re Medomak Canning), 922 F.2d 895, 904 (1st Cir. 1990). Dismissal on the basis of *res judicata* requires that two conditions must be met: (1) the facts that establish the defense must be definitively ascertainable from the allegations of the complaint, the documents (if any) incorporated therein, matters of public record, and other matters of which the court may take judicial notice; and (2) the facts so gleaned must conclusively establish the affirmative defense. In re Colonial Mortgage Bankers Corp., 324 F.3d 12, 16 (1st Cir. 2003).

---

[1]Some courts use the term "*res judicata*" to refer only to claim preclusion; this Court uses it as an umbrella term to refer to the doctrine that encompasses both claim preclusion and issue preclusion. See, e.g., Gener-Villar v. Adcom Group, Inc., 417 F.3d 201, 205-06 (1st Cir. 2005).

**B. Demand Futility**

Federal Rule of Civil Procedure 23.1 requires a shareholder initiating a derivative action to plead with particularity either that demand was made on the corporation to initiate suit on its own, or that such demand was futile. Fed. R. Civ. P. 23.1; Gonzalez Turul v. Rogatol Distribs., Inc., 951 F.2d 1, 2 (1st Cir. 1991). Rule 23.1 requires the plaintiff to plead with particularity the facts establishing futility, but the standard by which the facts alleged are evaluated is a matter of state law. Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90 (1991). The relevant state law is that of the state of incorporation. Landy v. D'Alessandro, 316 F. Supp. 2d 49, 57 (D. Mass. 2004) (citing Gonzalez Turul, 951 F.2d at 2). Here, because KVH is incorporated in Delaware, and the parties agree Delaware law applies, the Court will consider the relevant allegations in light of Delaware law on pleading demand futility.

Failure to have made demand or a particularized showing of why such demand was futile constitutes grounds for dismissing the complaint pursuant to Rule 12(b)(6). Hendrick v. Hendrick, 755 A.2d 784, 794 (R.I. 2000). Although the general standards applicable to motions to dismiss still apply to the extent that the court must take as true all well-pleaded allegations and make all reasonable inferences in favor of the plaintiff, the court must not accept mere conclusions or generalized allegations of control, acquiescence, wrongful participation, or the like. Forsythe v. Sun Life Financial, Inc., 417 F. Supp. 2d 100, 109 (D. Mass. 2006). Instead, the plaintiff must allege with particularity facts that would support such a conclusion. Id. (citing Gonzalez-Turul, 951 F.2d at 3; Landy, 316 F. Supp. 2d at 60-75).

III. Discussion

**A. Issue Preclusion**

A federal court must give the same preclusive effect to a judgment issued by a state court as another state court would give that judgment. San Remo Hotel, L.P. v. City and County of San Francisco, 125 S. Ct. 2491, 2500 (2005). Accordingly, when determining a question of issue preclusion with regard to a state court decision, a federal court looks to that state's law. In Rhode Island, issue preclusion applies if there is (1) an identity of issues; (2) a final judgment on the merits; and (3) a determination that the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior action. Ret. Bd. of Employees' Ret. Sys. of State v. DiPrete, 845 A.2d 270, 282 (R.I. 2004).

**1. Identity of Issues**

Rhode Island law subdivides the first requirement, identity of issues, into three factors: (1) the issue sought to be precluded must be identical to the issue determined in the earlier proceeding; (2) the issue must actually have been litigated in the prior proceeding; and (3) the issue must necessarily have been decided. DiPrete, 845 A.2d at 282 (citing E.W. Audet & Sons, Inc. v. Fireman's Fund Ins. Co., 635 A.2d 1181, 1186 (R.I. 1994)).

Here, Defendants seek to preclude the issue of failure to make pre-suit demand or plead demand futility with sufficient particularity. The Mehrvar court decided the issue of the sufficiency of demand futility allegations in that suit's complaint. The allegations of demand futility in this action's Complaint track those in the Mehrvar complaint closely, and, Plaintiff's assertion notwithstanding, do not add any significant new factual assertions to the Mehrvar allegations. Therefore, the issue sought to be precluded is indeed identical to that decided in the preceding suit, as the first factor requires.

As to the second factor, the issue was indeed litigated in the state proceeding. Defendants represent in their Motion to Dismiss that the parties briefed the issue thoroughly and that there was a hearing of over two hours in state court on the issue. The court's order dismissing the action confirms this description of the nature of the proceeding, reflecting as it does a well-briefed and carefully considered determination that demand futility was not pleaded with sufficient particularity.

Furthermore, the issue was necessarily decided, as the state court based its grant of Defendants' motion to dismiss entirely on the issue. Therefore, there is the required identity of issues under the first prong of Rhode Island's three-factor test.

**2. A Final Judgment on the Merits**

The Mehrvar court made clear that its dismissal pursuant to 12(b)(6) for failure to allege demand futility with sufficient particularity was without prejudice. Indeed, the court hinted to plaintiff that he might re-file "after taking actions designed to cure the pleading inadequacies noted by this court." Mehrvar, 2005 WL 2385939, at *6.

As a rule, dismissals pursuant to 12(b)(6) are considered judgments on the merits and are accorded full *res judicata* effect. Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 399 n.3 (1981). However, dismissals without prejudice are generally not final judgments on the merits because they leave open the possibility of refiling the same claim in the same court. Semtek Int'l Inc. v. Lockheed Martin Corp., 531 U.S. 497, 505 (2001)("The primary meaning of 'dismissal without prejudice,' we think, is dismissal without barring the plaintiff from returning later, to the same court, with the same underlying claim.")

Nevertheless, while the dismissal in state court was "without prejudice," it is to be considered a dismissal with prejudice as to the issue actually decided in the first case. In re

Kaufman Mut. Fund Actions, 479 F.2d 257, 267 (1st Cir. 1973) (holding dismissal without prejudice was without prejudice as to the substantive cause of action, but was with prejudice on the issue of the obligation to make a demand on the directors with respect to that substantive complaint); Saez Rivera v. Nissan Mfg. Co., 788 F.2d 819 (1st Cir. 1986); 18A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 4435 (2d ed. 1987)("Issue preclusion [in cases of dismissals without prejudice] is generally appropriate as to the precise issues resolved, and the dismissal operates as an adjudication on the merits to that extent.")

Because the state court based its dismissal on the issue of failure to plead demand futility with sufficient particularity, it is a final judgment as to that issue. Therefore, the second factor's requirement of a final judgment on the merits is met by the Mehrvar court's dismissal without prejudice.

**3. A Determination That the Party Against Whom Collateral Estoppel is Asserted Was a Party or in Privity with a Party to the Prior Action**

Defendants argue that because the corporation is the real plaintiff in interest in both the state and federal derivative suits, they are asserting issue preclusion against a party to the prior action. Indeed, in a shareholder's derivative suit, the substantive claim belongs to the corporation. Ross v. Bernhard, 396 U.S. 531, 538 (1970). The corporation is the real party in interest; the shareholder is at best the nominal plaintiff. Id. The corporation receives the proceeds of the action and is bound by its results. Id. Therefore, a ruling against a shareholder in a derivative action is actually a ruling against the corporation.

Nevertheless, courts traditionally have exhibited caution in according *res judicata* effect to a prior derivative action in which the present plaintiff shareholder did not participate. Papilsky

v. Berndt, 466 F.2d 251, 257 (2d Cir. 1972).[2] Indeed, a question of fairness arises when the ruling underlying an issue preclusion analysis binds nonparty shareholders. The Papilsky court explained its concern centered on adequate representation of a nonparty's interests:

> The rationale for binding nonparty stockholders by a judgment in a derivative action is that a plaintiff-stockholder represented their interests in that litigation. If nonparty stockholders are to be conclusively bound by the results of an action prosecuted by a stockholder ostensibly representing their interests, however, fundamental considerations of fairness and justice demand that the representation be adequate. One of the principal criteria for adequacy of representation is that the representation must be of such character as to insure the vigorous prosecution of the claim.

Id. at 260 (citations omitted).

Failure to make demand or allege demand futility with sufficient particularity may well reflect the kind of feeble prosecution of the claim which would invoke fairness issues when it came time to bar subsequent suits by nonparty shareholders. While this Court recognizes that the real party in interest in either suit is the corporation, it has genuine concerns about blocking a separate suit by a nonparty shareholder for the initial plaintiff's pleading deficiencies. For that reason, the Court finds that Defendants seek to apply issue preclusion to a nonparty to the initial proceeding, and their efforts to dismiss this action on issue preclusion grounds falters at this final factor. While the Court shares Defendants' skepticism about the similarity of the allegations in the two suits, it believes the more prudent course is to decide the Motion to Dismiss on the basis of the sufficiency of the allegations made in the Complaint in this case. The Court, therefore,

---

[2] On April 7, 2006, Defendants alerted this Court in a letter to a recent District of Massachusetts decision in which similar preclusion issues arose, In re Sonus Networks, Inc. Shareholder Derivative Action, 422 F. Supp. 2d 281 (D. Mass. 2006). The court in that case found that the plaintiff shareholders in a state action dismissed for failure to plead demand futility were not inadequate representatives of the corporation or other shareholders, and that therefore, they were in privity with federal action plaintiff shareholders who filed subsequent suit. The federal action was then dismissed on *res judicata* grounds. The state court in Sonus had dismissed the complaint "without leave to amend," whereas the state court in Mehrvar specifically alerted the plaintiff to his right to amend and re-file. However, the relevant distinction between the Sonus outcome and this one is this Court's determination that the nonparty shareholder plaintiff Ji was not adequately represented by the Mehrvar shareholder plaintiff.

considers the merits of the parties' respective positions.

**2. Demand Futility**

**A. Delaware Law**

Under Delaware law, whether demand on a board of directors is excused as futile is determined by a two-pronged test. Aronson v. Lewis, 473 A.2d 805, 814 (Del. 1984), overruled on other grounds by Brehm v. Eisner, 746 A.2d 244, 253 (Del. 2000). The court must determine whether the allegations create a reasonable doubt that (1) a majority of directors is disinterested and independent; or (2) the challenged transaction was otherwise the product of a valid exercise of business judgment. Id. Where the plaintiff does not challenge any particular action by the board, the test becomes whether or not the particularized factual allegations create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand for suit. Rales v. Blasband, 634 A.2d 927, 934 (Del. 1993). In evaluating the demand for suit, the board must be able to act free of personal financial interest and improper extraneous influences. Id. at 935.

A director's interest may be shown by demonstrating a potential personal benefit or detriment to the director as a result of the decision that does not equally accrue to the shareholders. Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart, 845 A.2d 1040, 1049 (Del. 2004); Rales, 634 A.2d at 936. Another way to describe what Delaware courts look for in this analysis is to say that "[d]irectorial interest exists whenever divided loyalties are present, or a director has received, or is entitled to receive, a personal financial benefit from the challenged transaction which is not equally shared by the stockholders. Id. at 933 (quoting Pogostin v. Rice, 480 A.2d 619, 624 (Del. 1984), overruled on other grounds by Brehm, 746

A.2d at 253.)

Independence means that a director's decision is based on the corporate merits of the subject before the board rather than extraneous considerations or influences. Aronson, 473 A.2d at 816. To establish lack of independence, the complaining shareholder must show that the directors are "beholden" to the interested directors or so under their influence that their discretion would be sterilized. Rales, 634 A.2d at 936 (listing cases). The question of independence flows from an analysis of the factual allegations pertaining to the influences upon the directors' performance of their duties generally, and more specifically in respect to the challenged transaction, or when a particular transaction is not challenged, with respect to their potential consideration of demand. Rales, 634 A.2d at 933 (quoting Pogostin, 480 A.2d at 624).

In addressing the question of influence, courts have considered the professional and social relationships which naturally develop among boardmembers and impede independent decisionmaking. See Beam, 845 A.2d at 1050-51; In re Oracle Corp. Derivative Litigation, 824 A.2d 917, 938 (Del. Ch. 2003). While Delaware courts recognize claims of "structural bias," as this kind of social influence has been labeled, they insist that more than mere allegations of friendship support such a claim. Beam, 845 A.2d at 1050-51. These courts look for facts that would support the inference that because of the nature of a relationship or additional circumstances other than the interested director's stock ownership or voting power, the non-interested director would be more willing to risk his or her reputation than risk the relationship with the interested director. Id. at 1052.

The concept of reasonable doubt is akin to the concept that the stockholder has a "reasonable belief" that the board lacks independence. Grimes v. Donald, 673 A.2d 1207, 1217 n.17 (Del. 1996), overruled on other grounds by Brehm, 746 A.2d at 253. The concept is meant

to be sufficiently flexible and workable to provide the stockholder with "the keys to the courthouse" in an appropriate case where the claim is not based on mere suspicions or stated solely in conclusory terms. Id. at 1217.

### B. Plaintiff's Allegations

Plaintiff's allegations concerning demand futility comprise paragraphs 83(a)-(n) of his Complaint. The reasons Plaintiff offers for why making demand on the board to take up suit itself is futile can be summarized in the following way: (1) three board members are inside directors; (2) three board members are family relations; (3) two board members have a long-term working relationship; (4) two board members own 6.9 percent of the Corporation's common stock; (5) a majority of the board participated in the wrongful conduct; (6) to bring suit, the board members would have to sue themselves; (7) suing the Corporation would expose the board to additional liability and compromise the defense of the class action suit already in progress; (8) the board members have failed to file suit despite the misconduct; (9) two board members made improper inside sales of their stock; and (10) three board members comprised the Audit Committee and knowingly approved of false statements.

#### (1) Three Board Members Are Inside Directors

Paragraph 83(a) of Plaintiff's Complaint alleges that three defendants "were considered insiders because of their current and past positions with the Company." (Compl. ¶ 83(a).) Because of this insider status, Plaintiff contends, demand on these three board members would have been futile. Plaintiff alleges no further facts to support the connection between the three Defendants' insider status and the futility of demand. Mere allegations of dual director and officer status do not amount to particularized fact allegations showing interest or lack of independence. See, e.g., Lewis v. Aronson, No. 6919, 1985 WL 11553, at *4 (Del. Ch. May 1,

1985). Plaintiff fails to indicate how being both an employee and a director of KVH produced the kind of interest and lack of independence crucial to the demand futility analysis.

**(2) Three Board Members Are Family Relations**

Plaintiff alleges in paragraph 83(b) that A. Kits van Heyningen is the father of M. Kits van Heyningen and R. Kits van Heyningen, and that all three served on KVH's Board during the relevant period. "Because of this familial relationship," Plaintiff offers, "it is reasonable to conclude that these individuals would not sue each other." (Compl. ¶ 83(b).) As Plaintiff argues, several Delaware courts have held that "a 'reasonable doubt' is raised when a demand would require a director to support a suit contrary to the interests of a close family member." Mizel v. Connely, No. 16638, 1999 WL 550369, at *4 (Del. Ch. July 22, 1999). Nevertheless, the familial interest would have to be shared by a majority of the board for the family relationship to be relevant for demand excusal purposes. Grimes, 673 A.2d at 1216 ("The basis for claiming excusal would normally be that . . . a majority of the board has a material financial or familial interest . . . ."). If no majority familial interest could be shown, Plaintiff would have to show that the interested related directors dominated or controlled the disinterested directors to create a majority bloc. As discussed more fully below, Plaintiff has not adequately pleaded control or domination over the non-related directors in his Complaint. Therefore, the familial relations of three board members alone do not create a reasonable doubt that the majority of the board was either disinterested or independent.

**(3) Two Board Members Have a Long-term Working Relationship**

In paragraph 83(c), Plaintiff asserts that A. Kits van Heyningen and R. Kits van Heyningen were engineers for Raytheon at the same time, and that this "long-time working relationship" makes it reasonable to conclude the two would not sue each other. (Compl. ¶

83(c).) Business relationships, by themselves, do not suffice as proof of interest or lack of independence. Beam, 845 A.2d at 1050 ("Allegations of mere personal friendship or a mere outside business relationship, standing alone, are insufficient to raise a reasonable doubt about a director's independence."). Rather, courts look for facts that would support the inference that because of the nature of a relationship or additional circumstances other than the interested director's stock ownership or voting power, the non-interested director would be more willing to risk his or her reputation than risk the relationship with the interested director. Id. at 1052. Here, Plaintiff has alleged no such facts, and therefore fails to raise the inference of interest or lack of independence based on long-term working relationship.

**(4) Two Board Members Own 6.9 Percent of the Corporation's Common Stock**

In paragraph 83(d), Plaintiff alleges that A. Kits van Heyningen and M. Kits van Heyningen together own 6.9 percent of KVH's common stock, and that this, when considered alongside their familial relationship to R. Kits van Heyningen, "makes it extremely likely that [they] so dominate the Board of Directors that the remaining members of the Board are indebted to them for their position on the board and therefore would not sue them." (Compl. ¶ 83(d).)

Stock ownership alone, even when it amounts to a majority, is not sufficient proof of domination or control. Aronson v. Lewis, 473 A.2d at 815 ("[I]n the demand context even proof of majority ownership of a company does not strip the directors of the presumptions of independence . . . . There must be coupled with the allegation of control such facts as would demonstrate that through personal or other relationships the directors are beholden to the controlling person."). In Beam, the Delaware court asserted, with regard to allegations that Martha Stewart's 94 percent stock ownership along with her business and personal relationships with three board members meant that those board members could not have been independent,

that "[a] stockholder's control of a corporation does not excuse presuit demand on the board without particularized allegations of relationships between the directors and the controlling stockholder demonstrating that the directors are beholden to the stockholder." Beam, 845 A.2d at 1054.

Plaintiff has offered no factual allegation that might explain how 6.9 percent ownership of stock among two directors and familial relations with a third director would create in the remaining four directors such a sense of control or being beholden. There are no assertions that the non-Kits van Heyningen board members sat on the board by virtue of their nomination by a Kits van Heyningen family member, nor that any other business or social relationship bound those members to the Kits van Heyningens. Without more, Plaintiff cannot rest his claim of board domination or control on the 6.9 percent stock ownership and the familial relationships.

**(5) A Majority of the Board Participated in the Wrongful Conduct**

In paragraph 83(e), Plaintiff alleges that KVH's board and senior management "participated in the wrongs complained of" and the directors "breached the fiduciary duties that they owed to KVH and its shareholders in that they failed to prevent and correct material misrepresentations made by the Company." (Compl. ¶ 83(e).) In paragraph 83(f), Plaintiff asserts that the directors "participated in efforts to conceal or disguise [alleged] wrongs from KVH's stockholders or recklessly and/or negligently disregarded the wrongs complained of herein . . . ." (Compl. ¶ 83(f).) According to Plaintiff, the directors also "exhibited a sustained and systemic failure to fulfill their fiduciary duties, which . . . amounted to gross negligence and extreme recklessness." (Compl. ¶ 83(f).) These broad strokes are the sum total of Plaintiff's allegations of director breach of fiduciary duty.

As a rule, board approval of challenged conduct cannot automatically connote "guilty

participation" by directors or some other form of sterilizing influence upon them, otherwise the demand requirements of Rule 23.1 would be meaningless. Aronson, 473 A.2d at 814. Moreover, "mere directorial approval of a transaction, absent particularized facts supporting a breach of fiduciary duty claim, or otherwise establishing the lack of independence or disinterestedness of a majority of the directors, is insufficient to excuse demand." Id. at 817.

To clear the particularized pleading hurdle, Plaintiff would need to make more detailed allegations concerning what the directors could have known when they approved the statements alleged to be misrepresentations. Instead, in his Opposition to the Motion to Dismiss, Plaintiff references sections of the Complaint which describe statements either issued by the company or made by M. Kits van Heyningen as representative of board approval of wrongful conduct. (Pl.'s Mem. Opp'n Defs.' Mot. Dismiss 22-23.) Plaintiff similarly directs the Court's attention to the directors' signatures on SEC Form 10-K for fiscal year 2003 as evidence that they approved the misstatements that are at the heart of the allegations of wrongdoing. (Pl.'s Mem. Opp'n Defs.' Mot. Dismiss 23; Compl. ¶ 57.)

Directors' signatures and company statements do not go very far in showing those directors' knowing acquiescence in misrepresentations. As the Delaware Chancery Court noted,

> [a]lthough the plaintiffs allege that [the director defendants] had reason to know that the company's financial statements were misstated, this allegation is wholly conclusory. Entirely absent from the complaint are well-pled, particularized allegations of fact detailing the precise roles that these directors played at the company, the information that would have come to their attention in those roles, and any indication as to why they would have perceived the accounting irregularities.

Guttman v. Huang, 823 A.2d 492, 503 (Del. Ch. 2003) (citation omitted). Moreover, to impute to the outside directors especially the knowledge that the approved statements were false, this Court would need other factual allegations connecting the outside directors to the day-to-day

workings of the corporation so that a reasonable inference could be made that they knew the true state of affairs at KVH. See, generally, Dresner v. Utility.com, Inc., 371 F. Supp. 2d 476, 494 (S.D.N.Y. 2005)(finding that plaintiffs could not attribute alleged corporate misstatements to outside directors without specific allegations to suggest those persons took part in preparation of documents or disclosures or that they acted like corporate insiders). Without more information about the roles of the directors and their access to information at the company, the kind of board participation and approval of the challenged conduct that would raise a reasonable inference of interest and lack of independence in the majority of the board have not been sufficiently pleaded in Plaintiff's Complaint.

**(6) To Bring Suit the Board Members Would Have to Sue Themselves**

In paragraph 83(g), Plaintiff rehearses the refrain that to bring suit, the directors would "be forced to sue themselves . . . which they will not do, thereby excusing demand." (Compl. ¶ 83(g).)

"[T]he incantation that demand is excused because the directors otherwise would have to sue themselves, thereby placing the conduct of the litigation in hostile hands and preventing its effective prosecution . . . has been made to and dismissed by other courts." Aronson, 473 A.2d at 818 (listing cases). Unless facts are alleged with particularity to overcome the presumptions of independence and a proper exercise of business judgment, in which case the directors could not be expected to sue themselves, a bare claim of this sort raises no legally cognizable issue under Delaware corporate law. Id. at 818. Plaintiff has not raised facts that might except his claim of director self-interest from the pile of too-general claims that directors will not sue themselves; therefore, this allegation will not save his complaint.

**(7) Suing the Corporation Would Expose the Board to Personal Liability and Compromise the Defense of the Class Action Suit in Progress**

As a rule, the threat of personal liability for approving a questioned transaction, standing alone, is insufficient to challenge either the independence or disinterestedness of directors. Rales, 634 A.2d at 936 (citing Aronson, 473 A.2d at 815). However, where particularized allegations in the complaint present a substantial likelihood of director liability, reasonable doubt as to that director's disinterestedness is created. Rales, 634 A.2d at 936. For a substantial likelihood of personal liability to exist, the contested conduct must be "so egregious on its face" that its approval by the board would be substantially likely to result in director liability. Aronson, 473 A.2d at 815.

Plaintiff alleges that bringing this action would expose the directors' misconduct, "which underlies allegations contained in class action complaints for violations of securities law, which admissions would impair their defense of the class actions and greatly increase the probability of their personal liability in the class actions . . . ." (Compl. ¶ 83(k).) A greatly increased probability is not a substantial likelihood, particularly when only one of the seven Defendants in this action is a named defendant in the class action. Nothing in Plaintiff's Complaint provides any particularized basis to infer that the Defendants had knowledge of or participated in the alleged misconduct. Therefore, Plaintiff has not alleged any facts from which this Court may conclude that the Defendants face any risk of personal liability, and the allegations have certainly not attained the requisite standard of "substantial likelihood."

As a variant on the personal liability theme, Plaintiff further alleges that if the directors were to sue themselves, there would be no insurance coverage to protect them, rendering the likelihood of their taking up this suit even more remote. (Compl. ¶ 83(l).) While this charge

makes sense–the loss of indemnification for legal costs creates a financial interest in directors that might render them too interested to neutrally evaluate demand–there are simply not enough facts here to justify its use against these Defendants. Moreover, Delaware courts reject this argument as simply another variation on the "directors suing themselves" and "participating in the wrongs" refrain. See Caviness v. Evans, 229 F.R.D. 354, 360 (D. Mass. 2005) (listing cases). The allegations concerning the Defendants' potential for civil liability are too thin to apply the possibility of legal fees in that potential defense as a factor indicating self-interest.

**(8) The Board Members Have Failed to File Suit Despite the Misconduct**

In paragraph 83(j), Plaintiff contends that

> KVH has been and will continue to be exposed to significant losses due to the wrongdoing complained of herein, yet the Director Defendants and current Board have not filed any lawsuits against themselves or others who were responsible for that wrongful conduct to attempt to recover for KVH any part of the damages KVH suffered and will suffer thereby.

(Compl. ¶ 83(j).)

This argument is an even more attenuated version of the "directors suing themselves" plaint: it is not simply that the directors won't sue themselves, the fact that they have not yet done so means that they never will. Logically, it is a flawed assumption. As Defendants point out, a failure of the board to sue will always be present in the demand futility context, and it cannot, by itself, indicate interestedness. Richardson v. Graves, 1983 WL 21109, at *3 (Del. Ch. 1983)(citing Cramer v. Gen. Tel. & Elecs. Corp., 582 F.2d 259, 276 (3d Cir. 1978)). Without any facts to point to an illegitimate reason for declining to sue, the Court cannot base a finding of interestedness on this omission of the board.

**(9) Two Board Members Made Improper Inside Sales of Their Stock**

In paragraph 83(m), Plaintiff claims directors R. Kits van Heyningen and Trimble made

sales of their KVH stock that were improper because these directors "knew the adverse non-public information that was materially different than existed in the marketplace regarding KVH's revenues for its TracVision systems, specifically the A5. . . . Because of these insider sales, it is reasonable to conclude that R. Kits van Heyningen and Trimble would not sue each other or initiate an action." (Compl. ¶ 83(m).)

Under Delaware law, insider sales allegations require particularized allegations of fraudulent intent by the selling insider. Guttman, 823 A.2d at 505. Insider trading claims depend importantly on proof that the selling defendants acted with scienter. Id. Plaintiff has no more raised the inference that the two selling Defendants had reason to know of the challenged corporate conduct by virtue of their position on the board than he has supported an inference that they consciously acted to exploit such knowledge.

**(10) Three Board Members Comprised the Audit Committee and Knowingly Approved of False Statements**

Plaintiff's allegations are most concrete when they describe the functioning of the Audit Committee, which Plaintiff credits with "the responsibility to monitor and review the financial reporting process, including the system of internal controls and the preparation of the Company's financial statements in accordance with [Generally Accepted Accounting Principles ("GAAP")]." (Compl. ¶ 83(n).) Plaintiff further asserts it was the responsibility of the Audit Committee, *inter alia*, to review and discuss with management and the company's independent auditor the Company's financial statements and other financial disclosures prior to public distribution. Id. Finally, Plaintiff asserts,

> [i]t is consistent with the Audit Committee's duties and obligations to review defense revenues, revenues generated by the A5, inventory of the A5, and any corresponding returns of such product which would impact KVH's financials and ensure the proper reporting of such information with GAAP. Thus, the Audit

> Committee would have known of the truth of the A5 and the reasons for its hasty release. By nevertheless disseminating false information, defendants Ain, Ryan and Trimble breached their duties by causing or allowing the improper financials and public disclosures.

Id.

Plaintiff's argument amounts to a claim that by virtue of their position on the Audit Committee, the three outside directors should have known the actual state of affairs at KVH, and that therefore they breached their fiduciary duties by participating in misrepresentations concerning the company's financial health. Despite the veneer of concrete allegations, there is more argument than factual assertion in Plaintiff's claim. How did these three directors cause and allow improper financials and public disclosures to be disseminated? Did they participate in the preparation of these materials? How would the Audit Committee "know of the truth of the A5"? Delaware law is clear that imputing knowledge to a director by virtue of his or her position alone is insufficient for demand excuse purposes. Guttman, 823 A.2d at 503. When a complaint "lacks particularized allegations regarding [the directors'] involvement in the process of preparing the company's financial statements," Id. at 498, it fails to give sufficient reasons for why the particular defendants should have been on notice of the misconduct that is alleged. As the Guttman court commented, "[f]rom the complaint, it is impossible to tell anything about the financial compliance systems in place [at the relevant time]." Id. at 507. Without a better sense of what actually happened, and who knew what when, Plaintiff's allegations that the Audit Committee knowingly disseminated false information and thereby breached its fiduciary duty fails to satisfy the particularized pleading standard.

**Summary**

Plaintiff's allegations all fail for similar reasons: lack of particularized factual assertions

that would raise a reasonable inference of interested or non-independent directors. They are for the most part bootstrap allegations, assuming wrongful conduct on the part of the corporation, and then basing allegations of director interest on that assumption and the position of the directors on the board. None of Plaintiff's allegations concerns a majority of the board; one attempts to implicate three directors for being family relations, another targets two insider selling directors, yet another focuses on the three members of the Audit Committee. Even if there were substance to these accusations, and this Court determines there is not, there is simply no support for the position that a majority of the board was not independent or disinterested. Plaintiff's allegations, therefore, do not create a reasonable doubt that, as of the time the Complaint was filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand for suit.

## IV. Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED.

SO ORDERED.

Mary M. Lisi

Mary M. Lisi
United States District Judge
August 29, 2006